1  JEFFREY A. DOLLINGER - State Bar No. 146582
   jdollinger@wpdslaw.com
2  KATY A. NELSON - State Bar No. 173759
   knelson@wpdslaw.com
3  **WOOLLS PEER DOLLINGER & SCHER**
   A Professional Corporation
4  One Wilshire Building
   624 South Grand Avenue, 22nd Floor
5  Los Angeles, California 90017
   Telephone:   (213) 629-1600
6  Facsimile:    (213) 629-1660

7  Attorneys for Defendants
   ASSOCIATED INDUSTRIES
8  INSURANCE COMPANY, INC.,
   AMTRUST FINANCIAL SERVICES,
9  INC. and AMTRUST NORTH
   AMERICA, INC.
10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| 14 CMB DEVELOPERS INC., a California corporation, | Case No. 2:19-cv-09973 SVW (RAOx) |
| 15 | **DEFENDANTS' INDEX OF** |
| 16        Plaintiff, | **EVIDENCE OFFERED IN SUPPORT OF MOTION FOR SUMMARY** |
|   v. | **JUDGMENT OR PARTIAL SUMMARY JUDGMENT** |
| 17 ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC., | *[Filed concurrently with Memorandum* |
| 18 AMTRUST FINANCIAL SERVICES, INC. AMTRUST NORTH AMERICA, INC., a | *of Points and Authorities, Statement Of Uncontroverted Facts And Conclusions* |
| 19 Delaware corporation, and DOES 1 through 100, inclusive, | *Of Law, Declarations of Amy Liebl and Katy A. Nelson,]* |
| 20 | |
| 21        Defendants. | Date:      July 19, 2021 |
| 22 | Time:      1:30 p.m. Ctrm:     10th floor, 10A |
| 23 | Complaint filed:   October 21, 2019 |
| 24 | Trial Date:          August 31. 2021 |

| No. | Date | Description and Bates | Authentication |
|---|---|---|---|
| 1 | 8/6/17 to 8/6/18 | Associated Industries Insurance Company Policy No. AES104071601 (AIIC 000091 – | Declaration of Amy Liebl, ¶ 3. |

842877.1

Woolls Peer Dollinger & Scher
A Professional Corporation
One Wilshire Building, 624 South Grand Avenue, 22nd Floor
Los Angeles, California 90017

| | | | | |
|---|---|---|---|---|
| | | | 000227) | |
| 2 | 2/15/19 | Email from CMB Developers to Gail Henderson with notice of suit (AIIC 000443-000489) | | Declaration of Amy Liebl, ¶ 5. |
| 3 | 2/20/19 and 2/15/19 | Emails from CMB Developers to Gail Henderson transmitting Radix Fire Protection documents (AIIC 000373-000378, AIIC 000498-000505) | | Declaration of Amy Liebl, ¶ 6. |
| 4 | 8/29/18 | Documents obtained from Los Angeles Department of Building and Safety by claims adjuster (AIIC 000581-000595) | | Declaration of Amy Liebl, ¶ 7. |
| 5 | 3/4/19 | Letter on AmTrust North America letterhead to David Lee (AIIC 000049-000060) | | Declaration of Amy Liebl, ¶ 8. |
| 6 | 9/28/20 | Deposition of David Lee from Underlying Action (excerpts) and Ex. 7 to deposition | | Declaration of Katy A. Nelson, ¶ 2. |
| 7 | 6/7/21 | Deposition of Michael Mitchell and Ex. 19 and 21 to deposition | | Declaration of Katy A. Nelson, ¶ 3. |
| 8 | 1/28/21 and 3/29/21 | Settlement Agreement (AIIC 002036-002039) and Request for Dismissal (AIIC 002050-002052) from claim file | | Declaration of Amy Liebl, ¶ 9. |
| 9 | 6/9/21 | Plaintiff CMB Developer Inc.'s Rule 26(a)(2) Disclosure of Expert Testimony (excerpts only – Report by Mark Viau) (Bates 9-1 to 9-15) | | Declaration of Katy A. Nelson, ¶ 4. |
| 10 | 8/12/20 | Letter from Katy A. Nelson to Sohaila Sagheb regarding AIIC's defense and reservation of rights. | | Declaration of Katy A. Nelson, ¶ 5. |

Woolls Peer Dollinger & Scher
A Professional Corporation
One Wilshire Building, 624 South Grand Avenue, 22nd Floor
Los Angeles, California 90017

2

842877.1

| 11 | 11/19/20 | Emails from Katy A. Nelson to Sohaila Sagheb regarding *Blue Ridge* reservation for possible settlement. | Declaration of Katy A. Nelson, ¶ 6. |
| 12 | 1/20/21 | Email from Katy A. Nelson to Sohaila Sagheb regarding *Blue Ridge* reservation for possible settlement. | Declaration of Katy A. Nelson, ¶ 7. |

Woolls Peer Dollinger & Scher
A Professional Corporation
One Wilshire Building, 624 South Grand Avenue, 22nd Floor
Los Angeles, California 90017

3

842877.1

# Exhibit 1



# Exhibit 1

232330.1



Associated Industries Insurance Company, Inc.
Administered through: AmTrust E & S Insurance Services, Inc.
160 Federal Street, 3rd Floor
Boston, MA 02109

**Policy Number:**
AES1040716 01

**Named Insured:**
C M B Developers, Inc.

## COMMON POLICY DECLARATIONS

| **Policy Number** | AES1040716 01 | **Policy Period:** | **From** 8/6/2017 | **To** 8/6/2018 |
|---|---|---|---|---|

12:01 a.m. Standard Time at the Named Insured's Address

| **Transaction** | Renewal |
|---|---|

| **Named Insured and Address** | **Broker** |
|---|---|
| C M B Developers, Inc. | G.J. Sullivan- GBA |
| 1080 Everett Place | PO Box 4880 |
| Los Angeles CA 90026 | Anaheim CA 92803 |

| **Business Description** | **Type of Business** | **Audit Period** |
|---|---|---|
| Residential Remodeling Contractor | Organization Including a Corporation | Annual |

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| **COVERAGE PART DESCRIPTION** | **PREMIUM** |
|---|---|
| General Liability | $2,237.00 |

| | | |
|---|---|---|
| **POLICY PREMIUM** | $ | **2,237.00** |
| **DEPOSIT PREMIUM** | $ | **2,237.00** |
| **TERRORISM COVERAGE** | $ | **Excluded** |
| **TOTAL DEPOSIT PREMIUM** | $ | **2,237.00** |

| **Minimum Retained Audit Premium** | $ 2,237.00 | **Minimum Retained Premium** | $ 559.00 |
|---|---|---|---|

| **Forms applicable to all Coverage Parts:** | See Forms and Endorsements schedule |
|---|---|

Countersigned this _____   By _____

Authorized Representative

Issued Date:   8/30/2017

CPPMDEC 0411

INSURED COPY

This page intentionally left blank

AIIC 000092



Associated Industries Insurance Company, Inc.
Administered through: AmTrust E & S Insurance Services, Inc.
160 Federal Street, 3rd Floor
Boston, MA 02109

**Policy Number:**
AES1040716 01
**Named Insured:**
C M B Developers, Inc.

## GENERAL LIABILITY
## COVERAGE PART

| Policy Number | AES1040716 01 | | Policy Period: | From | 8/6/2017 | To | 8/6/2018 |
|---|---|---|---|---|---|---|---|
| | | | | 12:01 a.m. Standard Time at the Named Insured's Address | | | |
| | | | **Retroactive Date:** | | | | |
| **Transaction** | Renewal | | | | | | |

| Named Insured and Address | Broker |
|---|---|
| C M B Developers, Inc.<br>1080 Everett Place<br>Los Angeles CA 90026 | G.J. Sullivan- GBA<br>PO Box  4880<br>Anaheim CA 92803<br>(714) 621-2310 |

| Business Description | Type of Business | Audit Period |
|---|---|---|
| Residential Remodeling Contractor | Organization Including a Corporation | Annual |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other than Products-Completed Operations) | $ | 2,000,000 |
| Products – Completed Operations Aggregate Limit | $ | 2,000,000 |
| Each Occurrence Limit | $ | 1,000,000 |
| Personal and Advertising Injury Limit | $ | 1,000,000 |
| Medical Expense Limit, any one person | $ | 5,000 |
| Fire Damage Limit, any one fire | $ | 100,000 |

### AMENDED LIMITS OF LIABILITY
Refer to attached schedule, if any.

### LOCATIONS OF ALL PREMISES YOU OWN, RENT OR OCCUPY
Refer to attached schedule.

### CLASSIFICATIONS
Refer to attached schedule, if any.

**TOTAL PREMIUM FOR THIS COVERAGE PART**     $          2,237.00

| Forms and Endorsements Applicable |
|---|
| See Forms and Endorsements Schedule |

These Declarations together with the common policy conditions, coverage declarations, coverage form(s), and form(s) and endorsements, if any, issued, complete the above number policy.

Issued Date:        8/30/2017

INSURED COPY

GLM330000 0411

AIIC 000093

This page intentionally left blank

AIIC 000094

Associated Industries Insurance Company, Inc.
Administered through: AmTrust E & S Insurance Services, Inc.
160 Federal Street, 3rd Floor
Boston, MA 02109

**Policy Number:**
AES1040716 01
**Named Insured:**
C M B Developers, Inc.

## COMMERCIAL GENERAL LIABILITY EXTENSION OF DECLARATIONS

| LOCATION OF PREMISES |
| --- |
| **Location of All Premises You Own, Rent or Occupy:**<br>1<br>1080 Everett Pl<br>Los Angeles CA 90026 |

### PREMIUM

| Location | Classification | Code No. | Exposure | Basis | Prem. Ops. | Rate Prod/Comp Ops. | Advance Premium Prem. Ops. | Prod/Comp Ops. |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | | 91342 | 350,000 | Gross Sales | 5.962 | Included | $2,087 | |
| | Carpentry - Not Otherwise Classified | | | | | | | |
| 1 | | 91585 | | Included | Included | Included | Included | Included |
| | Contractors - subcontracted work - in connection with construction, reconstruction, repair or erection of buildings - Not Otherwise Classified. | | | | | | | |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.  Copyright, Insurance Services Office, Inc., 1994.

Issued Date:      8/30/2017

Page 3 of 5

INSURED COPY

GLMDECB 0411

AIIC 000095

This page intentionally left blank

AIIC 000096

Associated Industries Insurance Company, Inc.  **Policy Number:**
Administered through: AmTrust E & S Insurance Services, Inc.  AES1040716 01
160 Federal Street, 3rd Floor  **Named Insured:**
Boston, MA 02109  C M B Developers, Inc.

## FORMS AND ENDORSEMENTS SCHEDULE

| Coverage | Form | Ed. Date | Description |
|----------|------|----------|-------------|
| CG | AESGL159 | (01/15) | EXCLUSION - DESIGNATED RESIDENTIAL CONSTRUCTION CONDOMINIUM TOWNHOUSE ROW HOUSE OR TRACT HOME HOA EXCEPTION |
| CG | AESGL222 | (09/15) | EXCLUSION – DESIGNATED CONSTRUCTION OR CONTRACTOR OPERATIONS |
| CG | AESPN | (08/11) | ASSOCIATED INDUSTRIES INSURANCE COMPANY PRIVACY POLICY |
| CG | CG0001 | (12/07) | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG | CG2010 | (07/04) | ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION |
| CG | CG2033 | (07/04) | ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU |
| CG | CG2037 | (07/04) | ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS |
| CG | CG2107 | (05/14) | EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY |
| CG | CG2134 | (01/87) | EXCLUSION - DESIGNATED WORK |
| CG | CG2136 | (03/05) | EXCLUSION - NEW ENTITIES |
| CG | CG2149 | (09/99) | TOTAL POLLUTION EXCLUSION ENDORSEMENT |
| CG | CG2153 | (01/96) | EXCLUSION – DESIGNATED ONGOING OPERATIONS |
| CG | CG2154 | (01/96) | EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM |
| CG | CG2175AES | (01/13) | EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES |
| CG | CG2279 | (07/98) | EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY |
| CG | CG2404 | (05/09) | WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US |
| CG | CG2426 | (04/13) | AMENDMENT OF INSURED CONTRACT DEFINITION |
| CG | CG2426 | (07/04) | AMENDMENT OF INSURED CONTRACT DEFINITION |
| CG | CG3234 | (01/05) | CALIFORNIA CHANGES |
| CG | IL0003 | (09/08) | CALCULATION OF PREMIUM |
| CG | IL0017 | (11/98) | COMMON POLICY CONDITIONS |
| CG | IL99034 | (09/14) | IDENTITY RECOVERY COVERAGE |
| CG | NXGL004 | (08/09) | AMENDMENT - COMMON POLICY CONDITIONS |
| CG | NXGL005 | (11/10) | POLICYHOLDER'S GUIDE TO REPORTING A CASUALTY CLAIM |
| CG | NXGL006 | (08/09) | INTERIM PREMIUM AUDIT CONDITION |

AIIC 000097

This page intentionally left blank

AIIC 000098

Associated Industries Insurance Company, Inc.
Administered through: AmTrust E & S Insurance Services, Inc.
160 Federal Street, 3rd Floor
Boston, MA 02109

**Policy Number:**
AES1040716 01
**Named Insured:**
C M B Developers, Inc.

## FORMS AND ENDORSEMENTS SCHEDULE

| Coverage | Form | Ed. Date | Description |
|----------|------|----------|-------------|
| CG | NXGL007 | (08/09) | MINIMUM RETAINED AUDIT PREMIUM |
| CG | NXGL008 | (08/09) | MINIMUM RETAINED PREMIUM |
| CG | NXGL009 | (08/09) | PRIMARY AND NON-CONTRIBUTING INSURANCE (THIRD-PARTY) |
| CG | NXGL014 | (08/09) | TEMPORARY & VOLUNTEER WORKER EXCLUSION |
| CG | NXGL018 | (08/09) | EXCLUSION – CROSS SUITS |
| CG | NXGL020 | (08/09) | EXCLUSION – ELECTROMAGNETIC FIELDS (EMF'S) |
| CG | NXGL032 | (08/09) | HIRED AUTO AND NON-OWNED AUTO LIABILITY |
| CG | NXGL037 | (08/09) | DEDUCTIBLE LIABILITY ENDORSEMENT – INCLUDING EXPENSE (PER OCCURRENCE/OFFENSE) |
| CG | NXGL053 | (01/12) | EXCLUSION – CONTINUOUS, PROGRESSIVE OR REPEATED OFFENSES |
| CG | NXGL067 | (08/09) | EXCLUSION – BLASTING OPERATIONS |
| CG | NXGL080 | (08/09) | EXCLUSION – RESIDENTIAL CONVERSION |
| CG | NXGL089 | (08/09) | EXCLUSION – SUBSIDENCE |
| CG | NXGL093 | (08/09) | AMENDMENT – AGGREGATE LIMITS OF INSURANCE (PER PROJECT) |
| CG | NXGL097 | (08/09) | DEFINITION OF GROSS RECEIPTS/SALES ENDORSEMENT |
| CG | NXGL099 | (08/09) | AMENDMENT OF LIMITS OF INSURANCE |
| CG | NXGL114 | (08/09) | NON-DUPLICATION OF LIMITS OF INSURANCE |
| CG | NXGL129 | (01/10) | TAINTED DRYWALL MATERIAL EXCLUSION |
| CG | NXGL147 | (05/10) | EXCLUSION – OPEN ROOF |
| CG | NXGL154 | (05/10) | EXCLUSION – CONCRETE SULFATES |
| CG | NXGL165 | (09/10) | SPECIAL REQUIREMENTS FOR SUBCONTRACTORS |
| CG | NXGL167 | (05/17) | STANDARD ADDITIONAL EXCLUSIONS |
| CG | NXGL173 | (12/10) | EXCLUSION – FORMALDEHYDE |
| CG | NXGL174 | (12/10) | EXCLUSION – OVERSPRAY |
| CG | NXGL175 | (12/10) | EXCLUSION – WORK HEIGHT LIMITATION |
| CG | NXGL198 | (01/13) | EXCLUSION – TOTAL PROFESSIONAL SERVICES |

CPPMFORMSCHED

AIIC 000099

This page intentionally left blank

AIIC 000100

# Service of Suit

Service of process for any suit instituted against the Company concerning this Policy may be made upon the Superintendent, Commissioner, or Director of Insurance or other person specified for that purpose in the statute or his/her successor or successors in office as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder and arising out of this Policy.

The Company hereby designates:

> Karen Harris
> C/O Corporation Service Company
> 2730 Gateway Oaks Drive, Ste. 100
> Sacramento, CA 95833

as the person(s) to whom the Superintendent, Commissioner, or Director of Insurance or other specified person is authorized to mail such process or a true copy thereof, in compliance with the applicable statutes governing said service of process in the state or jurisdiction in which a cause of action under this Policy arises.

Associated Industries Insurance Company

AIIC 000101

This page intentionally left blank

AIIC 000102

## NOTICE:

1.    THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.

2.    THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.

3.    THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4.    THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357 OR INTERNET WEB SITE WWW.INSURANCE.CA.GOV. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT WWW.NAIC.ORG.

5.    FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

6.    FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF

AIIC 000103

APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

7.     CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV.

8.     IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.

**D-2 (Effective January 1, 2017)**

AIIC 000104

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

AIIC 000105

This page intentionally left blank

AIIC 000106

COMMERCIAL GENERAL LIABILITY
AES GL 159 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED RESIDENTIAL CONSTRUCTION – CONDOMINIUM, TOWNHOUSE, ROW HOUSE OR TRACT HOMES HOA EXCEPTION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

**A.** The following Exclusion is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, paragraph **2. Exclusions** of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**:

  **2. Exclusions**

  This insurance does not apply to:

  **Condominium, Townhouse, Row House or Tract Home Construction Projects**

  Any "bodily injury," "property damage," or "personal and advertising injury" which, in whole or in part, directly or indirectly, arises out of or is related to any past, present, continuing or future "condominium project," "townhouse project," "row house project" or "tract home project" performed by or on behalf of you, or by or on behalf of any other person or entity.  We have no duty to investigate, adjust or defend, or to pay any investigation, adjustment or defense costs, including attorney's fees, with respect to a claim or "suit" seeking damages for such injury or damage.

  This exclusion does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of or relating to:

  **a.** "Repair or remodeling work" performed by or on behalf of you on a single unit of "residential property" (such as one home, one condominium unit or other singular dwelling unit) provided that the unit is certified for occupancy prior to the commencement of the repair or remodel work; or,

  **b.** "Repair or remodeling work" operations when performed by or on behalf of you pursuant to a contract between you and either a condominium owner's association or a townhome owner's association; or,

  **c.** Maintenance, service, or non-structural repairs to common areas of a completed and occupied "condominium project," "townhouse project," "row house project" or "tract home project".

**B.** The following are added to **SECTION V – DEFINITIONS**:

  **"Condominium project" means:**
  A housing development in which individual units are located within one or more buildings or structures containing multiple units, with each individual unit being owned separately and with other parts or portions of the overall development, including buildings, structures, land and other such common elements being owned in common by all owners of the separate individual units, either with or without the establishment of a corporate entity or unincorporated association to oversee and manage the common elements.

**AES GL 159 01 15**                                                                                          **Page 1 of 2**

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000107

**"Location" means**:
Premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**"Mixed use structures" means:**
Structures intended for use or used both as a "Residential property" and for one or more other purposes

**"Repair or remodeling work" means**
Work or operations limited to the maintenance, repair, renovation, restoration, improvement, betterment, alteration, modification or the addition to or extension of an existing structure, including partial demolition of that structure if required for such maintenance, repair, renovation, restoration, improvement, betterment, alteration or modification.

**"Residential property" means:**

1. Structures intended for use or used, in whole or in part, as human dwellings, including but not limited to condominiums, town homes, townhouses, villas, co-operative housing, master-planned housing, tract homes, mass-produced single family homes, custom-built single family-homes, and "mixed use structures;" and includes structures initially intended for another kind of use, but subsequently converted by anyone for use, in whole or in part, as a human dwelling.

2. "Residential property" does not include apartments, student housing, dormitories, assisted living facilities, hotels or military housing.

**"Row house project" means:**
A series of five or more individual housing units sharing common sidewalls between them, without co-ownership of other parts or portions of any building, structure, or land in addition to the shared sidewalls between units.

**"Townhouse project" means:**
A development of two or more individual housing units connected to one another by one or more walls, with other parts or portions of the overall development, including buildings, structures, land and other such common elements being owned in common by all owners of the separate individual housing units, either with or without the establishment of a corporate entity or unincorporated association to oversee and manage the use and maintenance of common elements.

**"Tract home project" means:**
A development of fifteen (15) or more individual and freestanding houses which share common or similar design elements, floor plans, blueprints, and/or architectural details, and/or which are constructed at the same or consecutively, on the same parcel, adjacent parcels or parcels so located within one geographic area to be considered a single project.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000108

**POLICY NUMBER:** AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**AES GL 222 09 15**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED CONSTRUCTION OR CONTRACTOR OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Description of excluded operations:**

Airport work involving Runways, Jetways or Baggage or Security Systems
Bridge or Elevated Highway Construction
Caisson or Cofferdam Work
Construction or Project Manager
Dike, Levee or Reservoir Work
Elevator or Escalator Inspection, Installation, Servicing or Repair
Erosion Control Operations
Fire Suppression Systems - Installation
Fireproofing of structures
Fire, water and/or mold damage remediation work
Foundation Installation (acceptable in conjunction with a remodel/addition)
Janitorial work for occupancies other than offices
Playground Equipment or Bleacher Work
Power Line Construction
Public Street or Road paving or repaving
Railroad Construction
Refinery or Chemical Plant work
Retaining walls over 6 feet in height
Residential framing (acceptable in conjunction with a remodel/addition)
Sound Barrier Construction
Swimming Pool Installation or Repair
Traffic Signal or Control Work
Underground horizontal boring
Underpinning – Buildings or Structures
Waterproofing of Foundations and Exterior of Buildings performed by you

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

**All other terms and conditions remain unchanged.**

**AES GL 222 09 15**                                                                                         Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc., with its permission

This page intentionally left blank

AIIC 000110

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 07

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

  **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

AIIC 000111

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

AIIC 000112

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

AIIC 000113

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h.  Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.  War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j.  Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III – Limits Of Insurance.**

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

© ISO Properties, Inc., 2006

AIIC 000114

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

q. **Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

AIIC 000115

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

© ISO Properties, Inc., 2006

AIIC 000116

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

AIIC 000117

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:
   (1) Agrees in writing to:
      (a) Cooperate with us in the investigation, settlement or defense of the "suit";
      (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";
      (c) Notify any other insurer whose coverage is available to the indemnitee; and
      (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   (2) Provides us with written authorization to:
      (a) Obtain records and other information related to the "suit"; and
      (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

AIIC 000118

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

AIIC 000119

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A;** and

   **b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

     **(1)** How, when and where the "occurrence" or offense took place;

     **(2)** The names and addresses of any injured persons and witnesses; and

     **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

     **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

     **(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

     **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

     **(2)** Authorize us to obtain records and other information;

     **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

     **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

   **a. Primary Insurance**

     This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

   **b. Excess Insurance**

     **(1)** This insurance is excess over:

AIIC 000120

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

   **(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   **(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

   **(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

   **(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

AIIC 000121

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

   **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

   **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

   **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

   **c.** All other parts of the world if the injury or damage arises out of:

     **(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

     **(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

     **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

© ISO Properties, Inc., 2006

AIIC 000122

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

  **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

  **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

  **(1)** Power cranes, shovels, loaders, diggers or drills; or

  **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

  **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

  **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

  **(1)** Equipment designed primarily for:

   **(a)** Snow removal;

   **(b)** Road maintenance, but not construction or resurfacing; or

   **(c)** Street cleaning;

  **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

  **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

AIIC 000123

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

© ISO Properties, Inc., 2006

**CG 00 01 12 07**    □

AIIC 000124

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings                or                instructions.

AIIC 000125

This page intentionally left blank

AIIC 000126

POLICY NUMBER: AES1040716 01          **COMMERCIAL GENERAL LIABILITY**
**CG 20 10 07 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| **"All Persons Or Organizations Where Required By Written Contract With The Named Insured"** | . |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

AIIC 000127

This page intentionally left blank

AIIC 000128

COMMERCIAL GENERAL LIABILITY
CG 20 33 07 04

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

**a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

**2.** "Bodily injury" or "property damage" occurring after:

**a.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**b.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© ISO Properties, Inc., 2004

AIIC 000129

This page intentionally left blank

AIIC 000130

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 07 04**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location And Description Of Completed Operations |
|---|---|
| All persons or organizations where written contract requires additional insured completed operations. This form does not apply to your work on "residential property". | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II  Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

© ISO Properties, Inc., 2004

AIIC 000131

COMMERCIAL GENERAL LIABILITY
CG 21 07 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – LIMITED BODILY INJURY EXCEPTION NOT INCLUDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

AIIC 000132

This page intentionally left blank

AIIC 000133

POLICY NUMBER: AES1040716 01                                    **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work:**

All work conducted in the states of Colorado and New York

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

**CG 21 34 01 87**          Copyright, Insurance Services Office, Inc.,  1986          **Page 1 of 1**     ☐

AIIC 000134

This page intentionally left blank

AIIC 000135

COMMERCIAL GENERAL LIABILITY
CG 21 36 03 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – NEW ENTITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **3.** of **Section II – Who Is An Insured** does not apply.

AIIC 000136

This page intentionally left blank

AIIC 000137

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.  Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

AIIC 000138

This page intentionally left blank

AIIC 000139

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY
CG 21 53 01 96**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED ONGOING OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description of Designated Ongoing Operation(s):**

All work conducted in the states of Colorado and New York

**Specified Location (If Applicable):**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.,** Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in  the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

AIIC 000140

This page intentionally left blank

AIIC 000141

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY
CG 21 54 01 96**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Description and Location of Operation(s):**

**All operations at locations at which the insured was at any time:**
**1. Covered, offered Coverage, or denied coverage; or**
**2. Enrolled, offered enrollment, or not allowed to enroll under a wrap-up program**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

**(1)** Provides coverage identical to that provided by this Coverage Part;

**(2)** Has limits adequate to cover all claims; or

**(3)** Remains in effect.

AIIC 000142

This page intentionally left blank

AIIC 000143

POLICY NUMBER:  AES1040716 01

CONTRACTORS POLLUTION LEGAL LIABILITY

**CG 21 75 AES 01 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
CONTRACTORS POLLUTION LEGAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

**"**Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism", or out of an "other act of terrorism"  that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the policy territory. However, with respect to an "other act of terrorism" this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars).  In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**a.** Physical injury that involves a substantial risk of death; or

CG 21 75 AES 01 13

Page 1 of 2

**Includes copyrighted material of Insurance Services Office, Inc. With its Permission**

AIIC 000144

**b.** Protracted and obvious physical disfigurement; or

**c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "clean up costs", "mold clean up costs", or "crisis management expense" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

**b.** The act resulted in damage:

**(1)** Within the United States (including its territories and possessions and Puerto Rico); or

**(2)** Outside of the United States in the case of:

**(a)** An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

**(b)** The premises of any United States mission; and

**c.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

CG 21 75 AES 01 13

Page 2 of 2

**Includes copyrighted material of Insurance Services Office, Inc. With its Permission**

AIIC 000145

COMMERCIAL GENERAL LIABILITY
CG 22 79 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2. Subject to Paragraph **3.** below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

Copyright, Insurance Services Office, Inc.,  1997

AIIC 000146

This page intentionally left blank

AIIC 000147

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 05 09**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person Or Organization: |
|---|
| All persons or organizations where required by written contract with the Named Insured |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

© Insurance Services Office, Inc., 2008

AIIC 000148

This page intentionally left blank

AIIC 000149

COMMERCIAL GENERAL LIABILITY
CG 24 26 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

  **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

  **b.** A sidetrack agreement;

  **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

  **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

  **e.** An elevator maintenance agreement;

  **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

  **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

  **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

  **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

© Insurance Services Office, Inc., 2012

AIIC 000150

This page intentionally left blank

AIIC 000151

POLICY NUMBER:AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**CG 24 26 07 04**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

**9.** "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2004

AIIC 000152

This page intentionally left blank

AIIC 000153

**COMMERCIAL GENERAL LIABILITY**
**CG 32 34 01 05**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    ELECTRONIC DATA LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCT WITHDRAWAL COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

The term "spouse" is replaced by the following:

Spouse or registered domestic partner under California law.

AIIC 000154

This page intentionally left blank

AIIC 000155

**IL 00 03 09 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

AIIC 000156

This page intentionally left blank

AIIC 000157

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

AIIC 000158

This page intentionally left blank

AIIC 000159

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# IDENTITY RECOVERY COVERAGE

## IDENTITY THEFT CASE MANAGEMENT SERVICE AND EXPENSE REIMBURSEMENT

The following is added as an Additional Coverage.  If this is being endorsed onto a multi-section form, it is added to the Property section:

### IDENTITY RECOVERY COVERAGE

We will provide the Case Management Service and Expense Reimbursement Coverage indicated below if all of the following requirements are met:

1. There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this policy; and

2. Such "identity theft" is first discovered by the "identity recovery insured" during the policy period for which this Identity Recovery coverage is applicable; and

3. Such "identity theft" is reported to us within 60 days after it is first discovered by the "identity recovery insured."

If all three of the requirements listed above have been met, then we will provide the following to the "identity recovery insured":

1. **Case Management Service**
   Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

2. **Expense Reimbursement**
   Reimbursement of necessary and reasonable "identity recovery expenses" incurred as a direct result of the "identity theft."

This coverage is additional insurance.

### EXCLUSIONS

The following additional exclusions apply to this coverage:

We do not cover loss or expense arising from any of the following.

1. The theft of a professional or business identity.

2. Any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any authorized representative of an "identity recovery insured", whether acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an "identity recovery insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.

3. An "identity theft" that is not reported in writing to the police.

### LIMITS

Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the amount of limit available for Expense Reimbursement coverage.

Expense Reimbursement coverage is subject to a limit of $15,000 annual aggregate per "identity recovery insured." Regardless of the number of claims, this limit is the most we will pay for the total of all loss or expense arising out of all "identity thefts" to any one "identity recovery insured" which are first discovered by the "identity recovery insured" during a 12-month period starting with the beginning of the present annual policy period. If an "identity theft" is first discovered in one policy period and continues into other policy periods, all loss and expense arising from such "identity theft" will be subject to the aggregate limit applicable to the policy period when the "identity theft" was first discovered.

AIIC 000160

Legal costs as provided under item d. of the definition of "identity recovery expenses" are part of, and not in addition to, the Expense Reimbursement coverage limit.

Item e. (Lost Wages) and item f. (Child and Elder Care Expenses) of the definition of "identity recovery expenses" are jointly subject to a sublimit of $5,000. This sublimit is part of, and not in addition to, the Expense Reimbursement coverage limit. Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured."

Item g. (Mental Health Counseling) of the definition of "identity recovery expenses" is subject to a sublimit of $1,000. This sublimit is part of, and not in addition to, the Expense Reimbursement coverage limit. Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "identity recovery insured."

Item h. (Miscellaneous Unnamed Costs) of the definition of "identity recovery expenses" is subject to a sublimit of $1,000. This sublimit is part of, and not in addition to, the Expenses Reimbursement coverage limit. Coverage is limited to costs incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured."

## DEDUCTIBLE

Case Management Service is not subject to a deductible.

Expense Reimbursement coverage is subject to a deductible of $100. Any one "identity recovery insured" shall be responsible for only one deductible under this Identity Recovery Coverage during any one policy period.

## CONDITIONS

The following additional conditions apply to this coverage:

**A. Help Line**

For assistance, the "identity recovery insured" should call the **Identity Recovery Help Line** at **1-877-645-7434**.

The **Identity Recovery Help Line** can provide the "identity recovery insured" with:

1. Information and advice for how to respond to a possible "identity theft"; and

2. Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an "identity recovery insured" prior to a determination that a covered "identity theft" has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered "identity theft" has not occurred.

As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records that support his or her claim for "identity recovery expenses."

**B. Services**

The following conditions apply as respects any services provided by us or our designees to any "identity recovery insured" under this endorsement:

1. Our ability to provide helpful services in the event of an "identity theft" depends on the cooperation, permission and assistance of the "identity recovery insured."

2. All services may not be available or applicable to all individuals. For example, "identity recovery insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

3. We do not warrant or guarantee that our services will end or eliminate all problems associated with an "identity theft" or prevent future "identity thefts."

AIIC 000161

**DEFINITIONS**

With respect to the provisions of this endorsement only, the following definitions are added:

1. **"Identity Recovery Case Manager"** means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured." This includes, with the permission and cooperation of the "identity recovery insured," written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

2. **"Identity Recovery Expenses"** means the following when they are reasonable and necessary expenses that are incurred as a direct result of an "identity theft":

   a. Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft."

   b. Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft."

   c. Costs for credit reports from established credit bureaus.

   d. Fees and expenses for an attorney approved by us for the following:

      (1) The defense of any civil suit brought against an "identity recovery insured."

      (2) The removal of any civil judgment wrongfully entered against an "identity recovery insured."

      (3) Legal assistance for an "identity recovery insured" at an audit or hearing by a governmental agency.

      (4) Legal assistance in challenging the accuracy of the "identity recovery insured's" consumer credit report.

      (5) The defense of any criminal charges brought against an "identity recovery insured" arising from the actions of a third party using the personal identity of the "identity recovery insured."

   e. Actual lost wages of the "identity recovery insured" for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

   f. Actual costs for supervision of children or elderly or infirm relatives or dependants of the "identity recovery insured" during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured."

   g. Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured."

   h. Any other reasonable costs necessarily incurred by an "identity recovery insured" as a direct result of the "identity theft."

      (1) Such costs include:

         (A) Costs by the "identity recovery insured" to recover control over his or her personal identity.

         (B) Deductibles or service fees from financial institutions.

      (2) Such costs do not include:

         (A) Costs to avoid, prevent or detect "identity theft" or other loss.

         (B) Money lost or stolen.

         (C) Costs that are restricted or excluded elsewhere in this endorsement or policy.

3. **"Identity Recovery Insured"** means the following:

   a. When the business insured under this policy is a sole proprietorship, the "identity recovery insured" is the individual person who is the sole proprietor of the insured business and their spouse or domestic partner.

   b. When the entity insured under this policy is a partnership, the "identity recovery insureds" are the current partners.

AIIC 000162

   c.  When the entity insured under this policy is a corporation or other organization, the "identity recovery insureds" are all individuals having an ownership position of 20% or more of the insured entity. However, if and only if there is no one who has such an ownership position, then the "identity recovery insured" shall be:

      (1)  The chief executive of the insured entity; or

      (2)  As respects a religious institution, the senior ministerial employee.

   An "identity recovery insured" must always be an individual person. The entity insured under this policy is not an "identity recovery insured."

4.  **"Identity Theft"** means the fraudulent use of the social security number or other method of identifying an "identity recovery insured." This includes fraudulently using the personal identity of an "identity recovery insured" to establish credit accounts, secure loans, enter into contracts or commit crimes.

   "Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

All other provisions of this policy apply.

AIIC 000163

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**NX GL 004 08 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT - COMMON POLICY CONDITIONS

This endorsement modifies insurance provided under the following:

### COMMON POLICY CONDITIONS

The following is added:

**G.  Other Insurance With This Company**

If this policy contains two or more Coverage Parts providing coverage for the same ''occurrence,'' ''injury,'' or offense, the maximum Limit of Insurance under all Coverage Parts shall not exceed the highest Limit of Insurance under any one Coverage Part.

If this policy and any other policy issued to you by us apply to the same ''occurrence,'' ''injury,'' or offense, the maximum Limit of Insurance under all of the policies shall not exceed the highest Limit of Insurance under any one policy.  This condition does not apply to any policy issued by us which specifically provides that the policy is to apply as excess insurance over this policy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000164

This page intentionally left blank

AIIC 000165

**COMMERCIAL GENERAL LIABILITY**
**NX GL 005 11 10**

## POLICYHOLDER'S GUIDE TO REPORTING A CASUALTY CLAIM

**A.**   As soon as you are aware of an event that will give rise to a claim being made against you (3rd Party Liability Claims), please be sure to quickly report the matter to AmTrust North America.  Be sure to include your policy number and the name of the insured as it is stated on the policy.

**B.**   New claims can be reported to **AmTrust North America** as follows:

|   |   |   |
|---|---|---|
| **a.** | **By Mail:** | AmTrust North America<br>P.O. Box 650767<br>Dallas, TX 75265-0767 |
| **b.** | **By Fax:** | (877) 669-9140 |
| **c.** | **By Electronic Mail:** | ubiclaimsreporting@amtrustgroup.com |
| **d.** | **By Telephone:** | (866) 272-9267 |

AIIC 000166

This page intentionally left blank

AIIC 000167

POLICY NUMBER: AES1040716 01                                             **COMMERCIAL GENERAL LIABILITY**
**NX GL 006 08 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INTERIM PREMIUM AUDIT CONDITION

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART
### PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to paragraph **5**. of **SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS**:

**5. Premium Audit**

**d.** We reserve the right to conduct a complete audit of your records during the policy term to determine the adequacy of the Advance Premium deposit.  If the earned premium computed for the interim audit period exceeds the pro rated Advance Premium by an amount of 10% or more we shall reserve the right to amend the premium base(s) stated in the Declarations to reflect the data produced by the interim audit and to revise the Advance Premium accordingly.  Any additional premium will be due and payable upon notice to the first named Insured.  This provision shall not serve to amend the Minimum Premium as shown in the Declarations or our right to conduct further audits as per paragraph **b.** above.

AIIC 000168

This page intentionally left blank

AIIC 000169

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**NX GL 007 08 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINIMUM RETAINED AUDIT PREMIUM

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART
### PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

Paragraph **5.b.** of **SECTION IV, COMMERCIAL GENERAL LIABILITY CONDITIONS**, is replaced by the
following:

**5.   Premium Audit**

   **b.**   Premium shown in this Coverage Part as Advance Premium is a deposit premium only.  At the close of
each audit period, we will compute the earned premium for that period.  Audit premiums are due and
payable upon notice to the First Named Insured.  Premium Audit adjustments will be made to determine
additional premiums only.  You agree that there will be no downward adjustment of the Minimum
Retained Audit Premium resulting from the Premium Audit provision of this policy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000170

This page intentionally left blank

AIIC 000171

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**NX GL 008 08 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINIMUM RETAINED PREMIUM

This endorsement modifies insurance provided under the following:

## COMMON POLICY CONDITIONS

Paragraph **5.** of **A. Cancellation** is replaced by the following:

**5.**   If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata.  If the first Named Insured cancels, earned premium will be computed according to the customary short rate table and procedure, subject to a Minimum Retained Premium of $559.  The cancellation will be effective even if we have not made or offered a refund.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000172

This page intentionally left blank

AIIC 000173

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**NX GL 009 08 09**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PRIMARY AND NON-CONTRIBUTING INSURANCE (THIRD-PARTY)

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| Third Party: |
| All persons or organizations where required by written contract with the Named Insured |

(Absence of a specifically named Third Party above means that the provisions of this endorsement apply as required by written contractual agreement with any Third Party for whom you are performing work.)

Paragraph **4.** of **SECTION IV: COMMERCIAL GENERAL LIABILITY CONDITIONS** is replaced by the following:

**4.   Other Insurance**:

With respect to the Third Party shown above, this insurance is primary and non-contributing.  Any and all other valid and collectable insurance available to such Third Party in respect of work performed by you under written contractual agreements with said Third Party for loss covered by this policy, shall in no instance be considered as primary, co-insurance, or contributing insurance.  Rather, any such other insurance shall be considered excess over and above the insurance provided by this policy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000174

This page intentionally left blank

AIIC 000175

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**NX GL 014 08 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEMPORARY & VOLUNTEER WORKER EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Paragraph **5.** of **SECTION V - DEFINITIONS** is replaced by the following:

**5.**  "Employee" includes a "leased worker," "temporary worker" or "volunteer worker."

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000176

This page intentionally left blank

AIIC 000177

POLICY NUMBER:   AES1040716 01

**COMMERCIAL GENERAL LIABILITY
NX GL 018 08 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CROSS SUITS
# (NAMED INSUREDS)

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

The following Exclusion is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and paragraph **2. Exclusions** of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**:

**2.   Exclusions**

This insurance does not apply to:

**Suits between Named Insureds:**

Any obligation to defend any "suit" or claim against the "insured" alleging "bodily injury," "property damage," or "personal and advertising injury" resulting from, relating to, alleged by or brought between one Named Insured against another Named Insured under this policy.

AIIC 000178

This page intentionally left blank

AIIC 000179

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**NX GL 020 08 09**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – ELECTROMAGNETIC FIELDS (EMF'S)

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following Exclusion is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**2. Exclusions**

This insurance does not apply to:

**Electromagnetic Fields (EMF'S)**

Any "bodily injury" or "property damage," or any other loss, cost (including defense costs) or expense arising out of exposure to an "electromagnetic field" in any form, including but not limited to liability for the installation, operations, repair, sale or manufacture or distribution of any kind of equipment or products producing or in any way involving the effects of an "electromagnetic field."

**B.** The following is added to **SECTION V – DEFINITIONS**:

"Electromagnetic field" means electric and magnetic fields generated by varying electrical current through any medium including but not limited to wires whether or not intended for the purpose of conducting electricity.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000180

This page intentionally left blank

AIIC 000181

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**NX GL 032 08 09**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Limits of Insurance | Additional Premium |
|----------|---------------------|--------------------|
| Hired Auto Liability | Excluded | N/A |
| Non-Owned Auto Liability | $1,000,000 | Included |

**A.**  Insurance is provided only for those coverages for which a specific premium charge is shown in the Declarations or in this Schedule.

    **1.**  **HIRED AUTO LIABILITY**

    The insurance provided under **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, applies to "bodily Injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

    **2.**  **NON-OWNED AUTO LIABILITY**

    The insurance provided under **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person other than you.

**B.**  For insurance provided by this endorsement only:

    **1.**  Paragraphs **2.e.** and **2.j.** under **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, are replaced by the following:

      **2. Exclusions**

      **e.**  **Employers Liability**
      "Bodily injury" to:

        **(1)**  An "employee" of the insured arising out of and in the course of:
          **(a)**  Employment by the insured; or
          **(b)**  Performing duties related to the conduct of the insured's business; or

        **(2)**  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000182

COMMERCIAL GENERAL LIABILITY
NX GL 032 08 09

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of injury.

This exclusion does not apply to:

**(1)** Liability assumed by the insured under an "insured contract" or

**(2)** "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers compensation law.

**j. Damage to Property**
"Property damage" to:

**(1)** Property owned or being transported by, or rented or loaned to the insured; or

**(2)** Property in the care, custody or control of the insured.

**2. SECTION II - WHO IS AN INSURED** is replaced by the following:

Each of the following is an insured under this endorsement to the extent set forth below:

**a.** You;
**b.** Any other person using a "hired auto" with your permission;
**c.** For a "non-owned auto," any partner or "executive officer" of yours, but only while such "non-owned auto" is being used in your business; and
**d.** Any other person or organization, but only for their liability because of acts or omissions of an insured under a., b. or c. above.

None of the following is an insured:

**(1)** Any person engaged in the business of his or her employer for "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury," or for any obligation to share damages with or repay someone else who must pay damages because of the injury.

**(2)** Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household.

**(3)** Any person while employed in or otherwise engaged in duties in connection with an "auto business," other than an "auto business" you operate.

**(4)** The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee.

**(5)** Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**C.** The following are added to **SECTION V – DEFINITIONS**:

**1.** "Auto Business" means the business or occupation of selling, repairing, servicing, storing or parking

AIIC 000183

**COMMERCIAL GENERAL LIABILITY**
**NX GL 032 08 09**

"autos."

**2.** "Hired Auto" means any "auto" you lease, hire or borrow.  This does not include any "auto" you lease, hire or borrow from any of your "employees" or members of their households, or from any partner or "executive officer" of yours.

**3.** "Non-Owned Auto" means any "auto" you do not own, lease, hire or borrow which is used in connection with your business.  However, if you are a partnership, a "non-owned auto" does not include any "auto" owned by any partner.

AIIC 000184

This page intentionally left blank

AIIC 000185

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**NX GL 037 08 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY ENDORSEMENT – INCLUDING EXPENSE (PER OCCURRENCE/OFFENSE)

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

| SCHEDULE | | | |
|---|---|---|---|
| **Coverage** | | | **Amount of Deductible** |
| Bodily Injury Liability | OR | $ 1000 | per occurrence |
| Property Damage Liability | OR | $ 1000 | per occurrence |
| Personal and Advertising Injury Liability | | $ 1000 | per offense |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement.  If no limitation is entered, the deductibles apply to damages for all ''bodily injury'', ''property damage'', and ''personal and advertising injury,'' however caused):

**A.** Our obligation under the Bodily Injury Liability, Property Damage Liability, and Personal and Advertising Injury Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages, and the Limits of Insurance applicable to Each Occurrence or offense for such coverages will be reduced by the amount of such deductible.  Aggregate Limits for such coverages shall not be reduced by the application of such deductible amount.

**B.** The deductible amounts apply to damages and all legal and loss adjustment expenses.

**C.** The deductible amount stated in the Schedule above is on a per "occurrence" or offense basis and applies as follows:

  **1.** Under the Bodily Injury Liability Coverage to all damages because of ''bodily injury'';

  **2.** Under Property Damage Liability Coverage to all damages because of ''property damage'';

  **3.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages

**NX GL 037 08 09**                                                                                              **Page 1 of 2**
Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000186

**COMMERCIAL GENERAL LIABILITY**
**NX GL 037 08 09**

because of:

   **a.**  "bodily injury";
   **b.**  "property damage"; or
   **c.**  'bodily injury" and "property damage" combined;

   **4.**  Under Personal and Advertising Injury Liability Coverages to all damages because of "personal and advertising injury"

as the result of any one "occurrence" or offense, regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

**D.**   The terms of this insurance, including those with respect to our right and duty to defend the insured against any "suits" seeking those damages and your duties in the event of an "occurrence," offense, claim or "suit," apply irrespective of the application of the deductible amount.

**E.**   We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
**NX GL 037 08 09**

AIIC 000187

POLICY NUMBER:   AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**NX GL 053 01 12**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – CONTINUOUS, PROGRESSIVE OR REPEATED OFFENSES

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Exclusion is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and paragraph **2 Exclusions** of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:**

**2. Exclusions**

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" including continuous, progressive or repeated "bodily injury", "property damage", or "personal and advertising injury"

**Continuous, Progressive or Repeated Offenses:**

**(1)** that first occurs, in whole or in part, prior to the effective date of this policy;

**(2)** first occurs, in whole or in part, prior to the effective date of this policy and also occurs during the policy period;

**(3)** first occurs, in whole or in part, prior to the effective date of this policy, also occurs during the policy period, and ceases to occur after the expiration or cancellation date of this policy;

**(4)** first occurs, in whole or in part, after the expiration or cancellation date of this policy; or

**(5)** is alleged in a "suit" against any Insured where the filing date of the original complaint or other pleading initiating that "suit" is a date preceding the effective date of this policy, regardless of whether any Insured was named as a party to, or was served with process regarding, that "suit" prior to the effective date of this policy.

The exclusions stated in Paragraphs **(1), (2), (3), (4)** and **(5)** apply regardless of whether the "bodily injury", "property damage", or "personal and advertising injury" was or is known or unknown by any Insured.

For purposes of the exclusions stated in Paragraphs **(1), (2), (3), (4)** and **(5)**, in the event of continuous, progressive or repeated "bodily injury", "property damage", or "personal and advertising injury" over any length of time, such "bodily injury" or "property damage" shall be deemed to be one "occurrence" and shall be deemed to occur at the time the "bodily injury", "property damage" or "personal and advertising injury" first begins.

AIIC 000188

This page intentionally left blank

AIIC 000189

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**NX GL 067 08 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – BLASTING OPERATIONS

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following Exclusion is added to **SECTION I – COVERAGES,** paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY:**

**2.  Exclusions**

This insurance does not apply to:

**Blasting Operations**

"Bodily injury," "property damage," or "personal and advertising injury" arising from "blasting operations" performed by you or by others on your behalf.

**B.** The following is added to **SECTION V – DEFINITIONS:**

"Blasting operations" means the use, storage and transport of explosives for demolition, construction, or earth and rock movement.

AIIC 000190

This page intentionally left blank

AIIC 000191

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**NX GL 080 08 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – RESIDENTIAL CONVERSION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Exclusion is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and paragraph **2. Exclusions** of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**:

**2.   Exclusions**

This insurance does not apply to:

**Residential Conversion**

"Bodily injury," "property damage," or "personal and advertising injury" from the construction of any building, in whole or in part, which has been converted to a non-commercial dwelling or residence, at any time after the inception date of this insurance policy.

As used in this exclusion, non-commercial dwellings or residences includes, but are not limited to, homes, cooperatives, town homes, lofts and condominiums.

This exclusion does not apply to the construction, management, or ownership of apartment buildings, hotels or motels by you.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000192

This page intentionally left blank

AIIC 000193

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**NX GL 089 08 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – SUBSIDENCE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following Exclusion is added to **SECTION I – COVERAGES,** paragraph **2. Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** and paragraph **2. Exclusions** of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:**

**2.  Exclusions**

This policy does not apply to:

**Subsidence**

"Bodily injury," "property damage," or "personal and advertising injury," including but not limited to disease or illness, including death, loss of use, damage to, or loss of property, directly or indirectly arising out of, caused by, resulting from, contributed to or aggravated by the subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, mud flow, rising, tilting, bulging, cracking, shrinking, or expansion of foundations, walls, roofs, floors, ceilings, or any other movements of land or earth, regardless of whether the foregoing emanates from, or is attributable to, any operations performed by or on behalf of any insured. The foregoing applies regardless of whether the first manifestation of same occurs during the policy period or prior or subsequent thereto.

There is no coverage nor defense under this policy for any claims, loss, costs, or expense arising from allegations against you resulting from or contributing to or aggravated by subsidence as described above.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000194

This page intentionally left blank

AIIC 000195

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**NX GL 093 08 09**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT – AGGREGATE LIMITS OF INSURANCE (PER PROJECT)

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

| Schedule |
|---|
| Subject to an Overall Policy Aggregate Limit: $5,000,000 |

(Information required to complete this Schedule, if not shown above, will be shown in Declarations.)

**A.** Paragraphs **2.** and **3.** of **SECTION III – LIMITS OF INSURANCE** are replaced by the following:

    **2.** The Overall Policy Aggregate Limit is the most we will pay for the sum of
        **a.** Medical expenses under Coverage **C;**
        **b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and
        **c.** Damages under Coverage **B.**

    **3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard" to each of your projects away from premises owned by or rented to you.

**B.** The following is added to **SECTION III – LIMITS OF INSURANCE**:

    **8.** Subject to Paragraph **2.** and **3.** above, the General Aggregate Limit is the most we will pay under for the sum Coverage **A,** Coverage **B,** or Coverage **C** to each of your projects away from premises owned by or rented to you.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000196

This page intentionally left blank

AIIC 000197

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**NX GL 097 08 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEFINITION OF GROSS RECEIPTS/SALES ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following is added to **SECTION V - DEFINITIONS**:

**Gross Sales/Receipts**

The gross amount charged by the Named Insured, concessionaires of the Named Insured or by others trading under the insured's name for:

    **a.**  All goods or products sold or distributed;

    **b.**  Operations performed during the policy period; and

    **c.**  Rentals

    **d.**  Dues or fees

The following items shall be deducted when computing gross sales:

    **a.**  Sales or excise taxes which are collected and submitted to a governmental division;

    **b.**  Credits for repossessed merchandise and products returned;

    **c.**  Allowance for damaged and spoiled goods;

    **d.**  Finance charges for items sold on installments;

    **e.**  Freight charges on sales if freight is charged as a separate item on customers invoice; and

    **f.**  Royalty income from patent rights or copyrights, which are not product sales.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000198

This page intentionally left blank

AIIC 000199

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**NX GL 099 08 09**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT OF LIMITS OF INSURANCE

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION III – LIMITS OF INSURANCE** is replaced by the following:

**SECTION III – LIMITS OF INSURANCE**

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    **a.** Insureds;

    **b.** Claims made or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits".

2.  The General Aggregate Limit is the most we will pay for the sum of:

    **a.** Medical expenses under Coverage **C;**

    **b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    **c.** Damages under Coverage **B.**

    incurred within the policy period stated in the Declarations.

3.  The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4.  Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5.  Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    **a.** Damages under Coverage **A;** and

    **b.** Medical expenses under Coverage **C**

    because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6.  Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7.  Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000200

This page intentionally left blank

AIIC 000201

POLICY NUMBER: AES1040716 01          **COMMERCIAL GENERAL LIABILITY**
**NX GL 114 08 09**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NON-DUPLICATION OF LIMITS OF INSURANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART
### PRODUCTS/COMPLETED OPERATIONS COVERAGE PART

The following is added to **SECTION III – LIMITS OF INSURANCE**:

8.   Regardless of the number of insureds, claims made or "suits" brought, or persons or organizations making claims or bringing "suits":

    **a.**  With respect to all "bodily injury" and "property damage" that arises out of one "occurrence" and is covered, in whole or in part, by this policy and any other policy issued by us or any affiliate to you, the maximum that we will pay under all such policies combined is the highest Each Occurrence Limit of Insurance stated in the Limits of Insurance section of the Declarations page in any one of these policies.

        In the event of continuous, progressive or repeated "bodily injury" or "property damage" over any length of time, such "bodily injury" or "property damage" shall be deemed to be one "occurrence."

    **b.**  With respect to all "personal and advertising injury" that arises out of the commission of an offense covered by this policy and any other policy issued by us or any affiliate to you, the maximum that we will pay under all such policies combined is the highest Personal and Advertising Injury Limit of Insurance stated in the Limits of Insurance section of the Declarations page in any one of these policies.

        In the event of continuous, progressive, or repeated "personal and advertising injury" over any length of time, such "personal and advertising injury" shall be deemed to be one offense.

AIIC 000202

This page intentionally left blank

AIIC 000203

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**NX GL 129 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TAINTED DRYWALL MATERIAL EXCLUSION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to:

(1) Any liability, loss, injury or damages or any kind, including but not limited to "bodily injury," "property damage," "personal and advertising injury," "reduction in value," costs or expenses, actually or allegedly arising out of, related to, resulting from, caused by, contributed to, or in any other way connected with the actual or alleged manufacture, creation, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, release, abatement, replacement of, handling of, exposure to, ingestion of, testing for or failure to test for, or failure to warn, advise of or disclose the presence of "tainted drywall material," whether or not the "tainted drywall material" is or was at any time and in any form airborne, contained in a product or a component part of a product, carried on clothing or other items, inhaled, ingested, absorbed, transmitted in any fashion or found in any form whatsoever.

(2) Any liability, loss, cost or expense including, but not limited to, payment for investigation or defense, fines, penalties, interest and other costs or expenses, arising out of or related to any:

   (a) Clean up or removal of "tainted drywall material" or products and materials containing "tainted drywall material";

   (b) Actions necessary to monitor, assess or evaluate the actual, alleged or threatened release of "tainted drywall material" or products and material containing "tainted drywall material";

   (c) Disposal of actual or alleged "tainted drywall material" or the taking of action necessary to prevent, minimize or mitigate damage to the public health or welfare or to the environment which may otherwise result;

   (d) Compliance with any law or regulation regarding "tainted drywall material";

   (e) Existence, storage, handling or transportation of "tainted drywall material"; or

   (f) Supervision, instructions, recommendations, warranties (express or implied), warnings or advice given or which should have been given with respect to "tainted drywall material."

(3) Any obligation to share damages with or repay someone else in connection with Paragraphs (1) or (2) of this exclusion.

As used in this exclusion:

(4) "Tainted drywall material" means any:

   (a) Drywall, plasterboard, sheetrock or gypsum board; or

   (b) Material used in the manufacture of drywall, plasterboard, sheetrock or gypsum board;

   which:

   (i) Produces sulfuric odors, sulfuric gas, and/or sulfuric acid;

   (ii) Causes or contributes to the corrosion or oxidation of metal, including but not limited to metal in pipes, wiring, heating, ventilation and air conditioning systems; or

   (iii) Contains synthetic gypsum, fly ash or any other material derived from coal-fired power plants, or arsenic or any radioactive compounds.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000204

(5) "Reduction in value" means the actual or alleged diminution in value, impairment, devaluation or loss of use of tangible property, whether or not physically injured.

It is further agreed we shall have no duty to investigate, defend or indemnify any insured against any loss, claim "suit," demand, fine or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury," "property damage," "personal and advertising injury," "reduction in value" or cost or expense to which this endorsement applies.

AIIC 000205

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**NX GL 147 05 10**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – OPEN ROOF

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This policy is hereby amended as follows:

**SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** are amended to add the following:

This insurance does not apply to any "bodily injury," "property damage," or "personal and advertising injury" nor do we have any duty to defend any:

claim for damage to any building or structure and/or the contents, furniture and fixtures, improvements and betterments of any building or structure, directly or indirectly arising out of or caused, or alleged to have been caused by, in whole or in part, wind, hail, snow, rain, ice or any combination of these or any other form of precipitation occurring while the roof or other covering of the building or other structure is being constructed, repaired or replaced, or as a result thereof.

Notwithstanding **SECTION V – DEFINITIONS**, Paragraph 14, "Products-Completed Operations Hazard," work on a roof, or other covering of a building or structure, shall be deemed complete only when all work or operations upon it by anyone has been finished, regardless of whether the scope of an "insured's" work or operations includes less than the full completion of the roof or other covering.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000206

This page intentionally left blank

AIIC 000207

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**NX GL 154 05 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONCRETE SULFATES

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

This Policy is hereby amended as follows:

**SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** are amended to add the following:

This insurance does not apply to any "bodily injury," "property damage," or "personal and advertising injury" nor do we have any duty to defend any:

(1) Claim arising from, or caused by, the exposure of concrete to, or the absorption or absorption by concrete products of sulfates, whether such sulfate is in pure form or is or was combined with any other chemical or material.

(2) This Exclusion applies regardless of any other cause of causes of damage and includes defects or negligence in design, construction, inspection or materials, or any other event, conduct or misconduct which may have or is claimed to have precipitated, caused or acted jointly, concurrently, or in any sequence with the exposure of concrete to sulfates in causing the damage.

(3) This Exclusion shall apply without regard to the allegations or basis of the "insured's" liability.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000208

This page intentionally left blank

AIIC 000209

POLICY NUMBER: AES1040716 01

**COMMERCIAL GENERAL LIABILITY**
**NX GL 165 09 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPECIAL REQUIREMENTS FOR SUBCONTRACTORS

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.    The following is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

**Subcontractor Special Conditions**

1.  Certificates of Insurance with Limits of Liability equal to or greater than the Limits of Insurance provided by this policy (underwritten by an insurance company with at least an "A-7" Best rating as defined by AM Best) will be obtained from all "subcontractors" prior to commencement of any work preformed for you.  (Note:  If this policy provides a per location or per project aggregate, "subcontractors" policy must also provide the same.)

2.  You will obtain written hold harmless agreements from "subcontractors" indemnifying you and the owner against all losses for work performed for you by any and all subcontractors.

3.  You will be named as an Additional Insured on all "subcontractors" General Liability policies.

**Your failure to comply with the conditions listed above will not invalidate this insurance or alter our obligation to you under the terms of this policy except:**

1.  If any of the above conditions are not satisfied, a deductible equal to an amount twice the amount listed in the Declarations page of this policy will apply to any claim or "suit" under this policy seeking damages for "bodily injury," "property damage" and/or "personal and advertising injury" arising out of the work performed by the "subcontractor" for the insured.  The deductible amounts apply to damages and all legal and loss adjustment expenses.  Provisions for the application of deductibles under this policy are set forth in the DEDUCTIBLE LIABILITY ENDORSEMENT.

Commercial General Liability coverage maintained by the subcontractors shall be primary and this policy shall be excess of Limits of Liability of such insurance, not withstanding the language of the Other Insurance provisions of this policy.

B.    The following is added to **SECTION V – DEFINITIONS**:

"Subcontractor" or "subcontractors" means any person or entity that is not your employee of an insured and does work or performs services for or on behalf of an insured.

All other terms and conditions of the policy remain unchanged.

**NX GL 165 09 10**                                **Page 1 of 1**
Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000210

This page intentionally left blank

AIIC 000211

POLICY NUMBER: AES1040716 01

COMMERCIAL GENERAL LIABILITY
NX GL 167 05 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# STANDARD ADDITIONAL EXCLUSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following Exclusions are added to the policy:

**1. EXCLUSION – ASBESTOS**

**SECTION I – COVERAGES**, **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Paragraph **2. Exclusions,** and **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, Paragraph **2. Exclusions** are amended to add the following:

This insurance does not apply to:

**A.** "Bodily injury," "property damage," or "personal and advertising injury," including but not limited to occupational disease, disability, shock, mental anguish or mental injury, at any time arising out of the manufacture, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

**B.** Any obligation of the "insured" to indemnify any party because of damages arising out of "bodily injury," "property damage," or "personal and advertising injury," including but not limited to occupational disease, disability, shock, mental anguish or mental injury, at any time as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

**C.** Any obligation to defend any "suit" or claim against the "insured" alleging "bodily injury," "property damage," or "personal and advertising injury," including but not limited to occupational disease, disability, shock, mental anguish or mental injury, resulting from or contributed to, by the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

**2. EXCLUSION – CHROMATED COPPER ARSENATE (CCA)**

**SECTION I – COVERAGES**, Paragraph **2. Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and Paragraph **2. Exclusions** of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY** are amended to add the following:

This insurance does not apply to:

"Bodily injury," "property damage" or "personal and advertising injury" arising out of:

**A.** The manufacture, sale, distribution, application, use or presence of:
**(1)** Chromated Copper Arsenate;
**(2)** Any product or material which contains Chromated Copper Arsenate; or
**(3)** Any product or material to which Chromated Copper Arsenate has been applied by any party, including but not limited to, any manufacturer, processor or distributor of such products or materials.

NX GL 167 05 17

Page 1 of 7

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000212

COMMERCIAL GENERAL LIABILITY
NX GL 167 05 17

**B.** The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of Chromated Copper Arsenate at any time.

**C.** Any loss, cost or expense arising out of any:
**(1)** request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, assess the effects of Chromated Copper Arsenate; or
**(2)** claim or "suit" on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effect of Chromated Copper Arsenate.

**3.  EXCLUSION – EMPLOYMENT RELATED PRACTICES**

**A.** Section **I – Coverage A – Bodily Injury and Property Damage Liability,** Paragraph **2., Exclusions** is amended to add the following:

This insurance does not apply to:

"Bodily injury" to:
**(1)** A person arising out of any:
**(a)** Refusal to employ that person;
**(b)** Termination of that person's employment; or
**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;
**(2)** Whether the insured may be liable as an employer or in any other capacity; and
**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** Section **I – Coverage B – Personal And Advertising Injury Liability, Paragraph 2., Exclusions** is amended to add the following:

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:
**(a)** Refusal to employ that person;
**(b)** Termination of that person's employment; or
**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000213

COMMERCIAL GENERAL LIABILITY
NX GL 167 05 17

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**4. EXCLUSION – EXTERIOR INSULATION AND FINISHING SYSTEMS (EIFS)**

**SECTION I – COVERAGES**, Paragraph **2. Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and Paragraph **2. Exclusions** of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY** are amended to add the following:

**A.** This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**(1)** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**(2)** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system," or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**(1)** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**(2)** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**(3)** A reinforced or unreinforced base coat;

**(4)** A finish coat providing surface texture to which color may be added; and

**(5)** Any flashing, caulking or sealant used with the system for any purpose

**5. EXCLUSION – MOLD, MILDEW OR FUNGUS**

**A.** Section **I – Coverage A – Bodily Injury and Property Damage Liability**, Paragraph **2. Exclusions** is amended to add the following:

This insurance does not apply to:

**Fungi Or Bacteria**

**(1)** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000214

COMMERCIAL GENERAL LIABILITY
NX GL 167 05 17

**(2)** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** **Section I – Coverage B – Personal and Advertising Injury Liability,** Paragraph **2. Exclusions** is amended to add the following:

This insurance does not apply to:

**Fungi Or Bacteria**

**(1)** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**(2)** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**6.** **EXCLUSION – NUCLEAR ENERGY LIABILITY**

The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

**(1)** The "nuclear material"
**(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or
**(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

AIIC 000215

COMMERCIAL GENERAL LIABILITY
NX GL 167 05 17

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this endorsement:

**(1)** "Hazardous properties" includes radioactive, toxic or explosive properties.

**(2)** "Nuclear material" means "source material," "special nuclear material" or "by-product material."

**(3)** "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**(4)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

**(5)** "Waste" means any waste material
  **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and
  **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

**(6)** "Nuclear facility" means:
  **(a)** Any "nuclear reactor";
  **(b)** Any equipment or device designed or used for
    i.   separating the isotopes of uranium or plutonium,
    ii.  processing or utilizing "spent fuel," or
    iii. handling, processing or packaging "waste";
  **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
  **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste," and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**(7)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**7.  EXCLUSION – SILICA OR SILICA RELATED DUST**

    **A. Section I – Coverage A – Bodily Injury and Property Damage Liability,** Paragraph **2., Exclusions** is amended to add the following:

    This insurance does not apply to:

    **Silica Or Silica-Related Dust**

    **(1)** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust."

    **(2)** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust."

               
Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000216

**(3)** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of "silica" or "silica-related dust" by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability:**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**(1)** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**(2)** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust," by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**(1)** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**(2)** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

**8. EXCLUSION – SUITS BETWEEN INSUREDS**

Section **I – COVERAGES**, **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Paragraph **2. Exclusions,** and **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY,** Paragraph **2. Exclusions** are amended to add the following:

This insurance does not apply to:

Any obligation to defend any "suit" or claim against the "insured" alleging "bodily injury," "property damage," or "personal and advertising injury" resulting from, relating to, alleged by or brought between one Insured against another Insured under this policy.

**9. EXCLUSION – TOTAL LEAD**

Section **I – COVERAGES**, **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Paragraph **2. Exclusions,** and **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY,** Paragraph **2. Exclusions** are amended to add the following:

This insurance does not apply to:

**(A)** "Bodily injury," "property damage," or "personal and advertising injury," arising out of, resulting from, caused by or contributed to by the presence, ingestion, inhalation, or absorption of or exposure to lead, lead compounds, or lead contained in any materials;

**(B)** Any cost or expense to abate, mitigate, remove, or dispose of lead, lead compounds or materials containing lead;

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000217

COMMERCIAL GENERAL LIABILITY
NX GL 167 05 17

**(C)** Any supervision, instruction, recommendations, warnings or advice given or which should have been given in connection with parts **(A)** or **(B)** above; or

**(D)** Any obligation to share damages with or repay anyone else who must pay damages in connection with parts **(A), (B)** or **(C)** above.

10. **EXCLUSION – USL&H, JONES ACT and MARTIME**

Section **I COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** Paragraph **2. Exclusions,** and **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY,** Paragraph **2. Exclusions** are amended to add the following:

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of or resulting from:

**(A)** operations over navigable waters or offshore including but not limited to drilling and production platforms, pipelines, and vessels; or

**(B)** direct or indirect actions including but not limited to subrogation involving U.S. Longshore & Harbor Workers Compensation Act (USL&H), Merchant Marine Act ("Jones Act") or other maritime laws and any amendments to those laws.

**All other terms and conditions remain unchanged.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000218

This page intentionally left blank

AIIC 000219

**COMMERCIAL GENERAL LIABILITY**
**NX GL 173 12 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – FORMALDEHYDE

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following Exclusion is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and paragraph **2. Exclusions** of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**:

**2. Exclusions**

This insurance does not apply to any:

**Formaldehyde**

 "bodily injury," "property damage" or "personal or advertising injury" arising from the manufacture, handling, distribution, sale, application, consumption, use or exposure to any product known as formaldehyde or which has the same chemical formula or which is a formaldehyde derivative or which is generally known in the trade in which it is used as having a like formulation, structure or function by whatever name manufactured, sold or distributed and whether the existence of or exposure to formaldehyde caused or is alleged to have caused damage in any sequence or combination with, or contributed to or was contributed to by any other cause or causes of injury or damage.

This Exclusion shall apply without regard to the basis of an insured's liability.

This Exclusion applies to any injury or damage caused by the removal, eradication, detoxification, remediation or decontamination of formaldehyde or property containing formaldehyde, and further includes any liability, cost or expense to remediate or prevent "property damage," "bodily injury" or "personal injury" from formaldehyde.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000220

This page intentionally left blank

AIIC 000221

**COMMERCIAL GENERAL LIABILITY**
**NX GL 174 12 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - OVERSPRAY

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following Exclusion is added to **SECTION I – COVERAGES**, Paragraph **2. Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**2.  Exclusions**

This insurance does not apply to:

**Overspray**

"Property damage" arising out of the spraying of paint, foam or other material by you or any other person performing such work on your behalf, onto a surface which was not the intended recipient of the Paint, foam, or other material.

**B.** The following Exclusion is added to **SECTION I – COVERAGES**, Paragraph **2. Exclusions** of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**2.  Exclusions**

This insurance does not apply to:

**Overspray**

"Personal and advertising injury" arising out of the spraying of paint, foam or other material by you or any other person performing such work on your behalf, onto a surface which was not the intended recipient of the Paint, foam, or other material.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

AIIC 000222

This page intentionally left blank

AIIC 000223

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – WORK HEIGHT LIMITATION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following Exclusion is added to **SECTION I – COVERAGES,** paragraph **2. Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

  **2.  Exclusions**

  This insurance does not apply to:

  **Work Height**

  (1) "bodily injury" or "property damage" arising out of or resulting from ongoing operations performed above a ground height of three stories or 36 feet on the exterior of any building or structure conducted by you or on your behalf for yourself or for others; or

  (2) "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of or resulting from "your work" performed above a ground height of three stories or 36 feet on the exterior of any building or structure.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000224

This page intentionally left blank

AIIC 000225

POLICY NUMBER:    AES1040716 01

**COMMERCIAL GENERAL LIABILITY
NX GL 198 01 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – TOTAL PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This policy is hereby amended as follows:

The following exclusion is added to Paragraph **2.,Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusionsof Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply toany "bodily injury," "property damage," or "personal and advertising injury" or Supplementary Payments arising out of the rendering of or failure to render any professional services by you or anyone who is performing work on your behalf.

Professional services include, but not limited to, the following:

1.  Preparing, approving, recommending or failing to prepare, approve, or recommend, maps, drawings, opinions, reports, surveys, field orders, change orders, designs, specifications, hazard assessment plans, response actions, abatement methods or products, air monitoring plans or insurance requirements;
2.  Supervisory, inspection, training, or engineering activities;
3.  Commercial or industrial hygiene, air monitoring, testing, or laboratory analysis;
4.  Construction engineering, design, or assessment;
5.  Foundation engineering, design or assessment;
6.  Slope stability engineering, design or assessment;
7.  Seismic engineering, design, or assessment;
8.  Geotechnical engineering, design or assessment;
9.  Soil engineering, compaction studies, or assessment;
10. Construction material testing;
11. Medical, health care, psychiatric, psychological, nursing, emergency medical or related services;
12. Legal, paralegal or related services;
13. Insurance, investment advisory services, financial, accounting, data processing; or
14. Architectural services

We shall have no duty to defend any insured against any loss, claim, "suit" or other proceeding alleging damages arising from activities excluded by this endorsement.

All other terms, conditions, and exclusions shall remain the same.

NX GL 198 01 13                                                                                                                    Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000226

This page intentionally left blank

AIIC 000227

# Exhibit 2



# Exhibit 2

232330.1

**Gail Henderson**

| | |
|---|---|
| **From:** | CMB Developers <cmbdevelopers@gmail.com> |
| **Sent:** | Friday, February 15, 2019 3:16 PM |
| **To:** | Gail Henderson |
| **Subject:** | 950 El Paso complaint |
| **Attachments:** | legalzoom.pdf |

here is a link to what legalzoom forwarded to me. They initially received it on Tues the 12th.  For some reason it won't let me download it. I've also attached a pdf print for you to view

https://www.legalzoom.com/collaborationcenter/#/preview?url=aHR0cHM6Ly9sZWdhbHpvb21wbGF0Zm9yb S5ib3guguY29tL3MvNnJ5bXZhNDI3b25hOHdkbDE5eG1ndnBnY2NkeGYxeTc=&type=ZmlsZQ==&id=NDAx MDQ2NDU5OTU0&name=U2VydmljZSBvZiBQcm9jZXNzXzQzOTIwMDA2QzZBRUEucGRm&aid=YW U5YjQ3MjMtODczNv00MjA0LWI5Y2YtYjZmMmJiNmVlNDRi&at=ZzAyTnEydnVsZzNHeTFmbDVKZjFI Uk1rakJyeQ==&cid=MTAyMzYzNDY=&bid=MzU3MjY0OTgzMg==&signature=a1efbf050f64dd140d4497d fcc463d8afedc5693546529969c01df61514f76f7

AIIC 000443

2/15/2019                                        Registered Agent Portal

Welcome, David    Logout

MY ACCOUNT              ‹ BACK                          ⬇ DOWNLOAD    ⇗ SHARE    CONSULTATION

All companies

CMB Developers Inc.,          Service of Process                                    Order #30642264
CA                            CMB Developers Inc., CA
Order#505491243
                              Uploaded:    02/12/2019 at 08:23 am
CMB Holdings, LLC, CA         Viewed:      02/12/2019 at 09:20 am
Order#519390097

6111 Monterey, LLC,
CA
Order#520633878

AIIC 000444



*legalzoom*

February 8, 2019

David Lee
1080 Everett Place
Los Angeles, CA 92626

Dear David Lee:

Thank you for choosing LegalZoom to serve as your registered agent for CMB Developers Inc.

We received the enclosed document(s) on your behalf and request that you review it thoroughly. This can also be viewed online through our Registered Agent portal by logging into your LegalZoom My Account. Additionally, we have emailed the document(s) to you at the email address we have on file: cmbdevelopers@gmail.com

If you need help understanding how to respond to the documents you've received, you can speak with a trusted attorney with expertise in your state by becoming a member of our legal plan, Business Advantage Pro.

To become a member of Business Advantage Pro, please call us at (855) 781-7549. If you have any questions, you can reach customer care at (800) 773-0888 Mon-Fri 5am to 7pm PT; Saturday 7am to 4pm PT or email us at customercare@legalzoom.com.

Thank you again for choosing LegalZoom. We look forward to supporting you in the future.

Best regards,

Your LegalZoom Team



AIIC 000445

**legalzoom.com**    | SERVICE OF PROCESS ACCEPTANCE FORM

| ACCEPTED BY: *Melanie* | | |
| LOCATION: BRAND | DATE: 2/8/19 | TIME: 3:44 |

| NAME OF COMPANY BEING SERVED: | CMB dEvEloPErs INC |
| SERVER'S NAME: | Humberto PAlAClo |
| SERVER'S ADDRESS: | 330 N. CAliforNIA   City:   State:   Zip: |
| SERVER'S PHONE/EMAIL: | Telephone ( 818 ) 476 2613   Email Address: |

SERVER'S ACKNOWLEDGMENT

I confirm serving documents to LegalZoom.com, Inc. who is the Registered Agent for the company being served.

Server's Signature                                    1-18-19  Date

Acceptor's Signature                                  2/8/19  Date

‹ BACK

AIIC 000446

Electronically FILED by Superior Court of California, County of Los Angeles on 01/25/2019 06:07 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores, Deputy Clerk
19STCV02690

**SUMMONS**
*(CITACION JUDICIAL)*

SUM-100

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CMB DEVELOPERS, INC., a California corporation; RADIX FIRE
PROTECTION, INC., a California corporation; and DOES 1 through 100,
inclusive,
**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

CASEY CONWAY, an individual,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: |
|---|---|
| *(El nombre y dirección de la corte es):* Central | (Número del Caso) |

111 North Hill Street
Los Angeles, California 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:  T: (213) 228-0330; F: (213) 489-2204
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Aaron B. Booth, Esq. Law Offices of Aaron B. Booth, 707 Wilshire Blvd. 46th Floor, Los Angeles, CA 90017

| DATE: January 25, 2019 | 01/25/2019 | Clerk, by | Sherri R. Carter Executive Officer / Clerk of Court | , Deputy |
|---|---|---|---|---|
| *(Fecha)* | | *(Secretario)* | Heather A. Flores | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☒ on behalf of *(specify)*: CMB Developers, Inc., a California corporation

   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)        ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

| | | Page 1 of 1 |
|---|---|---|

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

AIIC 000447

< BACK

2/15/2019                                    Registered Agent Portal

Electronically FILED by Superior Court of California, County of Los Angeles on 01/25/20 xx:xx PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores,Deputy Clerk

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Aaron B. Booth, Esq. (SBN 195493)<br>Law Offices of Aaron B. Booth<br>707 Wilshire Boulevard, 46th Floor<br>Los Angeles, California 90017<br>TELEPHONE NO.: (213) 228-0330     FAX NO.: (213) 489-2204<br>ATTORNEY FOR (Name): Plaintiff Casey Conway | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS:  111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE:  Los Angeles, California 90012
BRANCH NAME:  Central

CASE NAME:
Casey Conway v. CMB Developers, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [✓] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint (not specified above) (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition (not specified above) (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is  [✓] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties     d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel     e. [ ] Coordination with related actions pending in one or more courts
   issues that will be time-consuming to resolve     in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence     f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action (specify): 1) Violation of building standards; 2) Breach of contract; 3) Breach of express warranty; 4) Third
5. This case [ ] is  [✓] is not  a class action suit.     party beneficiary claim for breach of contract; 5) Strict liability; 6) Negligence
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: January 25, 2019
Aaron H. Booth, Esq.
_____                    _____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

[< BACK]

https://www.legalzoom.com/dra/document/401046459954                                     5/46

AIIC 000448

Registered Agent Portal

CM-010

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book account) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

< BACK

AIIC 000449

2/15/2019                                            Registered Agent Portal



| SHORT TITLE: Casey Conway v. CMB Developers, Inc., et al. | CASE NUMBER: |
|---|---|

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**
**(CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)**

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) | |
|---|---|
| 1. Class actions must be filed in the Stanley Mosk Courthouse, Central District. | 7. Location where petitioner resides. |
| 2. Permissive filing in central district. | 8. Location wherein defendant/respondent functions wholly. |
| 3. Location where cause of action arose. | 9. Location where one or more of the parties reside. |
| 4. Mandatory personal injury filing in North District. | 10. Location of Labor Commissioner Office. |
| 5. Location where performance required or defendant resides. | 11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury). |
| 6. Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

| LACV 109 (Rev 2/16) | **CIVIL CASE COVER SHEET ADDENDUM** | Local Rule 2.3 |
|---|---|---|
| LASC Approved 03-04 | **AND STATEMENT OF LOCATION** | Page 1 of 4 |

< BACK

AIIC 000450

2/15/2019                                        Registered Agent Portal

| SHORT TITLE: Casey Conway v. CMB Developers, Inc., et al. | | CASE NUMBER |
|---|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation     Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

AIIC 000451

2/15/2019                                            Registered Agent Portal

| SHORT TITLE: Casey Conway v. CMB Developers, Inc., et al. | | CASE NUMBER | |
|---|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ / Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☒ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not<br>Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 6 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

| LACIV 109 (Rev 2/16)<br>LASC Approved 03-04 | **CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION** | Local Rule 2.3<br>Page 3 of 4 |
|---|---|---|

‹ BACK

AIIC 000452

| SHORT TITLE: Casey Conway v. CMB Developers, Inc., et al. | CASE NUMBER |
|---|---|

**Step 4:  Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected.  Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br><br>☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS:<br>950 El Paso Drive |
|---|---|

| CITY:<br>Los Angeles | STATE:<br>CA | ZIP CODE:<br>90042 | |
|---|---|---|---|

**Step 5:  Certification of Assignment:** I certify that this case is properly filed in the _____ Central _____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated:  January 25, 2019

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1.  Original Complaint or Petition.

2.  If filing a Complaint, a completed Summons form for issuance by the Clerk.

3.  Civil Case Cover Sheet, Judicial Council form CM-010.

4.  Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5.  Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6.  A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7.  Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

| LACIV 109 (Rev 2/16)<br>LASC Approved 03-04 | **CIVIL CASE COVER SHEET ADDENDUM**<br>**AND STATEMENT OF LOCATION** | Local Rule 2.3<br>Page 4 of 4 |
|---|---|---|

< BACK

AIIC 000453

Registered Agent Portal

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | | | | | | | |
|---|---|---|---|---|---|---|---|
| COURTHOUSE ADDRESS Stanley Mosk Courthouse 111 North Hill Street, Los Angeles, CA 90012 | | | | FILED Superior Court of California County of Los Angeles 01/25/2019 Sherri R. Carter, Executive Officer / Clerk of Court By _____ Heather A. Flores ____ Deputy | | | |
| NOTICE OF CASE ASSIGNMENT UNLIMITED CIVIL CASE | | | | | | | |
| Your case is assigned for all purposes to the judicial officer indicated below. | | | | CASE NUMBER 19STCV02690 | | | |

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✓ | Rafael A. Ongkeko | 73 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record    Sherri R. Carter, Executive Officer / Clerk of Court

on  02/04/2019                                By  Heather A. Flores                  , Deputy Clerk
        (Date)

LACIV 190 (Rev 5/18)          **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

< BACK

AIIC 000454

### INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

**APPLICATION**
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

**PRIORITY OVER OTHER RULES**
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

**CHALLENGE TO ASSIGNED JUDGE**
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

**TIME STANDARDS**
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

**COMPLAINTS**
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

**CROSS-COMPLAINTS**
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

**STATUS CONFERENCE**
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

**FINAL STATUS CONFERENCE**
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

**SANCTIONS**
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

**Class Actions**
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

**\*Provisionally Complex Cases**
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

LACIV 190 (Rev 6/15)      **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

< BACK

AIIC 000455

Registered Agent Portal

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



Superior Court of California
County of Los Angeles



Los Angeles County
Bar Association
Litigation Section

Los Angeles County
Bar Association Labor and
Employment Law Section



Consumer Attorneys
Association of Los Angeles



Southern California
Defense Counsel



Association of
Business Trial Lawyers



California Employment
Lawyers Association

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association
Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

AIIC 000456

Registered Agent Portal

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO:            FAX NO. (Optional): | | |

TELEPHONE NO:            FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

The parties agree that:

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i.   File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii.  Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i.   Also be filed on the approved form (copy attached);

      ii.  Include a brief summary of why the requested relief should be denied;

LACIV 036 (new)
LASC Approved 04/11          **STIPULATION – DISCOVERY RESOLUTION**          Page 1 of 3
For Optional Use

< BACK

AIIC 000457

Registered Agent Portal

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

    iii.  Be filed within two (2) court days of receipt of the Request; and

    iv.  Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| LACIV 036 (new)<br>LASC Approved 04/11<br>For Optional Use | **STIPULATION – DISCOVERY RESOLUTION** | Page 2 of 3 |
|---|---|---|

AIIC 000458

| SHORT TITLE: | CASE NUMBER |
|---|---|
|  |  |

**The following parties stipulate:**

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____ )

Date: _____

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____ )

Date: _____

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____ )

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 3 of 3

< BACK

AIIC 000459

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
| --- | --- | --- |
| | | |

TELEPHONE NO.:     FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
| --- | --- |

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

LACIV 229 (Rev 02/15)
LASC Approved 04/11      **STIPULATION – EARLY ORGANIZATIONAL MEETING**      Page 1 of 2
For Optional Use

< BACK

AIIC 000460

| SHORT TITLE | CASE NUMBER |
|---|---|
|  |  |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.   Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.   Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.   The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.   The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.   References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____            >    _____
(TYPE OR PRINT NAME)                       (ATTORNEY FOR PLAINTIFF)

Date:

_____            >    _____
(TYPE OR PRINT NAME)                       (ATTORNEY FOR DEFENDANT)

Date:

_____            >    _____
(TYPE OR PRINT NAME)                       (ATTORNEY FOR DEFENDANT)

Date:

_____            >    _____
(TYPE OR PRINT NAME)                       (ATTORNEY FOR DEFENDANT)

Date:

_____            >    _____
(TYPE OR PRINT NAME)                       (ATTORNEY FOR _____)

Date:

_____            >    _____
(TYPE OR PRINT NAME)                       (ATTORNEY FOR _____)

Date:

_____            >    _____
(TYPE OR PRINT NAME)                       (ATTORNEY FOR _____)

LACIV 229 (Rev 02/15)
LASC Approved 04/11          **STIPULATION – EARLY ORGANIZATIONAL MEETING**          Page 2 of 2

< BACK

AIIC 000461

2/15/2019                                           Registered Agent Portal

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                        FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE** (pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. For a Request for Informal Discovery Conference, **briefly** describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, **briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

LACIV 094 (new)                    **INFORMAL DISCOVERY CONFERENCE**
LASC Approved 04/11          (pursuant to the Discovery Resolution Stipulation of the parties)
For Optional Use

< BACK

AIIC 000462

2/15/2019                                     Registered Agent Portal

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO:  FAX NO (Optional):  E-MAIL ADDRESS (Optional):  ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.

The parties agree that:

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| LACIV 075 (new)  LASC Approved 04/11  For Optional Use | STIPULATION AND ORDER – MOTIONS IN LIMINE | Page 1 of 2 |
|---|---|---|

< BACK

AIIC 000463

2/15/2019                                    Registered Agent Portal

| SHORT TITLE: | | CASE NUMBER: |
|---|---|---|
| | | |

**The following parties stipulate:**

Date: _____

    _____
    (TYPE OR PRINT NAME)

Date: _____

    _____
    (TYPE OR PRINT NAME)

Date: _____

    _____
    (TYPE OR PRINT NAME)

Date: _____

    _____
    (TYPE OR PRINT NAME)

Date: _____

    _____
    (TYPE OR PRINT NAME)

Date: _____

    _____
    (TYPE OR PRINT NAME)

Date: _____

    _____
    (TYPE OR PRINT NAME)

➢ _____
    (ATTORNEY FOR PLAINTIFF)

➢ _____
    (ATTORNEY FOR DEFENDANT)

➢ _____
    (ATTORNEY FOR DEFENDANT)

➢ _____
    (ATTORNEY FOR DEFENDANT)

➢ _____
    (ATTORNEY FOR _____ )

➢ _____
    (ATTORNEY FOR _____ )

➢ _____
    (ATTORNEY FOR _____ )

**THE COURT SO ORDERS.**

Date: _____

    _____
    JUDICIAL OFFICER

| LACIV 075 (new)<br>LASC Approved 04/11 | **STIPULATION AND ORDER – MOTIONS IN LIMINE** | Page 2 of 2 |
|---|---|---|

< BACK

AIIC 000464

Registered Agent Portal

# Superior Court of California
# County of Los Angeles



## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKET

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross-complainants must serve the ADR Information Packet on any new parties named to the action together with the cross-complaint.

There are a number of ways to resolve civil disputes without having to sue someone. These alternatives to a lawsuit are known as alternative dispute resolution (ADR).

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediations, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help resolve disputes without having to go to court.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

< BACK

AIIC 000465

2/15/2019                                        Registered Agent Portal

**Advantages of ADR**

- Often faster than going to trial
- Often less expensive, saving the litigants court costs, attorney's fees and expert fees.
- May permit more participation, allowing parties to have more control over the outcome.
- Allows for flexibility in choice of ADR processes and resolution of the dispute.
- Fosters cooperation by allowing parties to work together with the neutral to resolve the dispute and mutually agree to remedy.
- There are fewer, if any, court appearances. Because ADR can be faster and save money, it can reduce stress.

**Disadvantages of ADR** - ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.
- ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.
- The neutral may charge a fee for his or her services.
- If the dispute is not resolved through ADR, the parties may then have to face the usual and traditional costs of trial, such as attorney's fees and expert fees.

**The Most Common Types of ADR**

- **Mediation**

  In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the parties, rather than the mediator, decide how the dispute is to be resolved.

  - **Mediation is particularly effective** when the parties have a continuing relationship, like neighbors or business people. Mediation is also very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to express their feelings and find out how the other sees things.

  - **Mediation may not be effective** when one party is unwilling to cooperate or compromise or when one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

Page 2 of 4



AIIC 000466

2/15/2019                                    Registered Agent Portal

- **Arbitration**

  In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is typically less formal than a trial, and the rules of evidence may be relaxed. Arbitration may be either "binding" or "non-binding." Binding arbitration means the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Non-binding arbitration means that the parties are free to request a trial if they reject the arbitrator's decision.

  Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

- **Mandatory Settlement Conference (MSC)**

  Settlement Conferences are appropriate in any case where settlement is an option. Mandatory Settlement Conferences are ordered by the Court and are often held near the date a case is set for trial. The parties and their attorneys meet with a judge who devotes his or her time exclusively to preside over the MSC. The judge does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.

  The Los Angeles Superior Court Mandatory Settlement Conference (MSC) program is free of charge and staffed by experienced sitting civil judges who devote their time exclusively to presiding over MSCs. The judges participating in the Judicial MSC program and their locations are identified in the List of Settlement Officers found on the Los Angeles Superior Court website at http://www.lacourt.org/. This program is available in general jurisdiction cases with represented parties from independent calendar (IC) and Central Civil West (CCW) courtrooms. In addition, on an ad hoc basis, personal injury cases may be referred to the program on the eve of trial by the personal injury master calendar courts in the Stanley Mosk Courthouse or the asbestos calendar court in CCW.

  In order to access the Los Angeles Superior Court MSC Program the judge in the IC courtroom, the CCW Courtroom or the personal injury master calendar courtroom must refer the parties to the program. Further, all parties must complete the information requested in the Settlement Conference Intake Form and email the completed form to mscdept18@lacourt.org.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

                                    Page 3 of 4

AIIC 000467

Registered Agent Portal

**Additional Information**

To locate a dispute resolution program or neutral in your community:

- Contact the California Department of Consumer Affairs (www.dca.ca.gov) Consumer Information Center toll free at 800-952-5210, or;
- Contact the local bar association (http://www.lacba.org/) or;
- Look in a telephone directory or search online for "mediators; or "arbitrators."

There may be a charge for services provided by private arbitrators and mediators.

A list of approved State Bar Approved Mandatory Fee Arbitration programs is available at
http://calbar.ca.gov/Attorneys/MemberServices/FeeArbitration/ApprovedPrograms.aspx#19

To request information about, or assistance with, dispute resolution, call the number listed below. Or you may call a Contract Provider agency directly. A list of current Contract Provider agencies in Los Angeles County is available at the link below.

http://css.lacounty.gov/programs/dispute-resolution-program-drp/

County of Los Angeles Dispute Resolution Program
3175 West 6th Street, Room 406
Los Angeles, CA 90020-1798
TEL: (213) 738-2621
FAX: (213) 386-3995

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

Page 4 of 4

< BACK

AIIC 000468



Electronically FILED by Superior Court of California, County of Los Angeles on 01/25/2019 06:07 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores,Deputy Clerk
19STCV02593

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Rafael Ongkeko

1   Aaron B. Booth, Esq., SBN 105493
    **LAW OFFICES OF AARON B. BOOTH**
2   707 Wilshire Boulevard, 46th Floor
    Los Angeles, California 90017
3   Telephone:  (213) 228-0330
    Facsimile:   (213) 488-2204
4   abooth@aaronbooth.com

5   Attorneys for Plaintiff, CASEY CONWAY

6

7                       **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8              **FOR THE COUNTY OF LOS ANGELES – UNLIMITED JURISDICTION**

9

10  CASEY CONWAY, an individual,            **CASE NO.:**
                                           Unlimited Civil Case
11              Plaintiff,                  Amount demanded exceeds $25,000.00

12      v.                                 Judge:
                                           Assigned to Dept.
13  CMB DEVELOPERS, INC. a California
    corporation; RADIX FIRE PROTECTION, INC.,  **COMPLAINT FOR:**
14  a California corporation; and DOES 1 through
    100, inclusive,                        **1) VIOLATION OF BUILDING
15                                              STANDARDS;**
16              Defendants.
                                           **2) BREACH OF CONTRACT;**
17
                                           **3) BREACH OF EXPRESS WARRANTY;**
18
                                           **4) THIRD PARTY BENEFICIARY CLAIM
19                                              FOR BREACH OF CONTRACT;**
20
                                           **5) STRICT LIABILITY;**
21
                                           **6) NEGLIGENCE**
22

23      Plaintiff CASEY CONWAY ("Plaintiff") hereby alleges as follows:

24                                  **PARTIES**

25      1.    Plaintiff CASEY CONWAY is an individual that resides in the City of Los

26  Angeles.

27      2.    Plaintiff is informed and believes, and on the basis of such information and

28  belief, allege, that Defendant CMB Developers, Inc. ("CMB" or "Defendant") is a California

                                    - 1 -
                                  COMPLAINT

< BACK

AIIC 000469

2/15/2019                                    Registered Agent Portal

1   corporation with its principal place of business in Beverly Hills, California.  Defendant is in

2   the business of designing and building home construction and home building.  Defendant

3   operates and conducts business in the County and City of Los Angeles, State of California.

4   Defendant CMB was the developer and/or general contractor of the Property and the

5   projects within which the Property was located.

6        3.   Plaintiff is informed and believes, and on the basis of such information and

7   belief, allege, that Defendant Radix Fire Protection, Inc. ("Radix" or "Defendant") is a

8   California corporation with its principal place of business in Los Angeles, California.

9   Defendant is in the business of providing fire protection services.  Defendant Radix was a

10  subcontractor hired and contracted by Defendant CMB to install, construct, develop, and/or

11  manufacture a fire protective water sprinkler system inside the Property.

12       4.   Plaintiff does not know the true names and/or capacities, whether individual,

13  corporation, partnership or otherwise, of defendants Does 1 through 100, inclusive, and

14  therefore sues these defendants by such fictitious names.  Plaintiff is informed and believes,

15  and based thereon alleges, that each of the fictitiously named defendants is, in some

16  manner, responsible for the events and happenings referred to herein, either contractually or

17  tortuously.  When Plaintiff ascertains the true names and capacities of Does 1 through 100,

18  he will amend this Complaint accordingly.

19       5.   Plaintiff is informed and believes, and based thereon alleges, that Defendants

20  are, and at all times pertinent hereto were, the agents, servants, employees, joint venturers,

21  and/or partners of each of the other co-Defendants, and in doing the tings alleged herein,

22  each co-Defendant was acting within the scope of authority conferred upon that party by

23  consent, approval, and/or ratification of each of the other co-Defendants, whether said

24  authority was actual or apparent.

25                          <u>**GENERAL ALLEGATIONS**</u>

26       6.   Plaintiff purchased the property located at 950 El Paso Dr., Los Angeles,

27  California 90042 ("the Property"), in or around October/November 2016.

28       7.   The Property was purchased by Plaintiff from Defendant CMB.  Attached

                                    - 2 -
                                  COMPLAINT

AIIC 000470

1  hereto as **Exhibit A** is a true and correct copy of the California Residential Purchase

2  Agreement and Joint Escrow Instructions executed by Plaintiff and Defendant CMB.

3          8.      The Property is a single-family, multi-level residence.

4          9.      Prior to the aforementioned sale of the Property by Defendant CMB to Plaintiff,

5  Defendant CMB undertook the construction, development, remodeling and/or build of the

6  Property.

7          10.     In so doing, Defendant CMB hired, retained, employed or contracted for the

8  services of Defendant Radix to install, include, develop, maintain and/or manufacture a

9  water sprinkler fire protection system at the Property.   Plaintiff, upon information and belief,

10  thereon alleges that Defendant CMB entered into a written subcontracting agreement with

11  Defendant Radix to perform the services at the Property.

12          11.     On July 6, 2018, the Property suffered extensive water damage arising out of a

13  malfunctioning sprinkler fire protective system that dispersed a large quantity of water into

14  the Property.

15          12.     The damages suffered by Plaintiff include, but are not limited to: damage to the

16  Property; costs of repairs, replacement and workmanship; costs of investigator and forensic

17  expert; retaining legal counsel; loss of personal property; loss of use of the dwelling; and

18  diminution of value of the Property.   Further, as a direct result of the failure and refusal of

19  Defendants to repair and/or compensate Plaintiff for the damages suffered, it is likely that

20  additional damages in the form of mold and water remediation have occurred and/or

21  continue to occur.

22                                  **FIRST CAUSE OF ACTION**

23                  **(Violation of Building Standards (Cal. Civ. Code §896) Against**

24                              **All Defendants and Does 1-100)**

25          13.     Plaintiff incorporates, by reference each and every allegation contained in

26  paragraphs 1 through 12, inclusive, as though fully set forth herein above.

27          14.     Plaintiff purchased the Property in or around October/November 2016.

28          15.     Plaintiff has fully complied with the provisions set forth in Cal. Civ. Code §895

                                        - 3 -
                                     COMPLAINT

< BACK

AIIC 000471

Registered Agent Portal

*et seq.* to no avail, and now rightfully brings this action for violation of building standards as set forth in Cal. Civ. Code §896.

16.   Defendant CMB, at all times mentioned herein was in the business of developing and selling homes to the public in and within the City and County of Los Angeles.

17.   Defendant Radix, at all times mentioned herein was in the business of installing, producing, manufacturing and/or inserting fire protective sprinkler systems to homes and other types of units/buildings in and within the City and County of Los Angeles.

18.   At all times herein mentioned and material hereto, Defendants knew and/or intended that the Property would be purchases by a member of the public at large and use the Property without further inspection for defects.

19.   Plaintiff purchased the Property from Defendant CMB and moved into the Property.

20.   At the time of the purchase by Plaintiff, the Property was defective and unfit for its intended purpose because Defendants did not construct the Property in a workmanlike manner as manifested by, but not limited to, defects which have resulted in damage to the home.

21.   The defects include, pursuant to Cal. Civ. Code §896, without limitation and to various degrees on the Plaintiff's residence (the Property), the following:

...
(14) The lines and components of the plumbing system, sewer system, and utility systems shall not leak.
...
(d) With respect to fire protection issues:
(1) A structure shall be constructed so as to materially comply with the design criteria of the applicable government building codes, regulations and ordinances for fire protection of the occupants in effect at the time of the original construction.
...
(e) With respect to plumbing and sewer issues:
Plumbing and sewer systems shall be installed to operate properly and shall not materially impair the use of the structure by its inhabitants...
...
(g) With respect to issues regarding other areas of construction:
...
(3) (A) To the extent not otherwise covered by these standards, manufactured products, including, but not limited to, windows, doors, roofs, plumbing

- 4 -
COMPLAINT

< BACK

AIIC 000472

1    products and fixtures, fireplaces, electrical fixtures, HVAC units, countertops,
2    cabinets, paint, and appliance shall be installed so as not to interfere with the
     products' useful life, if any.
3
     ...
4    (15) Structures shall be constructed in such a manner so as not impair the
     occupant's safety because they contain public health hazards as determined
5    by a duly authorized public health official, health agency, or government entity
     having jurisdiction. This paragraph does not limit recovery for any damages
6    caused by violation of any other paragraph of this section on the grounds that
     the damages do not constitute a health hazard.
7
8         22.    The defects regarding the malfunctioning water sprinkler fire protective system
9    became known by Plaintiff on July 6, 2018. Plaintiff, by and through his counsel of record,
10   thereafter gave notice to Defendants of the defective quality of the installed sprinkler system.
11        23.    The defects alleged herein above are defects that were not apparent by
12   reasonable inspection of the Property at the time of purchase. The defects thereafter
13   manifested.
14        24.    As a result of the defective conditions of the Property as herein alleged above,
15   Plaintiff has been specifically damaged in the following ways, as well as others which will be
16   included with leave of court when ascertained:
17            a. Plaintiff will be forced to incur expense for restoration and repairs of the
18               Property to cure the damage, defects and/or deficiencies. The exact amount
19               of the damages is presently unknown. However, the current estimate for the
20               loss and repair is $274,602.03;
21            b. Plaintiff will likely be forced to incur expense and cost for remediation of any
22               water loss that has caused damage, including mold damage, as a result of the
23               defect and deficiencies;
24            c. Plaintiff has suffered loss of use of the Property since July 6, 2018, and
25               continues to suffer loss of use of the Property;
26            d. Plaintiff has suffered loss to his personal belongings that were in his residence
27               at the time that the sprinkler system malfunctioned and caused an extensive
28               amount of water to enter and be disbursed through the Property;

- 5 -
COMPLAINT

< BACK

AIIC 000473

e.  Plaintiff has been forced to retain expert consultants to analyze and determine the method of repairing the aforementioned defects and damage.  Plaintiff is unaware of the precise amount of such damage but will be established at the time of trial;

f.  Plaintiff has been forced to retain legal services in order to assist in the representation and efforts to obtain damages for the loss suffered; and

g.  Plaintiff has suffered diminution of value of the Property.

25.   Defendants, and each of them, as developers, mass producers, builders, contractors and subcontractors are liable for and responsible to Plaintiff for all damages suffered as a result of the above described violations of Cal. Civ. Code §896.

### SECOND CAUSE OF ACTION

### (Breach of Contract Against Defendant CMB)

26.   Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 25, inclusive, as though fully set forth herein above.

27.   Plaintiff entered into a sales contract with Defendant CMB to purchase the Property. Pursuant to said contract and in exchange for the sum paid by Plaintiff, Defendant CMB agreed to provide Plaintiff with a quality residence which was developed, remodeled, built and/or constructed in a workmanlike manner.

28.   Plaintiff performed all conditions, covenants and promises required by the sales contract in accordance with the terms and conditions of the contract.

29.   Defendant CMB breached the sales contract as set forth herein by failing to provide a residence developed, built, remodeled and/or constructed in a workmanlike manner.

30.   As a result and proximate cause of Defendant CMB's breach, Plaintiff has suffered damages, as described above in paragraph 24.

31.   The sales agreement between the parties memorializing the sale of the Property, provides that the prevailing party shall be entitled to reasonable attorneys' fees and costs from the non-prevailing party, except as provided in paragraph 22A. (Exhibit A, p.

- 8 -
COMPLAINT

BACK

AIIC 000474

1   9, ¶25)  Plaintiff, by and through his counsel of record, requested that Defendant CMB

2   engage in mediation as set forth in paragraph 22A of the sales agreement.   However,

3   Defendant CMB refused and/or failed to respond to said request.   Therefore, Plaintiff is

4   entitled to the recovery of attorneys' fees and costs.

5                     **THIRD CAUSE OF ACTION**

6      **(Breach of Express Warranty Against All Defendants and Does 1-100)**

7       32.   Plaintiff incorporates by reference each and every allegation contained in

8   paragraphs 1 through 31, inclusive, as though fully set forth herein above.

9       33.   Defendants expressly warranted through the real estate purchase agreement

10   and other documents that the Property was designed, constructed, developed, remodeled,

11   inspected and manufactured, in accordance with all the applicable Federal, State and

12   municipal law, ordinances, rules and regulations and that the Property was structurally

13   sound, free of all material defects and designed, remodeled, built and constructed for the

14   intended purpose.

15       34.   Defendants further warranted that the home, the Property, was constructed

16   thereon in good working order and condition with no deficiencies therein.

17       35.   Plaintiff relied on Defendants' express representations.

18       36.   Defendants breach said warranties in that the Property was not properly

19   designed, constructed, manufactured, inspected and/or built and was defective.   Specifically,

20   the water sprinkler fire prevention system malfunctioned causing extensive water to enter

21   into the Property.

22       37.   The defects and deficiencies became known and were discovered by Plaintiff

23   on July 6, 2018.

24       38.   Plaintiff, thereafter, gave notice to Defendants in a timely fashion of the

25   defective quality of the above-mentioned items.   However, Defendants failed and/or refused

26   to rectify said items.   Further, Defendants refused and/or failed to compensate Plaintiff for all

27   losses, damages and repairs.

28       39.   The damages described hereinabove (Paragraph 24) caused by the breaches

- 7 -
COMPLAINT

AIIC 000475

Registered Agent Portal

1   of warranty by Defendants, and each of them, were not apparent by reasonable inspection

2   of the Property and project at the time of purchase.  The defects and damages were latent

3   and were not reasonably apparent to Plaintiff until July 6, 2018.

4        40.    As a result of the foregoing acts or omissions by Defendants, Plaintiff has been

5   damaged.

6                                    **FOURTH CAUSE OF ACTION**

7                        **(Third Party Beneficiary Claim for Breach of Contract**

8                            **Against Defendant Radix and Does 1-100)**

9        41.    Plaintiff incorporates by reference each and every allegation contained in

10   paragraphs 1 through 40, inclusive, as though fully set forth herein above.

11       42.    Plaintiff is informed and believes, and thereon alleges, that Defendant CMB

12   and Defendant Radix entered into written subcontracting agreement(s) to perform certain

13   portions of work at the Property.

14       43.    Plaintiff is further informed and believes, and thereon alleges, that under the

15   terms of the written subcontract agreement(s) entered into between Defendant CMB and

16   Defendant Radix, Defendant Radix warranted that the work performed under their written

17   subcontract agreement(s) would be free from all material defects and in compliance with

18   contractual terms and/or building codes.

19       44.    Plaintiff is further informed and believes, and thereon alleges, that at the time

20   of written subcontract agreement(s) was/were entered into by and between Defendants, the

21   parties intended to benefit the purchaser of the Property, Plaintiff, through the performance

22   of the written subcontract agreements.

23       45.    Defendant Radix breached the written subcontract agreement(s) with

24   Defendant CMB by failing to perform all work associated with the Property in a workmanlike

25   manner and in accordance with the terms of the subcontract agreement(s).

26       46.    As a proximate result of Defendant Radix's breach, Plaintiff – as the intended

27   beneficiary of the subcontract agreement(s) – has been damaged in an amount to be proven

28   at trial, but not limited to the cost of repair of the Property, replacing of defective materials,

                                     - 8 -
                                    COMPLAINT

< BACK

AIIC 000476

1    workmanship, testing and investigation, loss of personal property, loss of use of property,

2    diminution of fair market value, and legal and professional costs, as well as other incidental

3    and consequential damages.

4                            **FIFTH CAUSE OF ACTION**

5                   **(Strict Liability Against All Defendants and Does 1-100)**

6         47.    Plaintiff incorporates by reference each and every allegation contained in

7    paragraphs 1 through 46, inclusive, as though fully set forth herein above.

8         48.    Plaintiff is informed and believes and thereon alleges that at all relevant time,

9    Defendant CMB was a knowledgeable and sophisticated builder, constructor and remodeler

10   of singe residences in Los Angeles County and throughout Southern California.

11        49.    Plaintiff is informed and believes and thereon alleges that Defendant CMB

12   began to operate and was licensed as a general contractor in California since 2013. Plaintiff

13   is informed and believes and thereon alleges that Defendant CMB has built, constructed

14   and/or remodeled numerous single-family homes in various sizes, types and subdivisions.

15   Residences that were sold to the public.

16        50.    At all times herein mentioned and material hereto, Defendant CMB knew and

17   intended that the Property would be purchased by a member of the public at large and used

18   by the purchaser (Plaintiff) without further inspection for defects.

19        51.    At the time of the purchase by Plaintiff, the Property was defective and unfit for

20   its intended purpose because Defendant CMB did not construct, develop, remodel and/or

21   build the Property in a workmanlike manner as manifested by, but not limited to, the defect in

22   the water sprinkler fire prevention system installed, added, inserted, manufactured and/or

23   developed, at the Property, by Defendant Radix.

24        52.    Plaintiff gave Defendant CMB, and its subcontract Defendant Radix, due and

25   timely notice of the defective quality of the above-mentioned items.

26        53.    The defect to the water sprinkler fire prevention system was not apparent to

27   Plaintiff or discoverable by reasonable inspection of the Property at the time of purchase.

28        54.    Plaintiff has suffered the following damages, not exclusive of any additional

                                   - 9 -
                                 COMPLAINT

< BACK

AIIC 000477

1    damages that may be suffered:

2       a.   Plaintiff will be forced to incur expense for restoration and repairs of the

3          Property to cure the damage, defects and/or deficiencies. The exact amount

4          of the damages is presently unknown. However, the current estimate for the

5          loss and repair is $274,602.03;

6       b.   Plaintiff will likely be forced to incur expense and cost for remediation of any

7          water loss that has caused damage, including mold damage, as a result of the

8          defect and deficiencies;

9       c.   Plaintiff has suffered loss of use of the Property since July 6, 2018 and

10         continues to suffer loss of use of the Property;

11      d.   Plaintiff has suffered loss to his personal belongings that were in his residence

12         at the time that the sprinkler system malfunctioned and caused an extensive

13         amount of water to enter and be disbursed through the Property;

14      e.   Plaintiff has been forced to retain expert consultants to analyze and determine

15         the method of repairing the aforementioned defects and damage. Plaintiff is

16         unaware of the precise amount of such damage but will be established at the

17         time of trial;

18      f.   Plaintiff has been forced to retain legal services in order to assist in the

19         representation and efforts to obtain damages for the loss suffered; and

20      g.   Plaintiff has suffered diminution of value of the Property.

21                   <u>SIXTH CAUSE OF ACTION</u>

22            **(Negligence Against All Defendants and Does 1-100)**

23       55.   Plaintiff incorporates by reference each and every allegation contained in

24    paragraphs 1 through 54, inclusive, as though fully set forth herein above.

25       56.   Defendants owed a duty of case to Plaintiff to plan, develop, construct, build,

26    modify, install, inspect and manufacture the Property and all installations, developments and

27    insertions pursuant to the applicable standard of care. The aforementioned Defendants

28    breached this duty by so carelessly and negligently planning, constructing, modifying,

- 10 -<br>COMPLAINT

< BACK

AIIC 000478

1   inspecting, installing, inserting and/or performing work and services at the Property as to

2   proximately cause defects and damages to the Property, Plaintiff's personal property, and

3   loss of use of property.

4        57.    Because of the carelessness and negligence of each of the Defendants, and

5   as a proximate result thereof, Plaintiff has been damages as previously alleged herein

6   above.

7        58.    The defects and damages described hereinabove (Paragraph 24) were caused

8   by the negligent and careless performed work by Defendants, and each of them.

9                                          **PRAYER**

10       **WHEREFORE**, Plaintiff prays for judgment against Defendants and Does 1-100 and

11  each of them, as follows:

12       1.    For all damages and costs provided by Cal. Civ. Code §944.

13       2.    For general and compensatory damages in an amount to be proven at trial;

14       3.    For special damages, in an amount to be proven at trial;

15       4.    For diminution of value of the Property;

16       5.    For loss of use of the Property and relocation expenses;

17       6.    For consequential damages, in an amount to be proven at trial;

18       7.    For prejudgment interest in accordance with law;

19       8.    For attorneys' fees and costs of suit herein; and,

20       9.    For such other and further relief as the Court may deem just and proper.

21                              **DEMAND FOR JURY TRIAL**

22  Plaintiff hereby demands a trial by jury.

23

24                                    Respectfully submitted,

25  DATED: January 25, 2019           LAW OFFICES OF AARON B. BOOTH

26

27  By:/

28       AARON B. B OOTH, Esq.
         Attorneys for Plaintiff CASEY CONWAY

F:\Casey Conway 090 J7 Pleia D:\ve\2018_Plea\lings\Construction Defect Complaint.doc

                                    - 11 -
                                  COMPLAINT

AIIC 000479

2/15/2019        Registered Agent Portal

**CALIFORNIA**
**ASSOCIATION**
**OF REALTORS®**

**CALIFORNIA**
**RESIDENTIAL PURCHASE AGREEMENT**
**AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form RPA-CA, Revised 12/15)

Date Prepared: 09/19/2016

**1. OFFER:**
  **A.** THIS IS AN OFFER FROM **Casey Conway** ("Buyer").
  **B.** THE REAL PROPERTY to be acquired is **950 El Paso Dr, Los Angeles, CA 90042** , situated in **Los Angeles** (City), **90042** (County), California, (Zip Code), Assessor's Parcel No. **5477021001** ("Property").
  **C.** THE PURCHASE PRICE offered is **One Million**
                                 Dollars $ **1,000,000.00**
  **D.** CLOSE OF ESCROW shall occur on ☐ (date)or ☒ **30** Days After Acceptance).
  **E.** Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.
**2. AGENCY:**
  **A. DISCLOSURE:** The Parties each acknowledge receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
  **B. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
    Listing Agent **Keller Williams Realty Los Feliz** (Print Firm Name) is the agent of (check one):
    ☒ the Seller exclusively; or ☐ both the Buyer and Seller.
    Selling Agent **Keller Williams World Media Center** (Print Firm Name) (if not the same as the Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
  **C. POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).
**3. FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
  **A. INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ **30,000.00**
    **(1)** Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days after Acceptance (or _____ );
    OR **(2)** ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____ ) to the agent submitting the offer (or to _____ ), made payable to _____ . The deposit shall be held uncashed until Acceptance and then deposited with Escrow Holder within 3 business days after Acceptance (or _____ ).
    Deposit checks given to agent shall be an original signed check and not a copy.
    (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
  **B. INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . $ _____
    within _____ Days After Acceptance (or _____ ).
    If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form RID) at the time the increased deposit is delivered to Escrow Holder.
  **C.** ☐ **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or ☐ Buyer shall, within 3 (or _____ ) Days After Acceptance, Deliver to Seller such verification.
  **D. LOAN(S):**
    **(1) FIRST LOAN:** In the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ **850,000.00**
    This loan will be conventional financing or ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
    **(2)** ☐ **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
    This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
    **(3) FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has 17 (or _____ ) Days After Acceptance to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a part of this Agreement.
  **E. ADDITIONAL FINANCING TERMS:** _____

  **F. BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . $ **120,000.00**
    to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
  **G. PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ **1,000,000.00**

Buyer's Initials ( **CC** )( _____ )            Seller's Initials ( **CD1** )( _____ )

© 1991-2015, California Association of REALTORS®, Inc.

**RPA-CA REVISED 12/15 (PAGE 1 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

Keller Williams WMC, 111 Psst St,1000 Burbank, CA 91502      Phone: (818)623-3276    Fax:     Casey Conway
Bret Calline          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

< BACK

AIIC 000480

2/15/2019                                     Registered Agent Portal

Property Address: *950 El Paso Dr, Los Angeles, CA 90042*                               Date: *September 18, 2016*

**H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within 3 (or ____ ) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. (☐ Verification attached.)

**I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☐ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within 17 (or *14* ) Days After Acceptance.

**J. LOAN TERMS:**
**(1) LOAN APPLICATIONS:** Within 3 (or ____ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. (☐ Letter attached.)
**(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is** a contingency of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not** contingencies of this Agreement.
**(3) LOAN CONTINGENCY REMOVAL:**
Within 21 (or *17* ) Days After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.
**(4) ☐ NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
**(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.
**K. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**
**A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.
**OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ADDENDA AND ADVISORIES:**

| A. ADDENDA: | Addendum # | (C.A.R. Form ADM) |
|---|---|---|
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) | |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | | |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other | |

| B. BUYER AND SELLER ADVISORIES: | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) | |
|---|---|---|
| ☐ Probate Advisory (C.A.R. Form PA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) | |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ REO Advisory (C.A.R. Form REO) | |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ Other | |

**6. OTHER TERMS:** _____

**7. ALLOCATION OF COSTS**
**A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it does not determine who is to pay for any work recommended or identified in the Report.
(1) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☒ environmental ☐ Other: _____ prepared by *Seller's Choice*
(2) ☐ Buyer ☐ Seller shall pay for the following Report *N/A* _____ prepared by _____
(3) ☐ Buyer ☐ Seller shall pay for the following Report *N/A* _____ prepared by _____

Buyer's Initials ( *CC* )( ____ )                               Seller's Initials ( *CED1* )( ____ )

**RPA-CA REVISED 12/15 (PAGE 2 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 2 OF 10)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                 Casa Country

< BACK

AIIC 000481

Property Address: *950 El Paso Dr, Los Angeles, CA 90042* _____ Date: *September 18, 2016* _____

**B.  GOVERNMENT REQUIREMENTS AND RETROFIT:**

(1) ☐ Buyer ☒ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.

(2) (i) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.

(ii) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.

(iii) Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C.  ESCROW AND TITLE:**

(1) (a) ☒ Buyer ☒ Seller shall pay escrow fee *Each to pay own fees* _____

(b) Escrow Holder shall be *Seller's Choice* _____

(c) The Parties shall, within 5 (or ___ ) Days After receipt, sign and return Escrow Holder's general provisions.

(2) (a) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 13E _____

(b) Owner's title policy to be issued by *Seller's Choice* _____

(Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

**D.  OTHER COSTS:**

(1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee *If Any* _____

(2) ☐ Buyer ☒ Seller shall pay City transfer tax or fee *If Any* _____

(3) ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee *N/A* _____

(4) Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.

(5) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.

(6) Buyer to pay for any HOA certification fee.

(7) ☐ Buyer ☐ Seller shall pay for any private transfer fee *If Any* _____

(8) ☐ Buyer ☐ Seller shall pay for *N/A* _____

(9) ☐ Buyer ☐ Seller shall pay for *N/A* _____

(10) ☐ Buyer ☒ Seller shall pay for the cost, not to exceed $ *525.00* _____ , of a standard (or ☐ upgraded) one-year home warranty plan, issued by *American Home Shield Warranty* _____ , with the following optional coverages: ☒ Air Conditioner ☐ Pool/Spa ☐ Other: _____

Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

OR ☐ Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.

**8.  ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

**A.  NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.

**B.  ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,

(1) All EXISTING fixtures and fittings that are attached to the Property.

(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☒ all stove(s), except _____ : ☒ all refrigerator(s) ☒ all washer(s) and dryer(s), except _____ except _____

(3) The following additional items: _____

(4) Existing integrated phone and home automation systems, including necessary components such as intranet and internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are (☐ are NOT) included in the sale.

(5) LEASED OR LIENED ITEMS AND SYSTEMS: Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.

(6) Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and _____ , and (ii) are transferred without Seller warranty regardless of value.

**C.  ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property, (ii) furniture and other items secured to the Property for earthquake purposes, and (iii) _____

_____ . Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or ☐ will be removed and holes or other damage shall be repaired, but not painted).

Buyer's Initials ( *CC* )( _____ )                                    Seller's Initials ( *COS* )( _____ )

**RPA-CA REVISED 12/15 (PAGE 3 OF 10)**

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 10)

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Oxxx County

< BACK

AIIC 000482

2/15/2019                                                          Registered Agent Portal

Property Address: **950 El Paso Dr, Los Angeles, CA  90042**_____  Date: **September 18, 2016**

**8.  CLOSING AND POSSESSION:**
A.  Buyer intends (or □ does not intend) to occupy the Property as Buyer's primary residence.
B.  **Seller-occupied or vacant property:** Possession shall be delivered to Buyer (i) at 5 PM or (___ □AM/□PM) on the date of Close Of Escrow; (ii) □ no later than ___ calendar days after Close Of Escrow; or (iii) □ at ___ □AM/□PM on ___.
C.  **Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as □ (C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, □ (C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.
D.  **Tenant-occupied property: Property shall be vacant at least 5 (or ___) Days Prior to Close Of Escrow, unless otherwise agreed in writing. Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**
**OR □ Tenant to remain in possession (C.A.R. Form TIP).**
E.  At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.
F.  At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**10. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**
A.  (1) Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"), and (ii) unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"): Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).
    (2) Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Listing Agent, if any, has completed and signed the Listing Broker section(s), or if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Broker, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Broker.
    (3) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.
    (4) Within the time specified in paragraph 14A, (i) Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire  (C.A.R. Form SPQ); (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).
    (5) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.
    (6) In the event Seller or Listing Broker, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.
    (7) If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After Delivery in person, or 5 Days After Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.
B.  **NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: (i) Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating booklet; (ii) disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.
C.  **WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).
D.  **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)
E.  **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at http://www.npms.phmsa.dot.gov/. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.
F.  **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
    (1) **SELLER HAS: 7 (or ___) Days After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).**

Buyer's Initials ( CC )(  )                                                 Seller's Initials ( CD )(  )
**RPA-CA REVISED 12/15 (PAGE 4 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 10)**
Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com            Carry Clemny

< BACK

AIIC 000483

2/15/2019                                    Registered Agent Portal



< BACK

AIIC 000484

2/15/2019        Registered Agent Portal

Property Address: 950 El Paso Dr, Los Angeles, CA 90042      Date: September 18, 2018

E. Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowners Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

A. SELLER HAS: 7 (or _____ ) Days After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

B. (1) BUYER HAS: 17 (or 19 ) Days After Acceptance, unless otherwise agreed in writing, to, (i) complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.

(2) Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

(3) By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has 5 (or _____ ) Days After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

(4) Continuation of Contingency: Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

(5) Access to Property: Buyer shall have access to the Property to conduct inspections and investigations for 17 (or _____ ) Days After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

C. ☐ REMOVAL OF CONTINGENCIES WITH OFFER: Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.

D. SELLER RIGHT TO CANCEL:

(1) Seller right to Cancel; Buyer Contingencies: If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) Seller right to Cancel; Buyer Contract Obligations: Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action (s): (i) Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not Good when deposited; (ii) Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); (iii) Deliver a letter as required by paragraph 3J(1); (iv) Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; (v) In writing assume or accept leases or liens specified in 8B5; (vi) Return Statutory and Lead Disclosures as required by paragraph 10A(5); or (vii) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or (viii) Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

E. NOTICE TO BUYER OR SELLER TO PERFORM: The NBP or NSP shall: (i) be in writing; (ii) be signed by the applicable Buyer or Seller; and (iii) give the other Party at least 2 (or _____ ) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than 2 Days Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

F. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES: If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, and for the inability to obtain financing.

G. CLOSE OF ESCROW: Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: (i) be signed by the applicable Buyer or Seller; and (ii) give the other Party at least 3 (or _____ ) Days After Delivery to close escrow. A DCE may not be Delivered any earlier than 3 Days Prior to the scheduled close of escrow.

H. EFFECT OF CANCELLATION ON DEPOSITS: If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

Buyer's Initials ( CC )( _____ )      Seller's Initials ( CD1 )( _____ )

RPA-CA REVISED 12/15 (PAGE 6 OF 10)

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 10)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    Corry Chaney

< BACK

AIIC 000485

Property Address: 950 El Paso Dr, Los Angeles, CA 90042     Date: *September 18, 2016*

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within 5 (or ☐ ____ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**
**A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
**B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity **(i)** represents that the entity for which that party is acting already exists and **(ii)** shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
**A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within 3 (or ____ ) Days, shall pay to Escrow Holder or HOA or HOA management company or others any fees required by paragraphs 7, 10 or elsewhere in this Agreement.
**B.** A Copy of this Agreement, including any counter offer(s) and addenda shall be delivered to Escrow Holder within 3 Days After Acceptance (or ____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall cause to be Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials ( CC )( ____ )       Seller's Initials ( CSD )( ____ )
**RPA-CA REVISED 12/15 (PAGE 7 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 10)**

< BACK

AIIC 000486

Registered Agent Portal

Property Address: 950 El Paso Dr, Los Angeles, CA 90042          Date: September 18, 2018

C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of this section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

E. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 days after mutual execution of the amendment.

**21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

A. Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damage requirements set forth in the Civil Code.

B. LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).

Buyer's Initials _CC_ / _____          Seller's Initial_CD1_ / _____

**22. DISPUTE RESOLUTION:**

A. MEDIATION: The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 22C.

B. ARBITRATION OF DISPUTES:

The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials _CC_ / _____          Seller's initial_CD1_ / _____

C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:

(1) EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials ( _CC_ )( _____ )          Seller's Initials ( _CD1_ )( _____ )

RPA-CA REVISED 12/15 (PAGE 8 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Cecy Cessy

< BACK

AIIC 000487

Registered Agent Portal

Property Address: 950 El Paso Dr, Los Angeles, CA 90042                    Date: September 18, 2016

(2) **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

(3) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

23. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

24. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

25. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

26. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form ADAA).

27. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

28. **TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

29. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:**   Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

30. **DEFINITIONS:** As used in this Agreement:
A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.
B. **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.
C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.
D. **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.
E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
F. **"Days"** means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
I. **"Deliver", "Delivered" or "Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e. messenger, mail, email, fax, other).
J. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
M. **"Signed"** means either a handwritten or electronic signature on an original document. Copy or any counterpart.

31. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____, who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by [          ] AM/ PM. on _____ (date)).

☐ One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual.  See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date _____  BUYER _Casey Conway_                               ✍ 09/19/2016 8:46:01
(Print name) Casey Conway
Date _____  BUYER _____
(Print name)

☐ Additional Signature Addendum attached (C.A.R. Form ASA).            Seller's Initials (  CCO2  )(      )

RPA-CA REVISED 12/15 (PAGE 9 OF 10).
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 9 OF 10)**
Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Casey Conway

AIIC 000488

2/15/2019                                              Registered Agent Portal

Property Address: _950 El Paso Dr, Los Angeles, CA 90042_                          Date: _September 18, 2016_

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☑ (If checked) SELLER'S ACCEPTANCE IS SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:

____9/19/16____

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date _____                                          12:26 AM GMT

(Print name) _CMB Developers Inc_ _____

Date _____               SELLER _____

(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( ___ / ___ ) (Do not initial if making a counter offer.) **CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)         personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
                  ☐ AM ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by
                  Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation
                  is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that
                  Confirmation of Acceptance has occurred.

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (Selling Firm) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) _Keller Williams World Media Center_               CalBRE Lic. # _01621878_
By _____  _Bradley W. Gilboe_ CalBRE Lic. # _01957502_          Date _09/18/2016 18:04:51_
By _____                     CalBRE Lic. # _____              Date _____
Address _111 N First St #300_                   City _Burbank_          State _CA_   Zip _91502_
Telephone _(818)632-3296_        Fax _(818)239-3501_        E-mail _BradGilboe@kw.com_
Real Estate Broker (Listing Firm) _Keller Williams Realty Los Feliz_                 CalBRE Lic. # _____
By _Brandon Curran_  01:24 AM GMT _Brendan Curran_ CalBRE Lic. # _01940320_     Date _____  _01430290_
By _____                     CalBRE Lic. # _____              Date _____
Address _____                        City _____          State _____   Zip _____
Telephone _(213)300-8844_        Fax _____        E-mail _brendancurran@kw.com_

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and
_____ , and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any
supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder _____                                    Escrow # _____
By _____                                              Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate.

**PRESENTATION OF OFFER:** ( _____ ) Listing Broker presented this offer to Seller on _____ (date).
                              Broker or Designee Initials

**REJECTION OF OFFER:** ( _____ )( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
                         Seller's Initials

©1991–2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:                Buyer Acknowledges that page 10 is part of this Agreement ( ___CC___ )( _____ )
REAL ESTATE BUSINESS SERVICES, INC.                                      Buyer's Initials
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020      Reviewed by _____
                                                            Broker or Designee
RPA-CA REVISED 12/15 (PAGE 10 of 10)
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 10 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com            Casa Curran

< BACK

AIIC 000489

Start screenshare

# Exhibit 3



# Exhibit 3

**Gail Henderson**

| | |
|---|---|
| **From:** | CMB Developers <cmbdevelopers@gmail.com> |
| **Sent:** | Wednesday, February 20, 2019 4:55 PM |
| **To:** | Gail Henderson |
| **Subject:** | [EXTERNAL] Fwd: Proposal from Radix Fire Protection: 950 El Paso |
| **Attachments:** | Fire SPK New 13D System – 950 El Paso signed.pdf |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

here is the signed proposal. please get started asap.

thanks
---------- Forwarded message ---------
From: **CMB Developers** <cmbdevelopers@gmail.com>
Date: Thu, Apr 7, 2016 at 4:28 PM
Subject: Re: Proposal from Radix Fire Protection: 950 El Paso
To: Johnny Giles <johnny@radixfire.com>

On Tue, Apr 5, 2016 at 5:42 PM, Johnny Giles <johnny@radixfire.com> wrote:



Save          Save

1

AIIC 000373

**Hello,**

Here is our proposal for your review.

Thank you for this opportunity to serve you.  If you have any question, please don't hesitate to contact me at **(888) 611-FIRE (3473)** or email to johnny@radixfire.com.

We appreciate your business.

**Johnny Giles**

**RADIX** Fire **Protection, Inc. | Construction Division**

1769 E. 23rd Street

Los Angeles, CA 90058

Tel. +1 213 765 0384 Fax +1 213 765-3384

License #: 823302 C-10/C-16

*"Trusted professionals in fire protection."*

Fire Sprinkler System
Fire Alarm System
Special Hazard
Kitchen System
Emergency Light
Fire Hydrant
Fire Equipment Sales
Inspection & Testing
Central Station Monitoring
Design & Consultation
24 Hour Service & Repair

**Call us for free consultation or quote.**

**Toll Free**
**(888) 611-FIRE**
Save Lives. Save Property.

**www.radixfire.com**

*100% Customer Satisfaction is our goal.*

**Dedication**

AIIC 000374



**Date:** April 5, 2016                                     **BID NUMBER:** LA153372

CMB Developers
1080 Everett Place
Los Angeles, CA 90026

**RE**:  **PROPOSAL**

**Job Location:**   950 El Paso
                   950 El Paso
                   Los Angeles 90042

Thank you for your opportunity to provide our service.

We hereby submit our proposal for new automatic fire sprinkler system at the above mentioned project. Our proposal is based on the drawings provided at the time of bidding (Dated ).

Our price for the works describe in this proposal is:

> **BASE BID, Lump sum**          **$5,800.00**

Further information relating to our offer including Scope of Work, Inclusions, Exclusions and Clarifications can be found within this proposal.

Should you have any questions or require further clarification, please do not hesitate to contact the undersigned.

Best Regards,
RADIX Fire Protection, Inc.

Johnny Giles
Business Development

RADIX Fire Protection, Inc. | Construction Division
1769 E. 23rd Street
Los Angeles, CA 90058
Tel. +1 213 765 0384 Fax +1 213 765-3384
License #: 823302 C-10/C-16
www.radixfire.com

**Scope of Work:**

**BID NUMBER:** LA153372
**Job name:** 950 El Paso

We will provide the following:

- Plumber to provide point of connection to building within 1 foot of our fire sprinkler riser.
- Design, Engineering, shop drawing, and approvals of plan check including Permit Fee.
- Fabrication and installation of automatic fire sprinkler system to protect entire house per NFPA 13D.
- Install fire sprinkler riser assembly with flow switch, gauge, drain, and single check valve.
- Supply one (1) exterior 6" alarm bell with bell cage and sign. (To be installed by Electrician)
- Finish ceiling heads to be conceal type with white finish.
- Perform all required testing by fire department.
- Pipe to be CPVC in concealed spaces and steel pipe in exposed areas.
- Perform all required testing by fire department.

**Inclusions:**

1) Proposal is based on NFPA-13D 2013 edition and city having jurisdiction.
2) Radix Fire Protection, Inc. 1 year warranty. Void if work is modified by another vendor after completion date.
3) As-Built Drawing
4) Sales Tax and Freight
5) Work to be completed during normal working hours (M-F 7am to 4pm)

**Exclusions:**

1) Any electrical work
2) Fire Alarm system Work
3) Fire Alarm Monitoring
4) Any painting and patch work.
5) California Title-19 testing & inspection
6) Fire Extinguisher/Cabinet (We can provide as extra upon quantity & type)
7) Overtime/ Off hours
8) Work outside the scope of work including underground work.
9) Backflow devices and pressure relief or regulating valves due to high pressure

**Clarifications/Notes:**

1) Customer will provide electric power to perform our work.
2) This bid is good for 30 days from the date issued. Written authorization must be received in our office prior to any work.

**CUSTOMER ACCEPTANCE:**

In accepting this Agreement, Customer agrees to the terms and conditions contained herein including those on the following page(s) of this Agreement and any attachments or riders attached hereto that contain additional terms and conditions. It is understood that these terms and conditions shall prevail over any variation in terms and conditions on any purchase order or other document that the Customer may issue. Any changes in the system requested by the Customer after the execution of this Agreement shall be paid for by the Customer and such changes shall be authorized in writing. ATTENTION IS DIRECTED TO THE LIMITATION OF LIABILITY, WARRANTY, INDEMNITY AND OTHER CONDITIONS CONTAINED IN THIS AGREEMENT.

| _____ | David Lee, CEO | 4/7/16 |
| Signature | Print Name & Title | Date |

**BID NUMBER:** LA153372

**Job name:** 950 El Paso

# TERMS AND CONDITIONS

This quotation and any exhibits and attachments hereto (collectively, "Agreement") and any information contained herein, is the property of Radix Fire Protection, Inc. ("Company") and shall constitute proprietary and confidential information unless given to a public entity and required by law to be public information. The party to whom this quotation is addressed ("Customer") acknowledges the confidential nature of this Agreement and agrees to take all commercially reasonable and necessary precautions to ensure the confidential treatment of this Agreement and all information contained herein. This Agreement will be used, copied, reproduced, disclosed or otherwise disseminated or made available, directly or indirectly, to any third party for any purpose whatsoever without the prior written consent of Company. The parties agree to be bound by the following terms and conditions.

1. **Quotations and Acceptance.** The quotation is based solely on the bid documents, which consist of the project drawings, specifications and/or instructions of the Customer only modified by written agreement or Company objection. Significant deviations between the actual conditions and circumstances of the work and those specified in the bid documents shall be cause for an adjustment in work scope, price and time allowed for performance. Written quotations shall be valid for no more than thirty (30) days from the date of issue, unless specifically stated otherwise herein. Customer may accept the quotation by signing and returning a copy to Company or by returning Customer's own written instrument or order expressly acknowledging the quotation and terms set forth herein, provided, however, Company hereby gives notice of its objection to any different or additional terms or conditions contained or referenced in Customer's order, which will be of no force or effect except as may be expressly agreed to by Company in writing. It is the intent of the parties that these Terms and Conditions of Sale shall govern the sale of goods delivered and services performed. Upon acceptance, this Agreement constitutes the entire understanding between the parties respecting the goods or services delineated herein and supersede all prior oral or written understandings or representations relating to such goods or services. This Agreement may not be discharged, extended, amended or modified in any way except by a written instrument signed by a duly authorized representative of each party. Company assumes that the Subcontract Agreement offered will contain terms that are substantively similar to the AIA provisions that are in accordance with the provisions of the prime contract, including any supplements. Upon award, Company assumes that contract provisions will be reviewed and negotiated in good faith to reach a mutual acceptance of both parties.

2. **Payment.** Absent a contrary provision herein, Customer will pay Company as follows:

   ☐ **Payment Schedule:** Customer agrees to make payment of $_____ *upon acceptance of proposal*, second payment of $_____ *upon rough installation* and final balance payment upon *final installation*. If Customer fails to make any payment schedule, Company reserves the right to stop work and pursue all remedies to collect.

   ☐ **C.O.D.:** Full amount of invoice is due upon rendering of our service.

   ☐ **Time & Material:** Work performed on a time and material basis shall be at the then-prevailing Company rate for material, labor, and related items, in effect at the time supplied under this Agreement. Further, in the event that this Agreement is executed on a "price not to exceed" basis, the price to Customer shall be lesser of: 1) the limit price quoted, or 2) the actual cumulative billing based on the aforementioned prevailing rate. Unless otherwise agreed in writing between parties, Customer shall pay Company within seven (7) days of the date of Time & Material invoice submission. Customer agrees to pay all taxes, permits, and other charges, including but not limited to state and local sales and excise taxes, however designated, levied or based on the service charges pursuant to this Agreement. Company shall have right, at Company's sole discretion, to stop performing any Services if Customer fails to make any payment when due, until the account is current. The Customers failure to make payment when due is a material breach of this Agreement.

   ☒ **Monthly progress payments:** Payment will be on a net thirty (30) days basis from date of invoice for materials delivered (or stored at an off-site storage facility) and services performed, less any retained reserve which will be mutually agreed upon in writing by the parties. The aggregate amount of any such retained reserves shall be paid by Customer to Company within thirty (30) days after the date of substantial completion. If Company provides a Certificate of Substantial Completion, such certificate shall conclusively establish such date,

   All invoices due and payable to Company, less any applicable retained reserve, shall accrue interest at a compounded per annum rate not to exceed 1½% per month (18% per annum) or the maximum rate permitted by law. Acceptance and endorsement by Company of an instrument for less than the full amount which Company claims to be due shall not be deemed to be an admission of payment in full and any conditions to the contrary which are noted on such an instrument shall not be binding on Company. If Customer does not pay Company, through no fault of Company, within seven (7) days from the time payment was due, Company may, without prejudice to any other remedy it may have, upon seven (7) additional days' written notice to Customer, stop its work until payment of the amount owing has been received and the contract sum shall be equitably adjusted for reasonable costs of shutdown, delay and startup or in the alternative Company may terminate this contract for material breach and all monies due Company for services performed and materials delivered shall be paid upon demand. Company shall be entitled to recover from Customer all costs for collection, including reasonable attorneys' and professionals' fees. To the extent payments are received and as required by law, and upon Customer's request, Company will furnish mechanics lien waivers as the work progresses. Company reserves a security interest in any goods sold to the extent of the invoiced amount to secure payment of Customer's obligation. In event of payment default, Company may repossess such goods and a copy of the invoice may be filed with appropriate authorities as a financing statement to event or perfect Company's security interest in the goods. At Company's request, Customer will execute any necessary instrument to perfect Company's security interest.

3. **Price and Taxes.** The price for the goods and services hereunder are those shown on the face of this Agreement. The price of this Agreement does not include sales, use, excise, duties or other similar taxes, unless otherwise expressly provided herein. Any taxes (other than taxes due on Company's net income) that are payable hereunder shall be the responsibility of Customer. If applicable, Customer shall provide Company a copy of any appropriate tax exemption certificate for the state(s) into which the goods are to be shipped.

4. **Changes and Claims.** All materials and labor furnished hereunder shall be in accordance with shop drawings submitted by Company and approved by Customer. Any changes in the work as set forth in approved shop drawings, or from the scope of work as described herein, will require a written change order submitted to Company by Customer. An equitable adjustment will be made in the contract price or delivery dates or both, and this Agreement will be modified accordingly in writing. The cost or credit to Customer for performance of such change order shall be determined by mutual written agreement prior to the commencement of any work under such change order. Customer shall notify Company promptly in writing of any circumstances arising from the performance of the work herein described which reasonably may be anticipated to result in a claim or back charge to Company. Upon Company's receipt of such notification, Company shall have five (5) working days in which to remedy such circumstances and to avoid the imposition of such claim or back charge. Company will not be liable for any claim or back charge where Company has not been notified in the manner as set forth above.

AIIC 000377

**BID NUMBER:** LA153372
**Job name:** 950 El Paso

5. **Access and Overtime.** This Agreement is based upon the use of straight time labor only during regular working hours (8:00 a.m. to 5:00 p.m., Monday through Friday, excluding Company's holidays). If Customer requests Company to perform any work outside of regular working hours, overtime and other additional expense occasioned thereby will be charged to and paid by Customer. If Company's work is to be performed on the project site, Customer will afford unrestricted access to Company and its employees and agents to all work areas.

6. **Damage or Loss to Equipment.** In the case of equipment not to be installed by or under supervision of Company, Company shall not be liable for damage to or loss of equipment after delivery of such equipment to the point of shipment. In the case of equipment to be installed by or under supervision of Company, Company shall not be liable for damage or loss after delivery by the carrier to the site of installation; if thereafter, pending installation or completion of installation or full performance by Company, any such equipment is damaged or destroyed by any cause whatsoever, other than by the fault of Company, Customer agrees to promptly pay or reimburse Company an amount equal to the damage or loss which Company incurs as a result thereof, in addition to or apart from, any and all other sums due or to become due hereunder.

7. **Delays.** Customer shall prepare all work areas so as to be acceptable for Company's work required hereunder. Customer acknowledges that the contract sum is based upon Company being able to perform the work in an orderly and sequential manner, as Company so determines. If Company's performance is delayed, interfered with, suspended, or otherwise interrupted, in whole or in part, by Customer, other contractors on the project site, or by any other third party or by any act within the power and/or duty of Customer to control, then Customer agrees that it will be liable to Company for all increased costs and damages which Company incurs as a result thereof. Furthermore, if Company is delayed at any time in the progress of the work by any act or neglect of Customer, or by any separate contractor employed by Customer, or by changes ordered in the work or by labor disputes, fire, delay in transportation, adverse weather conditions, casualties, or any other causes beyond Company's control, then the time for completion of the work shall be extended for a period equal to the time lost by reason of such delay.

8. **Warranty.** Company warrants to Customer that all tangible articles manufactured by Company will be free of defects in workmanship and material and that the work performed will be of good quality and will conform to the requirements of the bid documents. If the article is installed by Company, Company's sole obligation under this warranty shall be to provide, without charge, parts and labor necessary to remedy defects which appear within twelve (12) months from the date of beneficial use or occupancy, as applicable. If Company provides a Certificate of Substantial Completion, such certificate shall conclusively establish such date. If article is not installed by Company, the warranty period shall be within twelve (12) months of shipment of said article. Warranty claim must be made to Company in writing within such twelve (12) month period. All transportation charges incurred in connection with the warranty for equipment not installed by Company shall be borne by Customer. Company warrants that for equipment furnished and or installed, but not manufactured by Company, Company will extend the same warranty terms and conditions which Company receives from the manufacturer of said equipment.

This warranty is the sole and exclusive warranty given with respect to any articles delivered or services performed by Company. THE WARRANTIES SET FORTH ABOVE ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES EXPRESS OR IMPLIED (EXCEPT WARRANTIES OF TITLE), INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. This warranty is subject to proper installation of the articles (if installation is not performed by Company or authorized subcontractors of the Company) and maintenance and storage of the articles in accordance with the specifications and directions supplied by Company. This warranty does not apply to any defect, malfunction or failure caused by repairs made by other than or without the consent of Company or the article has been subject to abuse, misuse, neglect, tampering, accident or damage by circumstances beyond Company's control, including without limitation, acts of God, war, acts of government, corrosion, power fluctuations, freeze-ups, labor disputes, differences with workmen, riots, explosions, vandalism, or malicious mischief, nor to defective associated equipment or use of the articles with equipment for which they were not sold. All of Company's obligations under this warranty will immediately terminate and be of no further force or effect if all or any part of the purchase price (including any installment payment) with respect to any article covered by this warranty is not paid to Company when due. If cause of defect is found not to be Company's responsibility, standard rates for repair or replacement and labor shall apply.

9. **Limitation of Liability.** In no event will Company's total aggregate liability in warranty or contract exceed the contract price paid for the specific product or service that gives rise to the claim excluding third party claims for personal injury, death or property damage or as may be required by law. IN NO EVENT SHALL COMPANY BE LIABLE FOR ANY LOST PROFITS, LOSS OF USE, LOSS OF GOODWILL, BUSINESS INTERRUPTION OR ANY OTHER SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY KIND EVEN IF COMPANY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

10. **Laws and Permits.** Company shall comply with all applicable federal, state, and local laws and regulation and shall obtain all temporary licenses and permits required for the prosecution of the work. Licenses and permits of a permanent nature shall be procured and paid for by the Customer. This contract shall be interpreted and governed under and in accordance with the laws of the jurisdiction in which the goods are delivered or services are performed without regard to its choice of law provisions.

11. **Disputes.** Any controversy or claim arising out of or relating to this Contract, or the breach thereof, shall be settled by good faith consultation and negotiation. If those attempts fail, either party shall provide written notice within thirty (30) days to the other to mutually agree on an arbitration process. If a process is not agreed upon within thirty (30) days, final and binding arbitration in accordance with the then current Construction Industry Arbitration Rules of the American Arbitration Association shall commence and judgment upon the law and rendered may be entered in any court having jurisdiction thereof. The arbitration shall be held in the federal, state or municipal courts serving the county in which the project is located unless the parties mutually agree otherwise. The prevailing party shall recover all reasonable legal costs and attorney's fees incurred as a result, which shall be promptly paid by the non-prevailing party. Any dispute or demand for arbitration must be commenced within one (1) year after the cause of action has accrued. Nothing herein shall limit any rights Company may have under construction mechanic or materialmen lien laws. Company shall have the right to suspend affected services pending resolution of disputes.

12. **Insurance.** The parties shall each maintain insurance coverage including without limitation, Workers' Compensation and Employer's Liability at statutory limits, Automobile Liability covering all owned, hired and other non-owned vehicles, and Commercial General Liability covering public liability and property damage with limits generally required for its respective industry with not less than $1,000,000 minimum coverage per occurrence. Such insurance shall be with reputable and financially responsible carriers authorized to transact business in the state in which the project and services are being performed. No credit will be given or premium paid by Company for insurance afforded by others.

13. **Clean Up.** Company agrees to keep the job site clean of debris arising out of its operations. Customer shall not back charge Company for any costs or expenses for clean up or otherwise without prior written notice and Company's written consent.

14. **Severability.** The invalidity or unenforceability of any provision herein shall in no way affect the validity or enforceability of any other provision.

**Gail Henderson**

| | |
|---|---|
| **From:** | CMB Developers <cmbdevelopers@gmail.com> |
| **Sent:** | Friday, February 15, 2019 3:07 PM |
| **To:** | Gail Henderson |
| **Subject:** | [EXTERNAL] Fwd: Invoice C03674-01 from Radix Fire Protection, Inc. |
| **Attachments:** | Inv_C0367401_from_Radix_Fire_Protection_Inc._4380.pdf |

---------- Forwarded message ---------
From: <billing@radixfire.com>
Date: Mon, Apr 18, 2016 at 8:17 AM
Subject: Invoice C03674-01 from Radix Fire Protection, Inc.
To: <cmbdevelopers@gmail.com>
Cc: <santiagodiaz@radixfire.com>, <stevelee@radixfire.com>

Dear Customer,

Your invoice is attached.  Please remit payment within terms. *

*** Save yourself time by paying this invoice online with Intuit PaymentNetwork. This FREE online payment
service is fast and easy to use. ***

Pay Now >   https://ipn.intuit.com/m3httvhs
Learn more >   https://ipn.intuit.com/s/LearnMore

*NOTE: Accounts not paid within terms are subject to a 1-1/2% monthly finance charge.

For any billing question, please email to billing@radixfire.com or contact us toll free (888) 611-FIRE (3473).

Thank you for your business.

Sincerely,

Billing Department
Radix Fire Protection, Inc.

AIIC 000498



A FULL SERVICE FIRE PROTECTION COMPANY

CA LIC. #823302 C10/C16

**Save Lives. Save Property.**

|  | |
|---|---|
| Corporate Office: | 1769 East 23rd Street<br>Los Angeles, CA 90058<br>Toll Free (888) 611-FIRE (3473)<br>Fax (213) 765-3384 |

# Invoice

Invoice #

**C03674-01**

Date

**4/18/2016**

**Bill To:**

CMB Developers
David Lee
1080 Everett Place
Los Angeles, CA 90026

**Project:**

950 El Paso Residence
950 El Paso
Los Angeles, CA 90042

**FOR ANY SERVICE OR ASSISTANCE, PLEASE CALL TOLL FREE (888) 611-FIRE (3473).**

| Account # | P.O. Number | Terms | Due Date |
|---|---|---|---|
|  |  | Net 30 | 5/18/2016 |

| Description | Amount |
|---|---|
| Fire Sprinkler 13D New - Original Contract $5,800.00<br><br>progressive billing through 4/30/16 | 4,640.00 |
| **PLEASE MAKE CHECK PAYABLE TO:**<br>**RADIX FIRE PROTECTION, INC.**<br><br>**SEND ALL PAYMENTS TO:**<br>**RADIX FIRE PROTECTION**<br>**28005 Smyth Drive, Suite # 155**<br>**Valencia, CA 91355** | |

Pay online at: https://ipn.intuit.com/m3httvhs

Please remit payment within terms. *
*NOTE: Accounts not paid within terms are subject to a 1-1/2% monthly
finance charge in addition to a late fee of $25.00.

| | |
|---|---|
| **Subtotal** | $4,640.00 |
| **Payment Received** | $0.00 |
| **Balance Due** | $4,640.00 |

**FIRE SPRINKLER SYSTEM SAVES LIVES!!**

AIIC 000499

## Gail Henderson

| | |
|---|---|
| **From:** | CMB Developers <cmbdevelopers@gmail.com> |
| **Sent:** | Friday, February 15, 2019 3:02 PM |
| **To:** | Gail Henderson |
| **Subject:** | Fwd: Radixfire Invoice: El Paso & Greenfield |
| **Attachments:** | C03674 Invoice.pdf; C03683 Invoice.pdf |

---------- Forwarded message ---------
From: **Radix Accounts Receivable** <ar@radixfire.com>
Date: Fri, Oct 28, 2016 at 10:42 AM
Subject: Radixfire Invoice: El Paso & Greenfield
To: <cmbdevelopers@gmail.com>
Cc: Steve Lee <stevelee@radixfire.com>, Ty Yoon <ty@radixfire.com>

Dear Mr. Lee,

Please see attached invoices for El Paso and Greenfield. When you click "Pay Now" on each invoice, it will direct you to the website where you can make direct payment.

Thank you.

## Accounting Department



*Trusted professionals in fire protection*
**1769 East 23rd Street, Los Angeles, CA 90058**
Tel (213) 784-7742 ext. 104    Direct: (213) 814-4658    Fax (213) 765-3384
**Toll Free (888) 611-FIRE**
www.radixfire.com

**Fire Sprinkler System / Fire Alarm & Detection System / Special Hazard System / Kitchen Hood System / Foam System / Emergency Light / Fire Hydrant Central Station Monitoring / 5 Year & Annual Inspection / REG 4 & Title 19 Testing / Fire Equipment Service & Sales /Design / Installation / Consultation / 24-hour Service & Repair**

AIIC 000500



**Radix Fire Protection**
1769 E 23rd Street
Los Angeles, CA 90058
Toll Free (888) 611-FIRE
helpdesk@radixfire.com
www.radixfire.com

**C03674**

| DATE | PLEASE PAY | DUE DATE |
|------|-----------|----------|
| 10/28/2016 | $ 1,160.00 | 10/28/2016 |

**BILL TO**

CMB Developers
David Lee
1080 Everett Place
Los Angeles, CA 90026

**JOB SITE**

950 El Paso
Los Angeles, CA 90042

Please detach top portion and return with your payment.

Fire Sprinkler 13D New - Original Contract $5,800.00

Payment Received ($4,640.00)

Payment Due $1,160.00

| ACTIVITY | AMOUNT |
|----------|--------|
| | 1,160.00 |

| TOTAL DUE | $ 1,160.00  Pay Now |
|-----------|------------------------|

THANK YOU.

*Make Check Payable "Radix Fire Protection"*
*Mail to:*
*Radix Fire Protection*
*28005 Smyth Dr., Suite 155*
*Valencia, CA 91355*

For billing and payment questions, please email request to billing@radixfire.com
For Service, call Toll Free (888) 611-FIRE (3473) or email to helpdesk@radixfire.com

AIIC 000501

**Gail Henderson**

| | |
|---|---|
| **From:** | CMB Developers <cmbdevelopers@gmail.com> |
| **Sent:** | Friday, February 15, 2019 3:02 PM |
| **To:** | Gail Henderson |
| **Subject:** | [EXTERNAL] Fwd: Invoice: 950 El Paso |
| **Attachments:** | C03674-02 Invoice.pdf; C03674-02 Invoice.pdf |

---------- Forwarded message ---------
From: **Radix Accounts Receivable** <ar@radixfire.com>
Date: Thu, Oct 27, 2016 at 5:19 PM
Subject: Invoice: 950 El Paso
To: <cmbdevelopers@gmail.com>
Cc: Steve Lee <stevelee@radixfire.com>, Ty Yoon <ty@radixfire.com>

Hello,

Please see attached invoice for final balance payment. Your prompt response will be appreciated.

Thank you.

**Accounting Department**



*Trusted professionals in fire protection*
**1769 East 23rd Street, Los Angeles, CA 90058**
Tel (213) 784-7742 ext. 104   Direct: (213) 814-4658   Fax (213) 765-3384
**Toll Free (888) 611-FIRE**
www.radixfire.com

**Fire Sprinkler System / Fire Alarm & Detection System / Special Hazard System / Kitchen Hood System / Foam System / Emergency Light / Fire Hydrant Central Station Monitoring / 5 Year & Annual Inspection / REG 4 & Title 19 Testing / Fire Equipment Service & Sales /Design / Installation / Consultation / 24-hour Service & Repair**

AIIC 000502



A FULL SERVICE FIRE PROTECTION COMPANY

CA LIC. #823302 C10/C16

Corporate Office:
1769 East 23rd Street
Los Angeles, CA 90058
Toll Free (888) 611-FIRE (3473)
Fax (213) 765-3384

# Invoice

**Invoice #**

**C03674-02**

**Date**

**10/27/2016**

**Bill To:**

CMB Developers
David Lee
1080 Everett Place
Los Angeles, CA 90026

**Project:**

950 El Paso Residence
950 El Paso
Los Angeles, CA 90042

**FOR ANY SERVICE OR ASSISTANCE, PLEASE CALL TOLL FREE (888) 611-FIRE (3473).**

| Account # | P.O. Number | Terms | Due Date |
|---|---|---|---|
|  |  | Due on receipt | 10/27/2016 |

| Description | Amount |
|---|---|
| Fire Sprinkler 13D New - Original Contract $5,800.00 | 1,160.00 |
| Payment Received ($4,640.00) | |

PLEASE MAKE CHECK PAYABLE TO:
RADIX FIRE PROTECTION

SEND ALL PAYMENTS TO:
RADIX FIRE PROTECTION
28005 Smyth Drive, Suite # 155
Valencia, CA 91355

| | |
|---|---|
| **Subtotal** | $1,160.00 |
| **Payment Received** | $0.00 |
| **Balance Due** | $1,160.00 |

Please remit payment within terms. *
*NOTE: Accounts not paid within terms are subject to a 1-1/2% monthly finance charge in addition to a late fee of $25.00.

**FIRE SPRINKLER SYSTEM SAVES LIVES!!**

AIIC 000503

# Invoice

**RADIX**
Save Lives. Save Property.

A FULL SERVICE FIRE PROTECTION COMPANY

CA LIC. #823302 C10/C16

1769 East 23rd Street
Los Angeles, CA 90058
Corporate Office:   Toll Free (888) 611-FIRE (3473)
Fax (213) 765-3384

**Invoice #**

**C03674-02**

**Date**

**10/27/2016**

**Bill To:**

CMB Developers
David Lee
1080 Everett Place
Los Angeles, CA 90026

**Project:**

950 El Paso Residence
950 El Paso
Los Angeles, CA 90042

**FOR ANY SERVICE OR ASSISTANCE, PLEASE CALL TOLL FREE (888) 611-FIRE (3473).**

| Account # | P.O. Number | Terms | Due Date |
|---|---|---|---|
| | | Due on receipt | 10/27/2016 |

| Description | Amount |
|---|---|
| Fire Sprinkler 13D New - Original Contract $5,800.00 | 1,160.00 |
| | |
| Payment Received ($4,640.00) | |

**PLEASE MAKE CHECK PAYABLE TO:**
**RADIX FIRE PROTECTION**

**SEND ALL PAYMENTS TO:**
**RADIX FIRE PROTECTION**
**28005 Smyth Drive, Suite # 155**
**Valencia, CA 91355**

| | |
|---|---|
| **Subtotal** | $1,160.00 |
| **Payment Received** | $0.00 |
| **Balance Due** | $1,160.00 |

Please remit payment within terms. *
*NOTE: Accounts not paid within terms are subject to a 1-1/2% monthly finance charge in addition to a late fee of $25.00.

**FIRE SPRINKLER SYSTEM SAVES LIVES!!**

AIIC 000504

**Gail Henderson**

| | |
|---|---|
| **From:** | CMB Developers <cmbdevelopers@gmail.com> |
| **Sent:** | Friday, February 15, 2019 3:01 PM |
| **To:** | Gail Henderson |
| **Subject:** | [EXTERNAL] Fwd: RE; 950 El Paso |
| **Attachments:** | C03674-02 Invoice.pdf |

---------- Forwarded message ---------
From: **Ty Yoon** <ty@radixfire.com>
Date: Tue, Nov 29, 2016 at 1:09 PM
Subject: RE; 950 El Paso
To: <cmbdevelopers@gmail.com>

Hello

Regarding 950 El Paso,

I would like to let you know we passed the final and if you got final invoice of this job.

If you have any question, let us know.

Thank you for your business.

--

**Ty Yoon |**

**(213) 784-7742 ext. 107**



*Trusted professionals in fire protection*

**1769 East 23rd Street, Los Angeles, CA 90058**

**Direct  (213) 375-3674 Fax (213) 765-3384**

**Toll Free (888) 611-FIRE**

www.radixfire.com

1

AIIC 000505

**RADIX**
Save Lives. Save Property.

A FULL SERVICE FIRE PROTECTION COMPANY

CA LIC. #823302 C10/C16

Corporate Office:
1769 East 23rd Street
Los Angeles, CA 90058
Toll Free (888) 611-FIRE (3473)
Fax (213) 765-3384

# Invoice

Invoice #

**C03674-02**

Date

**10/27/2016**

**Bill To:**

CMB Developers
David Lee
1080 Everett Place
Los Angeles, CA 90026

**Project:**

950 El Paso Residence
950 El Paso
Los Angeles, CA 90042

**FOR ANY SERVICE OR ASSISTANCE, PLEASE CALL TOLL FREE (888) 611-FIRE (3473).**

| Account # | P.O. Number | Terms | Due Date |
|---|---|---|---|
| | | Due on receipt | 10/27/2016 |

| Description | Amount |
|---|---|
| Fire Sprinkler 13D New - Original Contract $5,800.00 | 1,160.00 |
| Payment Received ($4,640.00) | |

**PLEASE MAKE CHECK PAYABLE TO:**
**RADIX FIRE PROTECTION**

**SEND ALL PAYMENTS TO:**
**RADIX FIRE PROTECTION**
**28005 Smyth Drive, Suite # 155**
**Valencia, CA 91355**

| | |
|---|---|
| **Subtotal** | $1,160.00 |
| **Payment Received** | $0.00 |
| **Balance Due** | $1,160.00 |

Please remit payment within terms. *
*NOTE: Accounts not paid within terms are subject to a 1-1/2% monthly finance charge in addition to a late fee of $25.00.

**FIRE SPRINKLER SYSTEM SAVES LIVES!!**

AIIC 000506

# Exhibit 4



# Exhibit 4

232330.1

Page 1



**DEPARTMENT OF BUILDING AND SAFETY**
August 29, 2018
**Document Report**

**Documents**

**Document Number(s)**
15030-10000-00781

**Record Description**
Record ID: 55667244
Doc Type: GRADING
Sub Type: GRADING PRE-INSP REPT
Doc Date: 02/11/2015
Status: APPROVED
Doc Version: None
AKA Address: None
Project Name: None
Disaster ID: None
Subject: None
Product Name: None
Manufacturer's Name: None
Expired Date: None
Receipt Number: None
Case Number: None
Scan Number: 1010302201595872
Dwelling Units: None

**Property Address(es)**
950   N EL PASO DR   90042-0000

**Legal Description(s)**
Tract: TR 5625
 Block:  Lot: 1 Arb:
 Map Reference:M B 60-77 Modifier :FR

**PIN(s)**
154-5A223 401

**Assessor Number(s)**
5477-021-001

**Council District(s)**
1

**Census Tracts(s)**
1862.030

AIIC 000581

Page 2



**DEPARTMENT OF BUILDING AND SAFETY**

August 29, 2018
**Document Report**

**District Offices(s)**

LA

\*\*\*\*\*\*\*\*

Note: If you have any questions, please visit one of our Records Counter Section open Monday thru Fridays from 7:30 AM to 4:30 PM,
        EXCEPT on Wednesdays which opens from 9:00 AM to 4:30 PM.
.
Locations: Metro - 201 N. Figueroa St., 1st Floor Rm. 110, Los Angeles CA 90012
        Van Nuys - 6262 Van Nuys Blvd, 2nd Floor Van Nuys CA 91401

AIIC 000582



**DEPARTMENT OF BUILDING AND SAFETY**

August 29, 2018
**Document Report**

**Documents**

**Document Number(s)**
14030-10000-07332

**Record Description**
Record ID: 55513494
Doc Type: GRADING
Sub Type: GRADING PRE-INSP REPT
Doc Date: 12/04/2014
Status: APPROVED
Doc Version: None
AKA Address: None
Project Name: None
Disaster ID: None
Subject: None
Product Name: None
Manufacturer's Name: None
Expired Date: None
Receipt Number: None
Case Number: None
Scan Number: 1010106201592451
Dwelling Units: None

**Property Address(es)**
950   N EL PASO DR   90042-0000

**Legal Description(s)**
Tract: TR 5625
 Block:  Lot: 1 Arb:
 Map Reference:M B 60-77 Modifier :FR

**PIN(s)**
154-5A223 401

**Assessor Number(s)**
5477-021-001

**Council District(s)**
1

**Census Tracts(s)**
1862.030

AIIC 000583



**DEPARTMENT OF BUILDING AND SAFETY**

August 29, 2018
**Document Report**

**District Offices(s)**

LA

\*\*\*\*\*\*\*\*

Note: If you have any questions, please visit one of our Records Counter Section open Monday thru Fridays from 7:30 AM to 4:30 PM,
EXCEPT on Wednesdays which opens from 9:00 AM to 4:30 PM.
.
Locations: Metro - 201 N. Figueroa St., 1st Floor Rm. 110, Los Angeles CA 90012
Van Nuys - 6262 Van Nuys Blvd, 2nd Floor Van Nuys CA 91401

Page 1 of 2

# CITY OF LOS ANGELES
## CALIFORNIA



ERIC GARCETTI
MAYOR

# CERTIFICATE OF OCCUPANCY

| OWNER | CMB DEVELOPERS INC | | No building or structure or portion thereof and no trailer park or portion thereof shall be used or occupied until a Certificate of Occupancy has been issued thereof.        Section 91.109.1 LAMC |
|---|---|---|---|

| | | | CERTIFICATE: | Issued-Valid | DATE: |
|---|---|---|---|---|---|
| | 10020  NATIONAL BLVD UNIT B | | BY: | ANDREW C LONGORIA | 11/14/2016 |
| | LOS ANGELES CA | 90034 | GREEN – MANDATORY | | |

**SITE IDENTIFICATION**

ADDRESS: **950 N EL PASO DR 90042**

**LEGAL DESCRIPTION**

| TRACT | BLOCK | LOT(s) | ARB | CO. MAP REF # | PARCEL PIN | APN |
|---|---|---|---|---|---|---|
| TR 5625 | | 1 | | M B 60-77 | 154-5A223 401 | 5477-021-001 |

This certifies that, so far as ascertained or made known to the undersigned, the building or portion of building described below and located at the above address(es) complies with the applicable construction requirements (Chapter 9) and/or the applicable zoning requirements (Chapter 1) of the Los Angeles Municipal Code for the use and occupancy group in which it is classified and with applicable requirements of the State Housing Law for the following occupancies and is subject to any affidavits or building and zoning code modifications whether listed or not.

| COMMENT | BUILDING ADDITION – CONVERT (E) 691 S.F. LOWER LEVEL INTO LIVING AREA, ADD 251 S.F. RFA IN LOWER LEVEL, ENLARGE STREET LEVEL AREA BY ADDING 535 S.F. RFA, ADD AN INTERIOR STAIR IN STREET LEVEL. |
|---|---|

| USE | PRIMARY | OTHER |
|---|---|---|
| | Dwelling - Single Family | (-) None |

**PERMITS**

15014-10000-03665

**STRUCTURAL INVENTORY**

| ITEM DESCRIPTION | CHANGED | TOTAL |
|---|---|---|
| Dwelling Unit | 0 Units | 1 Units |
| Floor Area (ZC) | 1429 Sqft | 2140 Sqft |
| Floor Construction - Concrete Slab on Grade | | |
| Foundation - Spread (Pad) Footing | | |
| Height (ZC) | 0 Feet | 26.83 Feet |
| Length | 7.67 Feet | 42.09 Feet |
| NFPA-13D Fire Sprinklers Thru-out | | |
| Residential Floor Area | 1429 Sqft | 2140 Sqft |
| Stories | 1 Stories | 2 Stories |
| Type V-B Construction | | |
| Wall Construction - Wood Stud | | |
| Width | 10.83 Feet | 34.41 Feet |
| Wood (Plywood, OSB, etc.)Shearwall | | |
| R3 Occ. Group | 1429 Sqft | 2140 Sqft |
| Parking Req'd for Bldg (Auto+Bicycle) | 0 Stalls | |
| Parking Req'd for Site (Auto+Bicycle) | 0 Stalls | |
| Total Provided Parking for Site | 0 Stalls | |



DEPARTMENT OF BUILDING AND SAFETY

| APPROVAL | |
|---|---|
| CERTIFICATE NUMBER: | 141671 |
| BRANCH OFFICE: | LA |
| COUNCIL DISTRICT: | 1 |
| BUREAU: | CODENFRC |
| DIVISION: | CNTRLRGN |
| STATUS: | CofO Issued |
| STATUS BY: | ANDREW C LONGORIA |
| STATUS DATE: | 11/14/2016 |
| APPROVED BY: | ANDREW C LONGORIA |
| EXPIRATION DATE: | |

08-B-95A

AIIC 000585

Page 2 of 2

Certificate No: *141671

## PERMIT DETAIL

| PERMIT NUMBER | PERMIT ADDRESS | PERMIT DESCRIPTION | STATUS - DATE - BY |
|---|---|---|---|
| 15014-10000-03665 | 950 N El Paso Dr | BUILDING ADDITION – CONVERT (E) 691 S.F. LOWER LEVEL INTO LIVING AREA, ADD 251 S.F. RFA IN LOWER LEVEL, ENLARGE STREET LEVEL AREA BY ADDING 535 S.F. RFA, ADD AN INTERIOR STAIR IN STREET LEVEL. 1 OF 2 "COMPLY WITH DEPARTMENT ORDER effective date 07/17/2015. PERMIT WILL EXPIRE 30 DAYS FROM ISSUANCE DATE." | CofO Issued - 11/14/2016 ANDREW C LONGORIA |

## PARCEL INFORMATION

| | | |
|---|---|---|
| Area Planning Commission: East Los Angeles | Baseline Hillside Ordinance: Yes | Census Tract: 1862.03 |
| Certified Neighborhood Council: Historic Highland Park | Community Plan Area: Northeast Los Angeles | Council District: 1 |
| District Map: 154-5A223 | Earthquake-Induced Liquefaction Area: Yes | Energy Zone: 9 |
| Fire District: VHFHSZ | Hillside Grading Area: YES | Hillside Ordinance: YES |
| LADBS Branch Office: LA | Near Source Zone Distance: .3 | Thomas Brothers Map Grid: 595-A2 |
| Zone: RI-1 | | |

## PARCEL DOCUMENT

| | | |
|---|---|---|
| Baseline Hillside Ordinance (BHO) Yes | City Planning Cases (CPC) CPC-1986-826-GPC | City Planning Cases (CPC) CPC-1989-177-IPRO |
| Community Development Block Grant (CDBG) SFZ-EAST LOS ANGELES STATE ENTERPRISE ZONE | Ordinance (ORD) ORD-165351-SA1622 | Ordinance (ORD) ORD-172316 |
| Ordinance (ORD) ORD-87345 | Special Grading Area(BOE Basic Grid Map A-13372) (HLSAREA) Yes | Zoning Information File (ZI) ZI-2129 EAST LOS ANGELES STATE ENTERPRISE ZONE |

## CHECKLIST ITEMS

| | | |
|---|---|---|
| Attachment - Plot Plan | Combine Elec - Wrk. per 91.107.2.1.1.1 | Combine HVAC - Wrk. per 91.107.2.1.1.1 |
| Combine Plumbg - Wrk. per 91.107.2.1.1.1 | Fabricator Reqd - Shop Welds | Fabricator Reqd - Structural Steel |
| Permit Flag - Not a Fire Life Safety Project | Special Inspect - Epoxy Injection | Special Inspect - Structural Wood (continuous) |
| Special Inspect - Structural Wood (periodic) | Std. Work Descr - Seismic Gas Shut Off Valve | |

## PROPERTY OWNER, TENANT, APPLICANT INFORMATION

OWNER(S)

Cmb Developers Inc    10020 National Blvd UNIT B    LOS ANGELES CA 90034

TENANT

APPLICANT

Relationship: Other

Ali Olfati-    5199 E. Pacific Coast Hwy    LONG BEACH, CA 90814    (562) 986-4313

## BUILDING RELOCATED FROM:

## (C)ONTRACTOR, (A)RCHITECT & (E)NGINEER INFORMATION

| NAME | ADDRESS | | CLASS | LICENSE # | PHONE # |
|---|---|---|---|---|---|
| (A)  Olfati, Ali | 5199 East Pacific Coast Hwy # 611, | Long Beach, CA 90804 | NA | C22217 | |
| (C)  C M B Developers Inc | 1080 Everett Place, | Los Angeles, CA 90026 | B | 991667 | |
| (E)  Minassian, Andre Melik | P O Box 29216, | Los Angeles, CA 90029 | NA | C33813 | |
| (E)  Saleh, Zouheir Toufic | 1304 Corte Maltera, | Costa Mesa, CA 92626 | NA | C42881 | |
| (E)  Zhong, Raymond Meng | 2416 W Valley Blvd, | Alhambra, CA 91803 | NA | M27635 | |

## SITE IDENTIFICATION-ALL

ADDRESS:

950 N EL PASO DR 90042

## LEGAL DESCRIPTION-ALL

| TRACT | BLOCK | LOT(s) | ARB | CO MAP REF # | PARCEL PIN | APN |
|---|---|---|---|---|---|---|
| TR 5625 | | 1 | | M B 60-77 | 154-5A223 401 | 5477-021-001 |

AIIC 000586

Page 1 of 2

# CITY OF LOS ANGELES
## CALIFORNIA



ERIC GARCETTI
MAYOR

# CERTIFICATE OF OCCUPANCY

| OWNER | CMB DEVELOPERS INC | No building or structure or portion thereof and no trailer park or portion thereof shall be used or occupied until a Certificate of Occupancy has been issued thereof. |
|---|---|---|
| | | Section 91.109.1 LAMC |

| | | CERTIFICATE: | Issued-Valid | DATE: |
|---|---|---|---|---|
| | 10020  NATIONAL BLVD UNIT B | BY: | ANDREW C LONGORIA | 11/14/2016 |
| | LOS ANGELES CA | 90034 | GREEN – MANDATORY | |

**SITE IDENTIFICATION**

ADDRESS  **950 N EL PASO DR 90042**

**LEGAL DESCRIPTION**

| TRACT | BLOCK | LOT(s) | ARB | CO. MAP REF # | PARCEL PIN | APN |
|---|---|---|---|---|---|---|
| TR 5625 | | 1 | | M B 60-77 | 154-5A223 401 | 5477-021-001 |

This certifies that, so far as ascertained or made known to the undersigned, the building or portion of building described below and located at the above address(es) complies with the applicable construction requirements (Chapter 9) and/or the applicable zoning requirements (Chapter 1) of the Los Angeles Municipal Code for the use and occupancy group in which it is classified and with applicable requirements of the State Housing Law for the following occupancies and is subject to any affidavits or building and zoning code modifications whether listed or not.

| COMMENT | BUILDING ADDITION – CONVERT (E) 691 S.F. LOWER LEVEL INTO LIVING AREA, ADD 251 S.F. RFA IN LOWER LEVEL. ENLARGE STREET LEVEL AREA BY ADDING 535 S.F. RFA, ADD AN INTERIOR STAIR IN STREET LEVEL. |
|---|---|

| USE | PRIMARY | OTHER |
|---|---|---|
| | **Dwelling - Single Family** | (-) None |

**PERMITS**

15014-10000-03665

**STRUCTURAL INVENTORY**

| ITEM DESCRIPTION | CHANGED | TOTAL |
|---|---|---|
| Dwelling Unit | 0 Units | 1 Units |
| Floor Area (ZC) | 1429 Sqft | 2140 Sqft |
| Floor Construction - Concrete Slab on Grade | | |
| Foundation - Spread (Pad) Footing | | |
| Height (ZC) | 0 Feet | 26.83 Feet |
| Length | 7.67 Feet | 42.09 Feet |
| NFPA-13D Fire Sprinklers Thru-out | | |
| Residential Floor Area | 1429 Sqft | 2140 Sqft |
| Stories | 1 Stories | 2 Stories |
| Type V-B Construction | | |
| Wall Construction - Wood Stud | | |
| Width | 10.83 Feet | 34.41 Feet |
| Wood (Plywood, OSB, etc.)Shearwall | | |
| R3 Occ. Group | 1429 Sqft | 2140 Sqft |
| Parking Req'd for Bldg (Auto+Bicycle) | 0 Stalls | |
| Parking Req'd for Site (Auto+Bicycle) | 0 Stalls | |
| Total Provided Parking for Site | 0 Stalls | |

## CITY LA DBS
### DEPARTMENT OF BUILDING AND SAFETY

**APPROVAL**

| CERTIFICATE NUMBER: | 141671 |
|---|---|
| BRANCH OFFICE: | LA |
| COUNCIL DISTRICT: | 1 |
| BUREAU: | CODENFRC |
| DIVISION: | CNTRLRGN |
| STATUS: | CofO Issued |
| STATUS BY: | ANDREW C LONGORIA |
| STATUS DATE: | 11/14/2016 |
| APPROVED BY: | ANDREW C LONGORIA |
| EXPIRATION DATE: | |

08-B-95A

AIIC 000587

Page 2 of 2                                                      Certificate No: *141671

## PERMIT DETAIL

| PERMIT NUMBER | PERMIT ADDRESS | PERMIT DESCRIPTION | STATUS - DATE - BY |
|---|---|---|---|
| 15014-10000-03665 | 950 N El Paso Dr | BUILDING ADDITION - CONVERT (E) 691 S.F. LOWER LEVEL INTO LIVING AREA, ADD 251 S.F. RFA IN LOWER LEVEL, ENLARGE STREET LEVEL AREA BY ADDING 535 S.F. RFA. ADD AN INTERIOR STAIR IN STREET LEVEL. 1 OF 2 "COMPLY WITH DEPARTMENT ORDER effective date 07/17/2015. PERMIT WILL EXPIRE 30 DAYS FROM ISSUANCE DATE." | CofO Issued - 11/14/2016 ANDREW C LONGORIA |

## PARCEL INFORMATION

| | | |
|---|---|---|
| Area Planning Commission: East Los Angeles | Baseline Hillside Ordinance: Yes | Census Tract: 1862.03 |
| Certified Neighborhood Council: Historic Highland Park | Community Plan Area: Northeast Los Angeles | Council District: 1 |
| District Map: 154-5A223 | Earthquake-Induced Liquefaction Area: Yes | Energy Zone: 9 |
| Fire District: VHFHSZ | Hillside Grading Area: YES | Hillside Ordinance: YES |
| LADBS Branch Office: LA | Near Source Zone Distance: .3 | Thomas Brothers Map Grid: 595-A2 |
| Zone: RI-1 | | |

## PARCEL DOCUMENT

| | | |
|---|---|---|
| Baseline Hillside Ordinance (BHO) Yes | City Planning Cases (CPC) CPC-1986-826-GPC | City Planning Cases (CPC) CPC-1989-477-IPRO |
| Community Development Block Grant (CDBG) SFZ-EAST LOS ANGELES STATE ENTERPRISE ZONE | Ordinance (ORD) ORD-165351-SA1622 | Ordinance (ORD) ORD-172316 |
| Ordinance (ORD) ORD-87345 | Special Grading Area(BOE Basic Grid Map A-13372) (HLSAREA) Yes | Zoning Information File (ZI) ZI-2129 EAST LOS ANGELES STATE ENTERPRISE ZONE |

## CHECKLIST ITEMS

| | | |
|---|---|---|
| Attachment - Plot Plan | Combine Elec - Wrk. per 91.107.2.1.1.1 | Combine HVAC - Wrk. per 91.107.2.1.1.1 |
| Combine Plumbg - Wrk. per 91.107.2.1.1.1 | Fabricator Reqd - Shop Welds | Fabricator Reqd - Structural Steel |
| Permit Flag - Not a Fire Life Safety Project | Special Inspect - Epoxy Injection | Special Inspect - Structural Wood (continuous) |
| Special Inspect - Structural Wood (periodic) | Std. Work Descr - Seismic Gas Shut Off Valve | |

## PROPERTY OWNER, TENANT, APPLICANT INFORMATION

OWNER(S)

Cmb Developers Inc                         10020 National Blvd UNIT B              LOS ANGELES CA 90034

TENANT

APPLICANT

Relationship: Other

Ali  Olfati-                           5199 E. Pacific Coast Hwy           LONG BEACH, CA 90814          (562) 986-4313

## BUILDING RELOCATED FROM:

## (C)ONTRACTOR, (A)RCHITECT & (E)NGINEER INFORMATION

| | NAME | ADDRESS | | CLASS | LICENSE # | PHONE # |
|---|---|---|---|---|---|---|
| (A) | Olfati, Ali | 5199 East Pacific Coast Hwy # 611, | Long Beach, CA 90804 | NA | C22217 | |
| (C) | C M B Developers Inc | 1080 Everett Place, | Los Angeles, CA 90026 | B | 991667 | |
| (E) | Minassian, Andre Melik | P O Box 29216, | Los Angeles, CA 90029 | NA | C33813 | |
| (E) | Saleh, Zouheir Toufic | 1304 Corte Maltera, | Costa Mesa, CA 92626 | NA | C42881 | |
| (E) | Zhong, Raymond Meng | 2416 W Valley Blvd, | Alhambra, CA 91803 | NA | M27635 | |

## SITE IDENTIFICATION-ALL

ADDRESS:
        950 N EL PASO DR 90042

## LEGAL DESCRIPTION-ALL

| TRACT | BLOCK | LOT(s) | ARB | CO MAP REF # | PARCEL PIN | APN |
|---|---|---|---|---|---|---|
| TR 5625 | | 1 | | M B 60-77 | 154-5A223 401 | 5477-021-001 |

AIIC 000588

**950 N El Paso Dr**



Permit #:
Plan Check #: X16LA01611
Event Code:

**16016 - 10000 - 02109**

Printed: 02/01/16 11:46 AM

| Bldg-Alter/Repair | City of Los Angeles - Department of Building and Safety | Issued on: | 02/01/2016 |
|---|---|---|---|
| 1 or 2 Family Dwelling | **APPLICATION FOR BUILDING PERMIT** | Last Status: | Issued |
| Express Permit | | | |
| No Plan Check | **AND CERTIFICATE OF OCCUPANCY** | Status Date: | 02/01/2016 |

**1. TRACT** | **BLOCK** | **LOT(s)** | **ARB** | **COUNTY MAP REF #** | **PARCEL ID # (PIN #)** | **2. ASSESSOR PARCEL #**
TR 5625 | | 1 | | M B 60-77 | 154-5A223 401 | 5477 - 021 - 001

**3. PARCEL INFORMATION**
Area Planning Commission - East Los Angeles                 Community Plan Area - Northeast Los Angeles                 Hillside Grading Area - YES
LADBS Branch Office - LA                                     Census Tract - 1862.03                                      Hillside Ordinance - YES
Baseline Hillside Ordinance - Yes                            District Map - 154-5A223                                    Earthquake-Induced Liquefaction Area - Yes
Council District - 1                                         Energy Zone - 9                                             Near Source Zone Distance - 3
Certified Neighborhood Council - Historic Highland Park      Fire District - VHFHSZ                                      Thomas Brothers Map Grid - 595-A2

ZONE(S):  R1-1

**4. DOCUMENTS**
ZI - ZI-2129 EAST LOS ANGELES STATE E HLSAREA - Yes                                    BHO - Yes
ORD - ORD-165351-SA1622          CPC - CPC-1986-826-GPC
ORD - ORD-172316                 CPC - CPC-1989-177-1PRO
ORD - ORD-87345                  CDBG - SEZ-EAST LOS ANGELES STATE

**5. CHECKLIST ITEMS**

**6. PROPERTY OWNER, TENANT, APPLICANT INFORMATION**
Owner(s):
CMB DEVELOPERS INC
10020 NATIONAL BLVD UNIT B, LOS ANGELES CA 90034 --
Tenant:

Applicant:  (Relationship: Contractor)
DAVID  LEE -
. -- (213) 807-3888

For Cashier's Use Only                    W/O #: 61602109

**7. EXISTING USE**                                 **PROPOSED USE**
(01) Dwelling - Single Family

**8. DESCRIPTION OF WORK**
Dry rot repair less than 10% of replacement cost of residential buildings.  Replacement of
damaged framing members (less than 10% of replacement cost of building) for houses and
duplexes (not including decks). ALL WORK FOR DETACHED GARAGE. "COMPLY
WITH DEPARTMENT ORDER effective date 07/17/2015, PERMIT WILL EXPIRE 30

**9. # Bldgs on Site & Use:**

**10. APPLICATION PROCESSING INFORMATION**
BLDG. PC By:                                        DAS PC By:
OK for Cashier:  Araceli Milian                     Coord. OK:

Signature: _AMilia_                                 Date: 02/01/2016

**11. PROJECT VALUATION**   Final Fee Period
Permit Valuation:  $501                   PC Valuation:

Sewer Cap ID:                             Total Bond(s) Due:

**12. ATTACHMENTS**

For inspection requests, call toll-free **(888) LA4BUILD (524-2845)**.  Outside LA County, call
(213) 482-0000 or request inspections via **www.ladbs.org**.  To speak to a Call Center agent, call
311.  Outside LA County, call (213) 473-3231

```
* P 1 6 0 1 6 1 0 0 0 0 0 2 1 0 9 F N *
```

LA HENR 106043124 2/1/2016 11:46:18 AM
BUILDING PERMIT-RES                        $65.00
EI RESIDENTIAL                              $0.50
ONE STOP SURCH                              $1.85
SYSTEMS DEVT FEE                            $5.55
CITY PLANNING SURCH                         $5.52
MISCELLANEOUS                              $10.00
PLANNING GEN PLAN MAINT SURCH               $4.60
CA BLDG STD COMMISSION SURCHARGE            $1.00
BUILDING PLAN CHECK                        $27.00
                                          -------
                       Sub Total:         $121.02
Permit #: 160161000002109
Building Card #: 2016LA59397
Receipt #: 0106540251

AIIC 000589

| 13. STRUCTURE INVENTORY | (Note: Numeric measurement data in the format "number / number" implies "change in numeric value / total resulting numeric value") | | 16016 - 10000 - 02109 |
|---|---|---|---|

| 14. APPLICATION COMMENTS: | In the event that any box (i.e. 1-16) is filled to capacity, it is possible that additional information has been captured electronically and could not be printed due to space restrictions. Nevertheless the information printed exceeds that required by section 19825 of the Health and Safety Code of the State of California. |
|---|---|

**15. BUILDING RELOCATED FROM:**

| 16. CONTRACTOR, ARCHITECT & ENGINEER NAME | ADDRESS | | CLASS | LICENSE # | PHONE # |
|---|---|---|---|---|---|
| (C)   C M B DEVELOPERS INC | 1080 EVERETT PLACE, | LOS ANGELES, CA 90026 | B | 991667 | (213) 807-3888 |

**PERMIT EXPIRATION/REFUNDS:** This permit expires two years after the date of the permit issuance. This permit will also expire if no construction work is performed for a continuous period of 180 days (Sec. 98.0602 LAMC). Claims for refund of fees paid must be filed within one year from the date of expiration for permits granted by LADBS (See. 22.12 & 22.13 LAMC). The permittee may be entitled to reimbursement of permit fees if the Department fails to conduct an inspection within 60 days of receiving a request for final inspection (HS 17951).

**17. LICENSED CONTRACTOR'S DECLARATION**

I hereby affirm under penalty of perjury that I am licensed under the provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect. The following applies to B contractors only: I understand the limitations of Section 7057 of the Business and Professional Code related to my ability to take prime contracts or subcontracts involving specialty trades.

License Class: **B**      License No.: **991667**      Contractor: **C M B DEVELOPERS INC**

**18. WORKERS' COMPENSATION DECLARATION**

I hereby affirm, under penalty of perjury, one of the following declarations:

( ) I have and will maintain a certificate of consent to self insure for workers' compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued.

( ) I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers' compensation insurance carrier and policy number are:

Carrier: _____      Policy Number: _____

(X) I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.

WARNING: FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

**19. ASBESTOS REMOVAL DECLARATION / LEAD HAZARD WARNING**

I certify that notification of asbestos removal is either not applicable or has been submitted to the AQMD or EPA as per section 19827.5 of the Health and Safety Code. Information is available at (909) 396-2336 and the notification form at www.aqmd.gov. Lead safe construction practices are required when doing repairs that disturb paint in pre-1978 buildings due to the presence of lead per section 6716 and 6717 of the Labor Code. Information is available at Health Services for LA County at (800) 524-5323 or the State of California at (800) 597-5323 or www.dhs.ca.gov/childlead.

**20. CONSTRUCTION LENDING AGENCY DECLARATION**

I hereby affirm under penalty of perjury that there is a construction lending agency for the performance of the work for which this permit is issued (Sec. 3097, Civil Code).

Lender's Name (If Any): _____      Lender's Address : _____

**21. FINAL DECLARATION**

I certify that I have read this application **INCLUDING THE ABOVE DECLARATIONS** and state that the above information **INCLUDING THE ABOVE DECLARATIONS** is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of this city to enter upon the above-mentioned property for inspection purposes. I realize that this permit is an application for inspection and that it does not approve or authorize the work specified herein, and it does not authorize or permit any violation or failure to comply with any applicable law. Furthermore, neither the City of Los Angeles nor any board, department officer, or employee thereof, make any warranty, nor shall be responsible for the performance or results of any work described herein, nor the condition of the property nor the soil upon which such work is performed. I further affirm under penalty of perjury, that the proposed work will not destroy or unreasonably interfere with any access or utility easement belonging to others and located on my property, but in the event such work does destroy or unreasonably interfere with such easement, a substitute easement(s) satisfactory to the holder(s) of the easement will be provided (Sec. 91.0106.4.3.4 LAMC).

**By signing below, I certify that:**

(1) I accept all the declarations above namely the Licensed Contractor's Declaration, Workers' Compensation Declaration, Asbestos Removal Declaration / Lead Hazard Warning, Construction Lending Agency Declaration, and Final Declaration; and

(2) This permit is being obtained with the consent of the legal owner of the property.

Print Name: **DAVID LEE**      Sign: _____      Date: **02/01/2016**      [X] Contractor      [ ] Authorized Agent

**950 N El Paso Dr**



Permit #:
Plan Check #: B15LA11158
Event Code:

**15016 - 10000 - 16815**
Printed: 10/22/15 10:27 AM

| | | |
|---|---|---|
| Bldg-Alter/Repair | City of Los Angeles - Department of Building and Safety | Issued on:  10/22/2015 |
| 1 or 2 Family Dwelling | **APPLICATION FOR BUILDING PERMIT** | Last Status:  Issued |
| Regular Plan Check | **AND CERTIFICATE OF OCCUPANCY** | Status Date:  10/22/2015 |
| Plan Check | | |

**1. TRACT**    **BLOCK**    **LOT(s)**      **ARB**    **COUNTY MAP REF #**    **PARCEL ID # (PIN #)**    **2. ASSESSOR PARCEL #**

TR 5625    1      M B 60-77    154-5A223 401    5477 - 021 - 001

**3. PARCEL INFORMATION**

| | | |
|---|---|---|
| Area Planning Commission - East Los Angeles | Community Plan Area - Northeast Los Angeles | Hillside Grading Area - YES |
| LADBS Branch Office - LA | Census Tract - 1862.03 | Hillside Ordinance - YES |
| Baseline Hillside Ordinance - Yes | District Map - 154-5A223 | Earthquake-Induced Liquefaction Area - Yes |
| Council District - 1 | Energy Zone - 9 | Near Source Zone Distance - .3 |
| Certified Neighborhood Council - Historic Highland Park | Fire District - VHFHSZ | Thomas Brothers Map Grid - 595-A2 |

ZONE(S):  R1-1

**4. DOCUMENTS**

| | |
|---|---|
| ZI - ZI-2129 EAST LOS ANGELES STATE E HLSAREA - Yes | BHO - Yes |
| ORD - ORD-165351-SA1622 | CPC - CPC-1986-826-GPC |
| ORD - ORD-172316 | CPC - CPC-1989-177-IPRO |
| ORD - ORD-87345 | CDBG - SEZ-EAST LOS ANGELES STATE |

**5. CHECKLIST ITEMS**

Permit Flag - Not a Fire Life Safety Project
Std. Work Descr - Seismic Gas Shut Off Valve
Combine Elec - Wrk. per 91.107.2.1.1.1

**6. PROPERTY OWNER, TENANT, APPLICANT INFORMATION**

Owner(s):
CMB DEVELOPERS INC
10020  NATIONAL BLVD UNIT B, LOS ANGELES CA 90034 --
Tenant:

Applicant:  (Relationship: Other)
ALI  OLFATI -
5199 E. PACIFIC COAST HWY, LONG BEACH, CA 90814 -- (562) 986-4313

**For Cashier's Use Only**      **W/O #: 51616815**

**7. EXISTING USE**      **PROPOSED USE**

(07) Garage - Private

**8. DESCRIPTION OF WORK**

REPLACE ROOF FRAMING OVER EXISTING GARAGE AND ACCESSARY ROOM.
NO CHANGE IN FLOOR AREA. 2 OF 2

**9. # Bldgs on Site & Use:**    2 OF 2 TV=175,000

**10. APPLICATION PROCESSING INFORMATION**

| | |
|---|---|
| BLDG. PC By:  Tu Hua | DAS PC By: |
| OK for Cashier:  Breanna Chavez | Coord. OK: |
| Signature: | Date: 10/22/2015 |

**11. PROJECT VALUATION**    **Final Fee Period**

| | | | |
|---|---|---|---|
| Permit Valuation:  $20,000 | | PC Valuation:   $0 | |
| Sewer Cap ID: | | Total Bond(s) Due: | |

**12. ATTACHMENTS**

Plot Plan

For inspection requests, call toll-free (888) LA4BUILD (524-2845). Outside LA County, call (213) 482-0000 or request inspections via **www.ladbs.org**. To speak to a Call Center agent, call 311. Outside LA County, call (213) 473-3231.

```
LA ERIC 103072593 10/22/2015 10:27:31 AM
BUILDING PERMIT-RES                    $290.00
BUILDING PLAN CHECK                      $0.00
BUILDING PLAN CHECK                      $0.00
EI RESIDENTIAL                           $2.60
INVESTIGATION - CE                     $580.00
ONE STOP SURCH                          $17.99
SYSTEMS DEVT FEE                        $53.98
CITY PLANNING SURCH                     $19.02
MISCELLANEOUS                           $10.00
PLANNING GEN PLAN MAINT SURCH           $15.85
CA BLDG STD COMMISSION SURCHARGE         $1.00
BUILDING PLAN CHECK                     $27.00
                                      _____
              Sub Total:             $1,017.44
Permit #: 150161000016815
Building Card #: 2015LA55313
Receipt #: 0103503796
```

*P 1 5 0 1 6 1 0 0 0 0 1 6 8 1 5 F N*

AIIC 000591

| 13. STRUCTURE INVENTORY | (Note: Numeric measurement data in the format "number / number" implies "change in numeric value / total resulting numeric value".) | 15016 - 10000 - 16815 |
|---|---|---|

**14. APPLICATION COMMENTS:**
** Approved Seismic Gas Shut-Off Valve may be required. **

In the event that any box (i.e. 1-16) is filled to capacity, it is possible that additional information has been captured electronically and could not be printed due to space restrictions. Nevertheless the information printed exceeds that required by section 19825 of the Health and Safety Code of the State of California.

**15. BUILDING RELOCATED FROM:**

| 16. CONTRACTOR, ARCHITECT & ENGINEER NAME | ADDRESS | | CLASS | LICENSE # | PHONE # |
|---|---|---|---|---|---|
| (A)   OLFATI, ALI | 5199 EAST PACIFIC COAST HWY # 611, | LONG BEACH, CA 90804 | | C22217 | |
| (C)   C M B DEVELOPERS INC | 1080 EVERETT PLACE, | LOS ANGELES, CA 90026 | B | 991667 | (310) 867-1045 |
| (E)   SALEH, ZOUHEIR TOUFIC | 1304 CORTE MALTERA, | COSTA MESA, CA 92626 | | C42881 | |

**PERMIT EXPIRATION/REFUNDS:** This permit expires two years after the date of the permit issuance. This permit will also expire if no construction work is performed for a continuous period of 180 days (Sec. 98.0602 LAMC). Claims for refund of fees paid must be filed within one year from the date of expiration for permits granted by LADBS (Sec. 22.12 & 22.13 LAMC). The permittee may be entitled to reimbursement of permit fees if the Department fails to conduct an inspection within 60 days of receiving a request for final inspection (HS 17951).

**17. LICENSED CONTRACTOR'S DECLARATION**

I hereby affirm under penalty of perjury that I am licensed under the provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect. The following applies to B contractors only: I understand that Section 7057 of the Business and Professional Code related to my ability to take prime contracts or subcontracts involving specialty trades.

License Class:   **B**        License No :   **991667**        Contractor:        **C M B DEVELOPERS INC**

**18. WORKERS' COMPENSATION DECLARATION**

I hereby affirm, under penalty of perjury, one of the following declarations:

( )  I have and will maintain a certificate of consent to self insure for workers' compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued.

( )  I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers' compensation insurance carrier and policy number are:

Carrier: _____        Policy Number: _____

(X)  I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.

WARNING: FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

**19. ASBESTOS REMOVAL DECLARATION / LEAD HAZARD WARNING**

I certify that notification of asbestos removal is either not applicable or has been submitted to the AQMD or EPA as per section 19827.5 of the Health and Safety Code. Information is available at (909) 396-2336 and the notification form at www.aqmd.gov. Lead safe construction practices are required when doing repairs that disturb paint in pre-1978 buildings due to the presence of lead per section 6716 and 6717 of the Labor Code. Information is available at Health Services for LA County at (800) 524-5323 or the State of California at (800) 597-5323 or www.dhs.ca.gov/childlead.

**20. CONSTRUCTION LENDING AGENCY DECLARATION**

I hereby affirm under penalty of perjury that there is a construction lending agency for the performance of the work for which this permit is issued  (Sec. 3097, Civil Code).

Lender's Name (If Any): _____        Lender's Address _____

**21. FINAL DECLARATION**

I certify that I have read this application **INCLUDING THE ABOVE DECLARATIONS** and state that the above information **INCLUDING THE ABOVE DECLARATIONS** is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of this city to enter upon the above-mentioned property for inspection purposes. I realize that this permit is an application for inspection and that it does not approve or authorize the work specified herein, and it does not authorize or permit any violation or failure to comply with any applicable law. Furthermore, neither the City of Los Angeles nor any board, department officer, or employee thereof, make any warranty, nor shall be responsible for the performance or results of any work described herein, nor the condition of the property nor the soil upon which such work is performed. I further affirm under penalty of perjury, that the proposed work will not destroy or unreasonably interfere with any access or utility easement belonging to others and located on my property, but in the event such work does destroy or unreasonably interfere with such easement, a substitute easement(s) satisfactory to the holder(s) of the easement will be provided (Sec. 91.0106.4.3.4 LAMC).

**By signing below, I certify that:**

(1)  I accept all the declarations above namely the Licensed Contractor's Declaration, Workers' Compensation Declaration, Asbestos Removal Declaration  / Lead Hazard Warning, Construction Lending Agency Declaration, and Final Declaration; and

(2)  This permit is being obtained with the consent of the legal owner of the property.

Print Name:   **JONATHAN ZADOK**        Sign: _____        Date:   **10/22/2015**        [X] Contractor    [ ] Authorized Agent

AIIC 000592

**950 N El Paso Dr**

Permit Application # : **15016 - 10000 - 16815**

| Bldg-Alter/Repair<br>1 or 2 Family Dwelling<br>Plan Check | City of Los Angeles - Department of Building and Safety<br>**PLOT PLAN ATTACHMENT** | Plan Check #: B15LA11158<br>Initiating Office: METRO<br>Printed on: 09/08/15  08:17:15 |
| --- | --- | --- |



(DO NOT DRAW, WRITE, OR PASTE ATTACHMENTS OUTSIDE BORDER)

COUNCIL DISTRICT:  1        INSPECTION DISTRICT:  R5142

PLOT PLAN

AIIC 000593

**950 N El Paso Dr**



Permit #:
Plan Check #: B15LA11158
Event Code:

**15014 - 10000 - 03665**

Printed: 10/22/15 10:27 AM

| Bldg-Addition **GREEN - MANDATORY** | City of Los Angeles - Department of Building and Safety | Issued on: | 10/22/2015 |
|---|---|---|---|
| 1 or 2 Family Dwelling | **APPLICATION FOR BUILDING PERMIT** | Last Status: | Issued |
| Regular Plan Check | | | |
| Plan Check | **AND CERTIFICATE OF OCCUPANCY** | Status Date: | 10/22/2015 |

| 1. TRACT | BLOCK | LOT(s) | | ARB - | COUNTY MAP REF # | PARCEL ID # (PIN #) | 2. ASSESSOR PARCEL # |
|---|---|---|---|---|---|---|---|
| TR 5625 | | 1 | | | M B 60-77 | 154-5A223 401 | 5477 - 021 - 001 |

**3. PARCEL INFORMATION**

| | | |
|---|---|---|
| Area Planning Commission - East Los Angeles | Community Plan Area - Northeast Los Angeles | Hillside Grading Area - YES |
| LADBS Branch Office - LA | Census Tract - 1862.03 | Hillside Ordinance - YES |
| Baseline Hillside Ordinance - Yes | District Map - 154-5A223 | Earthquake-Induced Liquefaction Area - Yes |
| Council District - 1 | Energy Zone - 9 | Near Source Zone Distance - 3 |
| Certified Neighborhood Council - Historic Highland Park | Fire District - VHFHSZ | Thomas Brothers Map Grid - 595-A2 |

ZONES(S): R1-1

**4. DOCUMENTS**

| | |
|---|---|
| ZI - ZI-2129 EAST LOS ANGELES STATE E HLSAREA - Yes | BHO - Yes |
| ORD - ORD-165351-SA1622 | CPC - CPC-1986-826-GPC |
| ORD - ORD-172316 | CPC - CPC-1989-177-IPRO |
| ORD - ORD-87345 | CDBG - SEZ-EAST LOS ANGELES STATE |

**5. CHECKLIST ITEMS**

| | | |
|---|---|---|
| Special Inspect - Epoxy Injection | Fabricator Reqd - Shop Welds | Std. Work Descr - Seismic Gas Shut Off Valve |
| Special Inspect - Structural Wood (continuous) | Fabricator Reqd - Structural Steel | Combine Plumbg - Wrk. per 91.107.2.1.1.1 |
| Special Inspect - Structural Wood (periodic) | Permit Flag - Not a Fire Life Safety Project | Combine HVAC - Wrk. per 91.107.2.1.1.1 |

**6. PROPERTY OWNER, TENANT, APPLICANT INFORMATION**

Owner(s):
CMB DEVELOPERS INC
10020 NATIONAL BLVD UNIT B, LOS ANGELES CA 90034 --
Tenant:

Applicant:  (Relationship: Other)
ALI OLFATI -
5199 E. PACIFIC COAST HWY, LONG BEACH, CA 90814 -- (562) 986-4313

**7. EXISTING USE**                          PROPOSED USE

(01) Dwelling - Single Family

**8. DESCRIPTION OF WORK**

BUILDING ADDITION - CONVERT (E) 691 S.F. LOWER LEVEL INTO LIVING AREA, ADD 251 S.F. RFA IN LOWER LEVEL, ENLARGE STREET LEVEL AREA BY ADDING 535 S.F. RFA, ADD AN INTERIOR STAIR IN STREET LEVEL.  1 OF 2  "COMPLY WITH DEPARTMENT ORDER effective date 07/17/2015. PERMIT WILL EXPIRE 30

**9. # Bldgs on Site & Use:**       1 OF 2 TV=175,000

**10. APPLICATION PROCESSING INFORMATION**

| BLDG. PC By: | Tu Hua | DAS PC By: | |
|---|---|---|---|
| OK for Cashier: | Breanna Chavez | Coord. OK: | |
| Signature: | | Date: | 10/22/2015 |

**11. PROJECT VALUATION**       Final Fee Period
Permit Valuation:  $155,000        PC Valuation:  $175,000

Sewer Cap ID:        Total Bond(s) Due:

**12. ATTACHMENTS**
Plot Plan

For inspection requests, call toll-free (888) LA4BUILD (524-2845).  Outside LA County, call (213) 482-0000 or request inspections via www.ladbs.org.  To speak to a Call Center agent, call **311**.  Outside LA County, call (213) 473-3231.

For Cashier's Use Only                                    W/O #: 51403665

LA ERIC 103072593 10/22/2015 10:27:12 AM

| | |
|---|---|
| BLDG PERMIT RES | $1,125.00 |
| ELECT PERMIT RES | $292.50 |
| HTG/REF PERMIT RES | $146.25 |
| PLBG PERMIT RES | $292.50 |
| BLDG PLAN CHECK | $0.00 |
| BLDG PLAN CHECK | $0.00 |
| PLAN MAINTENANCE | $22.50 |
| EI RESIDENTIAL | $20.15 |
| INVESTIGATION - CE | $2,250.00 |
| ONE STOP SURCH | $82.98 |
| SYSTEMS DEV FEE | $248.93 |
| CITY PLANNING SURCH | $68.85 |
| MISCELLANEOUS | $10.00 |
| PLANNING GEN PLAN MAINT SURCH | $57.38 |
| SCHOOL DEV RES | $4,119.36 |
| CA BLDG STD COMMISSION SURCHARGE | $7.00 |
| BLDG PLAN CHECK | $0.00 |

Sub Total:   $8,743.40

Permit #: 150141000003665
Building Card #: 2015LA55312
Receipt #: 0103503795

*P15014100000366 5FN*

AIIC 000594

**13. STRUCTURE INVENTORY**   (Note: Numeric measurement data in the format "number / number" implies "change in numeric value / net-of resulting numeric value")

15014 - 10000 - 03665

| | |
|---|---|
| (P) Floor Area (ZC): +1429 Sqft / 2140 Sqft | (P) Parking Req'd for Bldg (Auto+Bicycle): 0 Stalls / Stall |
| (P) Height (ZC): 0 Feet / 26.83 Feet | (P) Parking Req'd for Site (Auto+Bicycle): 0 Stalls / Stall |
| (P) Length: +7.67 Feet / 42.09 Feet | (P) Total Provided Parking for Site: 0 Stalls / Stall |
| (P) Residential Floor Area +1429 Sqft / 2140 Sqft | (P) Type V-B Construction |
| (P) Stories: +1 Stories / 2 Stories | (P) Floor Construction - Concrete Slab on Grade |
| (P) Width: +10.83 Feet / 34.41 Feet | (P) Foundation - Spread (Pad) Footing |
| (P) Dwelling Unit: 0 Units / 1 Units | (P) Wall Construction - Wood Stud |
| (P) NFPA-13D Fire Sprinklers Thru-out | |
| (P) Wood (Plywood, OSB, etc.)Shearwall | |
| (P) R3 Occ. Group: +1429 Sqft / 2140 Sqft | |

**14. APPLICATION COMMENTS:**
** Approved Seismic Gas Shut-Off Valve may be required. ** Investigation fee pending.  Per slope band analysis, allowable RFA = 2196.61 S.F.

In the event that any box (i.e. 1-16) is filled to capacity, it is possible that additional information has been captured electronically and could not be printed due to space restrictions. Nevertheless the information printed exceeds that required by section 19825 of the Health and Safety Code of the State of California.

**15. BUILDING RELOCATED FROM:**

**16. CONTRACTOR, ARCHITECT & ENGINEER NAME**

| NAME | ADDRESS | CLASS | LICENSE # | PHONE # |
|---|---|---|---|---|
| (A)  OLFATI, ALI | 5199 EAST PACIFIC COAST HWY # 611,  LONG BEACH, CA 90804 | | C22217 | |
| (C)  C M B DEVELOPERS INC | 1080 EVERETT PLACE,  LOS ANGELES, CA 90026 | B | 991667 | |
| (E)  MINASSIAN, ANDRE MELIK | P O BOX 29216,  LOS ANGELES, CA 90029 | | C33813 | |
| (E)  SALEH, ZOUHEIR TOUFIC | 1304 CORTE MALTERA,  COSTA MESA, CA 92626 | | C42881 | |
| (E)  ZHONG, RAYMOND MENG | 2416 W VALLEY BLVD,  ALHAMBRA, CA 91803 | | M27635 | |

**PERMIT EXPIRATION/REFUNDS:** This permit expires two years after the date of the permit issuance. This permit will also expire if no construction work is performed for a continuous period of 180 days (Sec. 98.0602 LAMC). Claims for refund of fees paid must be filed within one year from the date of expiration for permits granted by LADBS (Sec. 22.12 & 22.13 LAMC). The permitee may be entitled to reimbursement of permit fees if the Department fails to conduct an inspection within 60 days of receiving a request for final inspection (HS 17951).

**17. LICENSED CONTRACTOR'S DECLARATION**

I hereby affirm under penalty of perjury that I am licensed under the provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect. The following applies to B contractors only: I understand the limitations of Section 7057 of the Business and Professional Code related to my ability to take prime contracts or subcontracts involving specialty trades.

License Class:  **B**      License No.:  **991667**      Contractor:  **C M B DEVELOPERS INC**

**18. WORKERS' COMPENSATION DECLARATION**

I hereby affirm, under penalty of perjury, one of the following declarations :

( )  I have and will maintain a certificate of consent to self insure for workers' compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued.

( )  I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers' compensation insurance carrier and policy number are:

Carrier: _____     Policy Number: _____

(X)  I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.

WARNING: FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

**19. ASBESTOS REMOVAL DECLARATION / LEAD HAZARD WARNING**

I certify that notification of asbestos removal is either not applicable or has been submitted to the AQMD or EPA as per section 19827.5 of the Health and Safety Code. Information is available at (909) 396-2336 and the notification form at www.aqmd.gov. Lead safe construction practices are required when doing repairs that disturb paint in pre-1978 buildings due to the presence of lead per section 6716 and 6717 of the Labor Code. Information is available at Health Services for LA County at (800) 524-5323 or the State of California at (800) 597-5323 or www.dhs.ca.gov/childlead.

**20. CONSTRUCTION LENDING AGENCY DECLARATION**

I hereby affirm under penalty of perjury that there is a construction lending agency for the performance of the work for which this permit is issued (Sec. 3097, Civil Code).

Lender's Name (If Any): _____     Lender's Address : _____

**21. FINAL DECLARATION**

I certify that I have read this application **INCLUDING THE ABOVE DECLARATIONS** and state that the above information **INCLUDING THE ABOVE DECLARATIONS** is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of this city to enter upon the above-mentioned property for inspection purposes. I realize that this permit is an application for inspection and that it does not approve or authorize the work specified herein, and it does not authorize or permit any violation or failure to comply with any applicable law. Furthermore, neither the City of Los Angeles nor any board, department officer, or employee thereof, make any warranty, nor shall be responsible for the performance or results of any work described herein, nor the condition of the property nor the soil upon which such work is performed. I further affirm under penalty of perjury, that the proposed work will not destroy or unreasonably interfere with any access or utility easement belonging to others and located on my property, but in the event such work does destroy or unreasonably interfere with such easement, a substitute easement(s) satisfactory to the holder(s) of the easement will be provided (Sec. 91.0106.4.3.4 LAMC).

**By signing below, I certify that:**

(1)  I accept all the declarations above namely the Licensed Contractor's Declaration, Workers' Compensation Declaration, Asbestos Removal Declaration  / Lead Hazard Warning, Construction Lending Agency Declaration, and Final Declaration; and

(2)  This permit is being obtained with the consent of the legal owner of the property.

Print Name:  **JONATHAN ZADOK**      Sign: _____      Date:  **10/22/2015**      [X] Contractor    [ ] Authorized Agent

AIIC 000595

**950 N El Paso Dr**

Permit Application # : **15014 - 10000 - 03665**

| Bldg-Addition<br>1 or 2 Family Dwelling<br>Plan Check | City of Los Angeles - Department of Building and Safety<br>**PLOT PLAN ATTACHMENT** | Plan Check #:  B15LA11158FO<br>Initiating Office:  METRO<br>Printed on: 09/08/15  08:13:08 |



AIIC 000596

# Exhibit 5



# Exhibit 5



## AmTrust North America
An AmTrust Financial Company

04/24/2019 01:22 PM F2146_5097

March 4, 2019

***Certified Mail, Return Receipt Requested***    **7018 0680 0002 1681 0460**

David Lee
CMB Developers, Inc.
1080 Everett Place
Los Angeles, CA  90026

***Via Email to*** cchiao@chiaowu.com

RE:   **Casey Conway v. CMB Developers Inc. and Radix Fire Protection Inc.**
Claim No.:           2968891-1
Underwriting Co:     Associated Industries Insurance Company
     Our Insured:        C M B Developers, Inc.
     Policy Number:      AES1040716 01
     Effective Dates:    August 6, 2017 to August 6, 2018
     Claimant:           Casey Conway
     Loss Date:          July 6, 2018
     Loss Location:      950 El Paso Drive, Los Angeles, California

Dear Mr. Lee:

We are your liability insurer and we received a lawsuit entitled, *Conway v. CMB Developers Inc.,* which has been filed against you in the Superior Court of the State of California, County of Los Angeles, in connection with the above-captioned matter.  Please be advised that we reviewed this matter and determined that no coverage is available for this matter under your policy for the reasons set forth below.  Accordingly, we hereby disclaim coverage of this matter and will not defend or indemnify you with respect thereto.

In this matter, claimant alleges his property at 950 El Paso Drive, Los Angeles, California sustained extensive water damage on July 6, 2018 when the sprinkler fire protective system failed, dispersing a large quantity of water into the property.  Claimant asserts he purchased the home from you in or about October or November of 2016.  Claimant further indicates that you contracted with Radix to install and maintain the water sprinkler fire protection system.

Claimant sets forth the following causes of action against you:

1.     Violation of Building Standards;

PO Box 89404• Cleveland, OH  44101 • 844-601-7760 • Fax: 216-643-5500
Email: James.Dermit@amtrustgroup.com•  Website:  www.amtrustgroup.com

AIIC 000049

2.     Breach of Contract;
3.     Breach of Express Warranty;
4.     Strict Liability; and
5.     Negligence.

First, we refer you to policy form CG 00 01 12 07, at Section I – Coverages, Coverage A Bodily Injury and Property Damage Liability, paragraph 1 and Coverage B Personal and Advertising Injury Liability, paragraph 1, which state in relevant part:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1. Insuring Agreement**
    **a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.**

* * *

    **b. This insurance applies to "bodily injury" and "property damage" only if:**
        **(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";**

* * *

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**
**1. Insuring Agreement**
    **a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.**

* * *

"Bodily injury," "property damage," "occurrence" and "personal and advertising injury" are defined in policy form CG 00 01 12 07 at Section V – Definitions as follows:

AIIC 000050

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

"Property damage" means:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

* * *

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;
d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
e. Oral or written publication of material that violates a person's right of privacy.
f. The use of another's advertising idea in your "advertisement"; or
g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

Claims for faulty construction, violation of building standards, breach of contract and breach of warranty do not involve claims for "bodily injury" or "property damage" caused by an accident or "occurrence" or "personal and advertising injury." To the extent this matter does not involve a claim for "bodily injury" or "property damage" caused by an accident or "occurrence" or

04/24/2019 01:22 PM F2146_5097

AIIC 000051

"personal and advertising injury," no coverage is available under the policy as set forth in the above-cited provisions.

Second, we refer you to policy form AES GL 222 09 15, Exclusion – Designated Construction or Contractor Operations, which states in relevant part:

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.**

**EXCLUSION – DESIGNATED CONSTRUCTION OR CONTRACTOR OPERATIONS**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

**SCHEDULE**

**Description of excluded operations:**

* * *

**Fire Suppression Systems – Installation**

* * *

**(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)**

**This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.**

"Products – completed operations hazard" and "your work" are defined in Section V – Definitions of policy form CG 00 01 12 07 as follows:

**"Products-completed operations hazard":**
**a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:**
**(1) Products that are still in your physical possession; or**
**(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:**
**(a) When all of the work called for in your contract has been completed.**

04/24/2019 01:22 PM F2146_5097

**(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.**

**(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.**

**Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.**

**b. Does not include "bodily injury" or "property damage" arising out of:**

**(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;**

**(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or**

**(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.**

\* \* \*

**"Your Work"**

**a. Means:**

**(1) Work or operations performed by you or on your behalf; and**

**(2) Materials, parts or equipment furnished in connection with such work or operations.**

**b. Includes:**

**(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and**

**(2) The providing of or failure to provide warnings or instructions.**

Claimant alleges he purchased the home from you in October or November of 2016 and the damages occurred on July 6, 2018. Thus, the damages are included in the "products – completed operations hazard." Claimant further alleges the damages arose out of "your work," i.e. the water sprinkler fire protection system installed by Radix. You contracted with Radix to install this system. Since this matter involves "property damage" included in the "products – completed operations hazard" arising out of "your work" specifically excluded in the Schedule of policy form AES GL 222 09 15, no coverage is available under the policy as set forth in the above-cited provisions.

Third, we refer you to policy form CG 00 01 12 07, at Section I – Coverages, Coverage A Bodily Injury and Property Damage Liability, paragraph 2. Exclusions, subparagraph j, which states in relevant part:

**2. Exclusions**
**This insurance does not apply to:**

\* \* \*

**j.  Damage To Property**

04/24/2019 01:22 PM F2146_5097

**"Property damage" to:**

* * *

(4) **Personal property in the care, custody or control of the insured;**
(5) **That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or**
(6) **That particular part of any property that must be restored repaired or replaced because "your work" was incorrectly performed on it.**

* * *

**Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.**

* * *

**Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".**

"Your product" is defined in Section V – Definitions as follows:

**"Your product":**
**a. Means:**
    (1) **Any goods or products, other than real property, manufactured, sold or disposed of by:**
        (a) **You;**
        (b) **Others trading under your name; or**
        (c) **A person or organization whose business or assets you have acquired; and**
    (2) **Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.**
**b. Includes**
    (1) **Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product", and**
    (2) **The providing of or failure to provide warnings or instructions.**
**c. Does not include vending machines or other property rented to or located for the use of others but not sold.**

To the extent, if any, this matter involves "property damage," caused by an "occurrence," to: property in your care, custody or control; property on which you or any contractors or subcontractors working directly or indirectly on your behalf were performing operations, and the "property damage" arises out of those operations; or property that must be restored, repaired or replaced because "your work" was incorrectly performed on it and that damage is not included in the "products-completed operations hazard," no coverage is available under the policy as set forth in the above-cited provisions.

04/24/2019 01:22 PM F2146_5097

AIIC 000054

Fourth, we refer you to exclusion 2.k of Coverage A Bodily Injury And Property Damage Liability, which states:

**2. Exclusions**
**This insurance does not apply to:**

* * *

**k. Damage To Your Product**
**"Property damage" to "your product" arising out of it or any part of it.**

To the extent, if any, this matter involves "property damage" caused by an "occurrence," and that damage is to "your product" arising out of it or any part of it, no coverage is available under the policy as set forth in the above-cited provision.

Fifth, we refer you to Coverage A Bodily Injury And Property Damage Liability, at paragraph 2. l, which states:

**2. Exclusions**
**This insurance does not apply to:**

* * *

**l. Damage To Your Work**
**"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".**

**This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.**

To the extent, if any, this matter involves "property damage" caused by an "occurrence," and that damage is to "your work" arising out of it or any part of it and included in the products-completed operations hazard, no coverage is available under the policy as set forth in the above-cited provision.

Sixth, we refer you to Coverage A Bodily Injury And Property Damage Liability, paragraph 2. m, which states:

**2. Exclusions**
**This insurance does not apply to:**

* * *

**m. Damage To Impaired Property Or Property Not Physically Injured**
**"Property damage" to "impaired property" or property that has not been physically injured, arising out of:**
**(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or**

04/24/2019 01:22 PM F2146_5097

AIIC 000055

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

"Impaired property" is defined in Section V – Definitions as follows:

**"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:**

**a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or**

**b. You have failed to fulfill the terms of a contract or agreement;**

**if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.**

To the extent, if at all, this matter involves "property damage" caused by an "occurrence" and that damage is to property that has not been physically injured or to "impaired property," i.e., tangible property that cannot be used or is less useful because it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous or you have failed to fulfill the terms of a contract or agreement, and that can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or by fulfilling the terms of the contract or agreement, no coverage is available under the policy as set forth in the above-cited provision.

Seventh, we refer you to policy form NXGL 167 05 17, Standard Additional Exclusions, paragraph 5, which states:

**5. EXCLUSION – MOLD, MILDEW OR FUNGUS**

**A. Section I – Coverage A – Bodily Injury and Property Damage Liability, Paragraph 2. Exclusions is amended to add the following:**

**This insurance does not apply to:**

**Fungi Or Bacteria**

**(1) Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.**

**(2) Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.**

04/24/2019 01:23 PM F2146_5097

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

B. Section I – Coverage B – Personal and Advertising Injury Liability, Paragraph 2. Exclusions is amended to add the following:

This insurance does not apply to:

Fungi Or Bacteria

(1) "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

(2) Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

C. The following definition is added to the Definitions Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

To this extent this matter involves injury or damage arising from "fungi" or bacteria, or any of the other above-cited excluded causes, losses, costs or expenses, no coverage is available under the policy as set forth in the above-cited provision.

Eighth, we refer you to policy form CG 00 01 12 07 at Section IV- Commercial General Liability Conditions, paragraph 6, which states:

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

* * *

6. Representations
   By accepting this policy, you agree:
   a. The statements in the Declarations are accurate and complete;
   b. Those statements are based upon representations you made to us; and
   c. We have issued this policy in reliance upon your representations.

04/24/2019 01:23 PM F2146_5097

AIIC 000057

On your application for insurance dated July 28, 2016, indicated that you only remodeled homes to lease out.  You further did not disclose the subject project.  Our investigation reveals that you obtained the permits for this project in 2015 and further sold the house to claimant.  You further advised on your application that you had standard formal written contracts with subcontractors, required certificates of insurance from all subcontractors and required all subcontractors to name you as an additional insured on their insurance policies and you required hold harmless agreements in your favor.  In the event there is a determination that you made material representations concerning your projects and use of contractors, no coverage is available under the policy for this additional reason as set forth in the above-cited provisions.

For the foregoing reasons, we are disclaiming coverage of this matter and will not defend or indemnify you with respect thereto.

The California Code of Regulations, Title 10, Chapter 5, Section 2695.7 (B) (3) requires that we advise you that if you think this claim has been wrongfully denied or rejected, you may have this matter reviewed by the California Department of Insurance. The Department's address is:

California Department of Insurance
Consumer Services
300 South Spring Street, South Tower
Los Angeles, CA  90013 1-800-927-4357
www.insurance.ca.gov

The above information is advisory only, and is not intended to either encourage or discourage you from contacting the California Department of insurance. If you elect to send any correspondence regarding our position concerning coverage of this claim, we ask that you please forward us copies of all such correspondence.

This letter does not constitute a waiver of any policy provisions or defenses available to us.

If any of the factual information relied upon by us in the letter is inaccurate in any way, please advise us immediately in writing.  If you receive any additional information concerning this matter, including amended suit papers, you should forward that information and suit papers to us immediately, and upon receipt we will reassess our coverage position.

Very truly yours,

*James Dermit*

James Dermit
Director, Complex Claims

cc:     G.J. Sullivan – GBA
        P.O. Box 4880
        Anaheim, CA  92803

04/24/2019 01:23 PM F2146_5097

AIIC 000058

AIIC 000059

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

David Lee
C M B Developers, Inc.
1080 Everett Place
Los Angeles, CA 90026

9590 9402 4589 8278 5326 27

2. Article Number (Transfer from service label)

7018 0680 0002 1981 0460

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X
☐ Agent
☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☑ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

AIIC 000060

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10



USPS TRACKING #

9590 9402 4589 8278 5326 27

• Sender: Please print your name, address, and ZIP+4® in this box•

AmTrust North America
Gail Henderson
Claim # 2968891-1
P.O. Box 89404
Cleveland, OH 44101

United States
Postal Service

04/24/2019 11:02 AM F2146_5067

# Exhibit 6



# Exhibit 6

232330.1

DAVID LEE                                          September 28, 2020

```
 1            SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2         COUNTY OF LOS ANGELES - UNLIMITED JURISDICTION

 3

 4   IN RE MATTER OF:           )    CERTIFIED COPY
                                )
 5   CASEY CONWAY, an individual, )
                                )
 6           Plaintiff,         )
                                )
 7      vs.                     )    CASE NO. 19STCV02690
                                )
 8   CMB DEVELOPERS, INC., a    )
     California corporation; RADIX )
 9   FIRE PROTECTION, INC., a   )
     California corporation; and )
10   DOES 1 through 100, inclusive,)
                                )
11           Defendants.        )
     _____)
12                              )
     AND ALL RELATED CROSS-ACTIONS.)
13   _____)

14

15    DEPOSITION OF PMK FOR CMB DEVELOPERS, INC. - DAVID LEE

16                     REMOTE VIA ZOOM

17              Monday, September 28, 2020

18

19   Stenographically Reported by:

20   HEATHER J. BAUTISTA, CSR, CRR, RPR

21   Job No.:  132914

22

23

24           CENTEXTLEGAL.COM - 855.CENTEXT

25
```

DAVID LEE                                    September 28, 2020

```
 1

 2

 3

 4

 5

 6          DEPOSITION of PMK FOR CMB DEVELOPERS, INC. -

 7   DAVID LEE, taken before Heather J. Bautista, CSR No.

 8   11600, a Certified Shorthand Reporter for the state of

 9   California, with principal office in the county of Santa

10   Clara, commencing on Monday, September 28, 2020,

11   1:35 p.m., remotely via Zoom.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

DAVID LEE                                    September 28, 2020

```
 1   APPEARANCES OF COUNSEL:

 2        For the Plaintiff:

 3             Law Offices of Aaron B. Booth
               BY:   AARON B. BOOTH, ESQ.
 4             707 Wilshire Boulevard
               46th Floor
 5             Los Angeles, California 90017
               Phone:  (213) 228-0330 / Fax:  (213) 489-2204
 6             abooth@aaronbooth.com

 7        For Defendant CMB Developers, Inc.:

 8             Chiao & Wu, LLP
               BY:   SOHAILA SAGHEB, ESQ.
 9             600 S. Lake Avenue
               Suite 405
10             Pasadena, California 91106
               Phone:  (626) 698-0088 / Fax:  (626) 698-0068
11             ssagheb@chiaowu.com

12             Skane Wilcox
               BY:   JEFFREY MORRIS, ESQ.
13             1055 W. 7th Street
               Suite 1700
14             Los Angeles, California 90017
               Phone:  (213) 452-1200 / Fax:  (213) 452-1201
15             jmorris@skanewilcox.com

16        For Defendant Globe Fire Sprinkler Corporation:

17             Lewis Brisbois Bisgaard & Smith, LLP
               BY:   CAMERON M. KALUNIAN, ESQ.
18             633 W. Fifth Street
               Suite 4000
19             Los Angeles, California 90071
               Phone:  (213) 250-1800 / Fax:  (213) 250-7900
20             cameron.kalunian@lbbslaw.com

21        For Defendant Radix Fire Protection, Inc.

22             Murchison & Cumming, LLP
               BY:   GINA BAZAZ, ESQ.
23             801 S. Grand Avenue
               9th Floor
24             Los Angeles, CA  90017
               Phone: (213) 630-1018 / Fax:  (213) 623-6336
25             gbazaz@murchisonlaw.com
```

DAVID LEE                                    September 28, 2020

```
 1                  INDEX OF EXAMINATION

 2                                              PAGE

 3   DAVID LEE

 4      EXAMINATION BY MR. BOOTH                8

 5      EXAMINATION BY MS. BAZAZ                66

 6      EXAMINATION BY MR. KALUNIAN             95

 7      EXAMINATION BY MR. BOOTH                107

 8      EXAMINATION BY MS. BAZAZ                109

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

DAVID LEE                                    September 28, 2020

```
 1                   INDEX OF EXHIBITS

 2    Exhibit No.  Description                        Page

 3    Exhibit 1    Notice of PMK of CMB Developer's   15
                   Deposition
 4
      Exhibit 2    Tentative Ruling from the Court    27
 5
      Exhibit 3    Answers to Interrogatories         30
 6
      Exhibit 5    Contract                           44
 7
      Exhibit 6    Plans                              48
 8
      Exhibit 7    Radix Work Proposal                53
 9
      Exhibit 8    Photograph                         62
10
      Exhibit 9    Photograph                         59
11
      Exhibit 10   Photograph                         61
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                  Monday, September 28, 2020

 2                        1:35 p.m.

 3                        --oOo--

 4        THE STENOGRAPHER:  Good afternoon.  My name is

 5   Heather Bautista.  I am a certified stenographic

 6   reporter licensed by the State of California.  My

 7   license number is 11600.

 8             Today's date is Monday, September 28, 2020, and

 9   the time is approximately 1:36 p.m.

10             This is the deposition of David Lee in the

11   matter of Casey Conway v. CMB Devlelopers, Inc., et al.

12   This case is venued in the Superior Court of the State

13   of California for the County of Los Angeles.  The case

14   number is 19STCV02690.

15             This deposition and any transcript produced

16   therefrom will be handled pursuant to California Code of

17   Civil Procedure 2025.

18             At this time, I will ask counsel to identify

19   yourself, state whom you represent, and agree on the

20   record that there is no objection to this deposition

21   officer administering a binding oath to the witness via

22   Zoom.

23             Let's start with the noticing attorney, please.

24        MR. BOOTH:  Certainly.  But I do want to make

25   one small correction.  This is a deposition of the
```

DAVID LEE                                                    September 28, 2020

```
 1        A.    We probably have them somewhere, or they have

 2   them at the City, but I'm just -- I'm not exactly sure

 3   if these are the approved plans, because they should

 4   have stamps on them.  And, actually, they wouldn't have

 5   the correction notes either.

 6        Q.    Have you provided a set of approved plans to be

 7   produced in discovery?

 8        A.    I don't think I have a set of approved plans

 9   anymore.

10        Q.    Okay.

11        A.    I don't -- I don't keep them.

12        Q.    You've been asked to provide your entire job

13   file.  Have you provided the entire job file in

14   discovery?

15        A.    I have.

16        Q.    Okay.

17        A.    I can't recollect, but this definitely does not

18   look like the approved set of plans.

19        Q.    Okay.

20        A.    This might have been the only set we had, other

21   than going to the City.

22              (Exhibit 7 was marked for identification.)

23        Q.    (By Mr. Booth)  Fair enough.  Turn to

24   Exhibit 7.

25              Sir, do you recognize this document?
```

DAVID LEE                                    September 28, 2020

```
 1      A.   Yes.

 2           MR. BOOTH:  Scroll down.

 3      Q.   (By Mr. Booth)  Would you describe this

 4  document for me, please.

 5      A.   This is a proposal for -- proposal for work

 6  from Radix.

 7      Q.   Was this proposal accepted?

 8      A.   Yes.

 9      Q.   Was it ever reduced to a contract?

10      A.   Was it ever reduced to a contract?

11           MS. SAGHEB:  Calls for -- I'm going to object

12  in that it calls for a legal conclusion.

13      Q.   (By Mr. Booth)  Did you ever sign this

14  proposal -- strike that.  I'll just start over.

15           Did you ever sign any document approving the

16  work that was proposed by Radix --

17      A.   Yes.

18      Q.   -- in this proposal?

19      A.   Yes.

20      Q.   The copy I have is not signed.  Would you take

21  a look at this, and -- at Page 2, 3, and 4, and let me

22  know if this is a full and complete copy of the

23  agreement you entered into with Radix.

24      A.   I mean, I can't be a hundred percent clear if

25  this is the one, if there was any strikeouts or any
```

DAVID LEE                                    September 28, 2020

```
 1        Q.   All right.
 2             Let's go to Page 15 of this document.  And I
 3   was kind of interested at the bottom of the page, 314 --
 4   well, back up a little bit, please.  Right there.
 5             "Did you contract out any of the work,"
 6   Interrogatory 314.7 says, "you were to perform on the
 7   subject property to another person or entity?"
 8             And you say, "Yeah.  We did all -- contracted
 9   nearly all of the work, but as applicable in this
10   action, CMB responds," and you identify two
11   subcontractors.
12             Do you see that?
13             The first one is Radix Fire Protection, and
14   then the second one is A Quality Roofing.
15        A.   Um-hum.
16        Q.   Is that "yes"?
17        A.   Yes.
18        Q.   Who apparently performed fabrication and
19   installation of the roof?
20        A.   Yes.
21        Q.   See that?
22        A.   Um-hum.
23        Q.   "Yes"?
24        A.   Yes.
25        Q.   Okay.
```

DAVID LEE                                         September 28, 2020

 1      A.    No.

 2      Q.    Does it have any properties in its inventory?

 3      A.    No.

 4      Q.    If CMB is still active, has no properties in

 5   its inventory and no properties for sale, what is CMB

 6   doing to be active?  Or is it just the license is

 7   active?

 8      A.    It's -- honestly, it's to be -- we're just --

 9   we were going to dissolve it years ago, but because of

10   the whole litigation, we can't close it out.

11      Q.    I had a whole series of insurance questions,

12   and I respect that you're not the Person Most

13   Knowledgeable, but let me see if I can get you to at

14   least answer a couple of them.

15      A.    Sure.

16      Q.    I understand you've been in a coverage dispute

17   with your carrier.  Now, I'm not allowed to ask you the

18   specifics of that coverage dispute except to the extent

19   that it's public record.

20      A.    Okay.

21      Q.    So if there's a reservation of rights letter or

22   something like that, I don't want you to talk about

23   that.

24      A.    I probably couldn't answer it, to be honest.

25            MS. SAGHEB:  Right.  And I want to give you

DAVID LEE                                          September 28, 2020

```
 1              Do you see that?

 2       A.    Yes.

 3       Q.    Is it your understanding that that was supposed

 4  to be done?

 5       A.    Yes.

 6       Q.    And the next one is, "Design, engineering, shop

 7  drawing, and approval of plan check, including permit

 8  fee."

 9       A.    Yes.

10       Q.    What does that mean?

11       A.    That they were going to pay for the permits to

12  get the plans approved.

13       Q.    Okay.

14              And what about the design?  Were they going to

15  provide the design?

16       A.    Yes.

17       Q.    And were they going to provide the engineering?

18       A.    Absolutely.

19       Q.    And they were going to do the shop drawings?

20       A.    Yes.

21       Q.    And they were going to take the drawings to

22  Plan Check and get them approved by Plan Check?

23       A.    Yes.

24       Q.    And then they were going to pay the permit fee?

25       A.    Yes.
```

DAVID LEE                                    September 28, 2020

```
1        A.    We probably have them somewhere, or they have

2   them at the City, but I'm just -- I'm not exactly sure

3   if these are the approved plans, because they should

4   have stamps on them.  And, actually, they wouldn't have

5   the correction notes either.

6        Q.    Have you provided a set of approved plans to be

7   produced in discovery?

8        A.    I don't think I have a set of approved plans

9   anymore.

10       Q.    Okay.

11       A.    I don't -- I don't keep them.

12       Q.    You've been asked to provide your entire job

13  file.  Have you provided the entire job file in

14  discovery?

15       A.    I have.

16       Q.    Okay.

17       A.    I can't recollect, but this definitely does not

18  look like the approved set of plans.

19       Q.    Okay.

20       A.    This might have been the only set we had, other

21  than going to the City.

22            (Exhibit 7 was marked for identification.)

23       Q.    (By Mr. Booth)  Fair enough.  Turn to

24  Exhibit 7.

25            Sir, do you recognize this document?
```

DAVID LEE                                    September 28, 2020

```
 1        A.   Yes.

 2             MR. BOOTH:  Scroll down.

 3        Q.   (By Mr. Booth)  Would you describe this

 4   document for me, please.

 5        A.   This is a proposal for -- proposal for work

 6   from Radix.

 7        Q.   Was this proposal accepted?

 8        A.   Yes.

 9        Q.   Was it ever reduced to a contract?

10        A.   Was it ever reduced to a contract?

11             MS. SAGHEB:  Calls for -- I'm going to object

12   in that it calls for a legal conclusion.

13        Q.   (By Mr. Booth)  Did you ever sign this

14   proposal -- strike that.  I'll just start over.

15        Did you ever sign any document approving the

16   work that was proposed by Radix --

17        A.   Yes.

18        Q.   -- in this proposal?

19        A.   Yes.

20        Q.   The copy I have is not signed.  Would you take

21   a look at this, and -- at Page 2, 3, and 4, and let me

22   know if this is a full and complete copy of the

23   agreement you entered into with Radix.

24        A.   I mean, I can't be a hundred percent clear if

25   this is the one, if there was any strikeouts or any
```

DAVID LEE                                    September 28, 2020

1    revisions done, but --

2         Q.   Okay.

3              Let's go back to Page 2.

4         A.   Um-hum.

5         Q.   Is that "yes"?

6         A.   Yes.  Sorry.

7         Q.   We'll go to the top of the page, please.  It

8    says, "We will provide the following."

9              Do you see that?

10        A.   Yes.

11        Q.   Is it your understanding that this indicates

12   that Radix would be providing -- I'm sorry?

13        A.   I have a small computer.  I can't really read

14   that.

15        Q.   Okay.

16        A.   Thank you.

17        Q.   Is it your understanding that the bullet points

18   subsequent to the phrase, "we will provide the

19   following," helps define the scope of work that Radix

20   was undertaking at the house?

21        A.   Yes.

22        Q.   Okay.

23             So it says that the plumber was to provide

24   point of connection to building within one foot of our

25   fire sprinkler risers.

DAVID LEE                                      September 28, 2020

```
 1      Q.    Okay.
 2            The next one, "Fabrication and installation of
 3   automatic fire sprinkler system to protect entire house
 4   per" -- remember I asked you if you know what the NFPA
 5   was?
 6      A.    Yes.
 7      Q.    -- "per NFPA 13D."
 8            What does that mean to you sir?
 9      A.    That must -- to me?
10            MR. MORRIS:  Mr. Lee, do not speculate.  If you
11   don't know, you don't know.
12            THE WITNESS:  I don't know exactly.
13      Q.    (By Mr. Booth)  You don't know the plain
14   meaning of the words?  What does it mean to you when
15   someone's supposed to fabricate and install an automatic
16   fire sprinkler system to protect the entire house?
17      A.    To me, that means that they're supposed to
18   install.  I don't know specifically to the question
19   about the NFPA, because I don't know what that is, but
20   if you want to rephrase that without that, maybe I can
21   answer that.
22      Q.    I think I did in my last question.  I dropped
23   "per NFPA 13D" for that particular reason.
24      A.    Okay.
25      Q.    Did you understand that Radix was going to
```

1    build the entire sprinkler system themselves?

2        A.    Absolutely.

3        Q.    And was it your understanding that they were

4    going to install the entire automatic fire sprinkler

5    system themselves?

6        A.    Yes.  That's what we hired them to do.

7        Q.    Okay.

8              Take a look at the other six bullet points real

9    briefly, and let me know if those six bullet points also

10   reflect your understanding of what Radix was supposed to

11   do at the house.

12       A.    Yes.

13       Q.    Okay.

14             And you see under "Inclusions," there's that

15   pesky NFPA again, 13D, which you don't know what that

16   means.

17       A.    I don't.

18       Q.    Fair enough.

19             Sir, as the Person Most Knowledgeable regarding

20   the construction of the house for CMB, can you tell me

21   what stage construction was in when the fire sprinklers

22   were installed?  Specifically, was there any drywall up

23   yet?

24       A.    No.

25       Q.    Was the house completely framed?

DAVID LEE                                    September 28, 2020

1       A.    Yes.

2       Q.    Was the roof on?

3       A.    Yes.

4       Q.    Okay.

5             So at the time Radix installed the fire

6   sprinkler system, they would have known whether or not

7   there was any attic space; is that correct?

8       A.    Yes.

9             MS. BAZAZ:  Objection.  Calls for speculation.

10  Belated objection, because I had it on mute.

11            MR. BOOTH:  I don't object to you making that

12  objection, Gina.

13            THE WITNESS:  Okay.

14      Q.    (By Mr. Booth)  Did you personally observe any

15  of the aspects of the fire sprinkler system's

16  installation?

17      A.    Yes.

18      Q.    What did you observe?

19      A.    I observed almost all of it.

20      Q.    How often were you at the house during the

21  construction process?

22      A.    Every day.  All day.

23            MR. BOOTH:  Okay.

24            Let's go ahead and put up our Exhibit 9.

25            (Exhibit 9 was marked for identification.)

DAVID LEE                                    September 28, 2020

```
 1        Q.   (By Mr. Booth)  Now, sir, I'm going to
 2   represent to you that this was a picture that was
 3   provided by your counsel as part of the discovery in
 4   this case, and it is a picture of the exterior of the
 5   house during construction, is it not?
 6        A.   Yes, it is.
 7        Q.   And as we look at the opening almost directly
 8   in the middle of the picture, is that the front door?
 9        A.   Yes, that's the front door.
10        Q.   And you see the five -- what do they call
11   them -- clerestory lights, c-e-l-e-s-t-o-r-y [sic] --
12   I've never been sure how to pronounce that -- lights
13   that are just under the overhang?
14        A.   Um-hum.
15        Q.   I said lights -- I meant windows just under the
16   overhang.
17             Now, was that design feature, the windows under
18   the overhang, was that part of the original design of
19   the house, or was that a change that was done later?
20        A.   No.  That was part of the original approved
21   design.
22        Q.   Okay.
23             And so when Radix designed and installed their
24   fire sprinkler system, did they have the approved plans
25   to show that this was the design of the house?
```

DAVID LEE                                          September 28, 2020

 1    door where those windows are.

 2            Do you see that?

 3       A.    The same windows you were referring to before?

 4       Q.    Indeed.

 5       A.    Okay.

 6       Q.    And you see how the light's hitting them

 7    directly?

 8       A.    The sunlight?

 9       Q.    The sunlight.

10       A.    Yes.

11       Q.    Okay.

12            And then let's turn back to Exhibit 8.  That

13    would be 9 -- let's go to 8.

14            (Exhibit 8 was marked for identification.)

15       Q.    (By Mr. Booth)  Sir, how would you describe

16    this picture?

17       A.    It looks like we're painting.

18       Q.    Okay.

19            And how would you describe the location where

20    you're painting?

21       A.    The location where we're painting?  On the

22    upper floor.

23       Q.    Okay.

24            Remember the pictures I just showed you that

25    showed the exterior of those clerestory windows?

DAVID LEE                                                    September 28, 2020

1              MS. BAZAZ:  Objection.  Calls for speculation.

2        Q.  (By Mr. Booth)  You can answer.

3        A.   Yes.

4        Q.   And how do you know that Radix had the approved

5    plans for the design of the house before they installed

6    the sprinkler system?

7        A.   Because we would have had the plans approved

8    before we even started seeking out any subcontractors.

9    So we would have had the approved plans well before

10   hiring any subcontractors.

11       Q.   And did you give subcontractors a copy of the

12   approved plans so that they could formulate their bid?

13       A.   Yes.

14       Q.   And was that the general custom and practice of

15   CMB, to give a copy of the approved plans to all

16   subcontractors bidding on the process?

17       A.   Yes.

18       Q.   Okay.

19            MR. BOOTH:  Let's go to Exhibit 10.

20            (Exhibit 10 was marked for identification.)

21       Q.   (By Mr. Booth)  Sir, this is another picture

22   that was provided by your side in discovery.  See the

23   house, 950 El Paso.  That's the house; right?

24       A.   Yes, it is.

25       Q.   I'm more interested in the area above the front

DAVID LEE                                    September 28, 2020

```
 1        A.   I don't understand the question.  Can you --
 2        Q.   Did you have a point person that you dealt
 3   with?
 4        A.   On the job site?
 5        Q.   Yes.
 6        A.   I don't recall, but whoever was there.  I don't
 7   recall the individual, but --
 8        Q.   Do you recall how many people were there from
 9   Radix at a given time?
10        A.   I don't recall.
11        Q.   Now, at the time that the fire sprinkler system
12   was being installed, there was no drywall in place;
13   correct?
14        A.   There was none.
15        Q.   And when you say the roof was in, what does
16   that mean?
17        A.   The framing, the roof was done, the under --
18   the entire roof was done.  It was complete a hundred
19   percent.
20        Q.   Including the insulation?  Insulation?
21        A.   Not the insulation.
22        Q.   Okay.
23             So the --
24             MR. BOOTH:  Gina, I just want to hear you say
25   installation of insulation five times fast.
```

DAVID LEE                                      September 28, 2020

1              MS. BAZAZ:  Yes.  Good luck with that.

2        Q.   (By Ms. Bazaz)  So the roof was in, but none of

3   the insulation was in?

4        A.   None of the insulation was in.

5        Q.   What type of roof is on this property?  Is it

6   black shingles?

7        A.   It is composite shingles.  The color is dark.

8        Q.   When you say "the color is dark," how would you

9   identify it?

10       A.   Dark gray or black charcoal.

11       Q.   Was that specific type of roof, the composite

12   shingle, the dark gray or black, called for in the

13   original plans?

14       A.   I'm not sure.

15             MR. BOOTH:  Objection.  Lacks foundation.

16       Q.   (By Ms. Bazaz)  If you know.

17       A.   I don't know.

18       Q.   So in terms of sequencing with respect to the

19   fire sprinkler system, there's no drywall in place,

20   there's no insulation in place, the roof is there, so

21   Radix comes in and installs the fire sprinkler which

22   goes through a series of inspections; correct?

23       A.   Yes.

24       Q.   And at some point in time, the insulation for

25   the roof is installed; correct?

DAVID LEE                                          September 28, 2020

1              And then I think the second was defer to our

2     insurance company, and that was probably pretty much it.

3         Q.   Did you ever visit Mr. Conway's home to do any

4     type of a walk-through or an inspection?

5         A.   We did not.

6              MR. BOOTH:   Vague as to time.   You mean after

7     the incident?

8         Q.   (By Ms. Bazaz)   After the incident.

9         A.   We did not.

10        Q.   When you say "we did not," CMB did not?

11        A.   CMB did not.

12        Q.   There's no attic space, correct, at this

13    property?

14        A.   There's no attic space.

15        Q.   So what you, in essence, have is the roof,

16    insulation, and then the ceiling?

17        A.   Yes.   You're correct.

18        Q.   And then drywall?

19        A.   And then drywall.

20             MR. BOOTH:   Ceiling is a drywall.

21             THE WITNESS:   That's what I interpret it as.

22        Q.   (By Ms. Bazaz)   Did you ever have conversations

23    with anyone from Radix after you received notice of the

24    loss?

25        A.   I don't -- I don't recall.   I don't believe so.

DAVID LEE                                    September 28, 2020

1      A.    Yes.

2      Q.    And the ordinances that relate to their trade;

3  correct?

4      A.    Correct.

5      Q.    And given that, would it be fair to say that

6  CMB defers to its specialists in deciding means and

7  methods?

8      A.    Of course, because I have no knowledge of any

9  of that.

10      Q.    And would it be fair to say that with respect

11  to the property at issue in this litigation, you defer

12  to your specialists; correct?

13      A.    Absolutely.

14      Q.    And specific to the fire suppression system at

15  this property, would it be fair to say that you defer to

16  Radix?

17      A.    I hired them as specialists, because I know

18  nothing about that specific construction industry.

19      Q.    And no one at CMB does; correct?

20      A.    No one does.

21      Q.    Did you have any input on the design of the

22  fire sprinkler suppression system?

23      A.    Zero.

24      Q.    Did -- you previously testified that you

25  provided the approved plans and specifications to

DAVID LEE                                    September 28, 2020

1              MS. BAZAZ:  I have nothing further, though.

2              MR. KALUNIAN:  I don't have anything further at

3     this time.

4              MR. BOOTH:  Gina, would you propose a

5     stipulation, or would you prefer I do it?

6              MS. BAZAZ:  We're not doing a stip.  We're

7     going per Code.

8              MR. BOOTH:  Oh.  That's right.

9              MS. BAZAZ:  We're done with the stips.  I love

10    the stips.

11             THE STENOGRAPHER:  Okay.

12             Mr. Kalunian, would you like to order a copy of

13    today's transcript?

14             MS. BAZAZ:  I want a copy.

15             MR. KALUNIAN:  I would like a copy as well.

16             THE WITNESS:  I don't want a copy.

17             MS. SAGHEB:  Yes, you do.  Your attorneys want

18    a copy.

19             (Whereupon, the deposition of PMK FOR CMB

20    DEVELOPERS, INC., DAVID LEE, concluded at 4:09 p.m.)

21

22

23

24

25

DAVID LEE                                    September 28, 2020

```
 1              ::: DECLARATION OF WITNESS :::

 2

 3         I hereby declare I am the deponent in the
    within matter; that I have read the foregoing deposition
 4  and know the contents thereof, and I declare that the
    same is true of my knowledge except as to the matters
 5  which are therein stated upon my information or belief,
    and as to those matters, I believe them to be true.
 6         I declare under the penalties of perjury of the
    State of California that the foregoing is true and
 7  correct.

 8

         Executed this _____ day of _____,
 9
    20___, at _____, _____.
10          (City)                              (State)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

DAVID LEE                                    September 28, 2020

1                ::: CERTIFICATE OF REPORTER :::

2

3            I, HEATHER J. BAUTISTA, a Certified Shorthand
     Reporter, holding a valid and current license issued by
4    the State of California, CSR No. 11600, duly authorized
     to administer oaths, do hereby certify:
5            That the witness in the foregoing deposition
     was administered an oath to testify to the whole truth
6    in the within-entitled cause.
             That said deposition was taken down by me in
7    stenographic shorthand at the time and place therein
     stated and thereafter transcribed into typewriting, by
8    computer, under my direction and supervision.
             Should the signature of the witness not be
9    affixed to the deposition, the witness shall not have
     availed himself/herself of the opportunity to sign or
10   the signature has been waived.
             I further certify that I am neither counsel
11   for, nor related to, any party in the foregoing
     deposition and caption named, nor in any way interested
12   in the outcome thereof.

13

14

15

16   Dated:     October 17, 2020

17

18

19   _____
     HEATHER J. BAUTISTA, CSR, CRR, RPR, CLR
20   California Certified Shorthand Reporter 11600
     Texas Certified Shorthand Reporter 10725
21   Certified Realtime Reporter 852251
     Registered Professional Reporter
22   Certified LiveNote Reporter
     Realtime Systems Administrator
23

24

25



Save Lives. Save Property.

**Date:** April 5, 2016                              **BID NUMBER:** LA153372

CMB Developers
1080 Everett Place
Los Angeles, CA 90026

**RE**:  **PROPOSAL**

**Job Location:**  950 El Paso
950 El Paso
Los Angeles 90042

Thank you for your opportunity to provide our service.

We hereby submit our proposal for new automatic fire sprinkler system at the above mentioned project. Our proposal is based on the drawings provided at the time of bidding (Dated ).

Our price for the works describe in this proposal is:

> **BASE BID, Lump sum**              **$5,800.00**

Further information relating to our offer including Scope of Work, Inclusions, Exclusions and Clarifications can be found within this proposal.

Should you have any questions or require further clarification, please do not hesitate to contact the undersigned.

Best Regards,
RADIX Fire Protection, Inc.

Johnny Giles
Business Development

**RADIX** Fire **Protection, Inc. | Construction Division**
1769 E. 23rd Street
Los Angeles, CA 90058
Tel. +1 213 765 0384 Fax +1 213 765-3384
License #: 823302 C-10/C-16
www.radixfire.com

**Scope of Work:**

H. Bautista, CSR #11600
PMK - CMB
09/28/2020
EXHIBIT 7

**BID NUMBER:** LA153372
**Job name:** 950 El Paso

We will provide the following:

- Plumber to provide point of connection to building within 1 foot of our fire sprinkler riser.
- Design, Engineering, shop drawing, and approvals of plan check including Permit Fee.
- Fabrication and installation of automatic fire sprinkler system to protect entire house per NFPA 13D.
- Install fire sprinkler riser assembly with flow switch, gauge, drain, and single check valve.
- Supply one (1) exterior 6" alarm bell with bell cage and sign. (To be installed by Electrician)
- Finish ceiling heads to be conceal type with white finish.
- Perform all required testing by fire department.
- Pipe to be CPVC in concealed spaces and steel pipe in exposed areas.
- Perform all required testing by fire department.

## Inclusions:

1) Proposal is based on NFPA-13D 2013 edition and city having jurisdiction.
2) Radix Fire Protection, Inc. 1 year warranty. Void if work is modified by another vendor after completion date.
3) As-Built Drawing
4) Sales Tax and Freight
5) Work to be completed during normal working hours (M-F 7am to 4pm)

## Exclusions:

1) Any electrical work
2) Fire Alarm system Work
3) Fire Alarm Monitoring
4) Any painting and patch work.
5) California Title-19 testing & inspection
6) Fire Extinguisher/Cabinet (We can provide as extra upon quantity & type)
7) Overtime/ Off hours
8) Work outside the scope of work including underground work.
9) Backflow devices and pressure relief or regulating valves due to high pressure

## Clarifications/Notes:

1) Customer will provide electric power to perform our work.
2) This bid is good for 30 days from the date issued. Written authorization must be received in our office prior to any work.

## CUSTOMER ACCEPTANCE:

In accepting this Agreement, Customer agrees to the terms and conditions contained herein including those on the following page(s) of this Agreement and any attachments or riders attached hereto that contain additional terms and conditions. It is understood that these terms and conditions shall prevail over any variation in terms and conditions on any purchase order or other document that the Customer may issue. Any changes in the system requested by the Customer after the execution of this Agreement shall be paid for by the Customer and such changes shall be authorized in writing. ATTENTION IS DIRECTED TO THE LIMITATION OF LIABILITY, WARRANTY, INDEMNITY AND OTHER CONDITIONS CONTAINED IN THIS AGREEMENT.

_____    _____    _____
            Signature                                    Print Name & Title                              Date

**BID NUMBER:** LA153372
**Job name:** 950 El Paso

# TERMS AND CONDITIONS

This quotation and any exhibits and attachments hereto (collectively, "Agreement") and any information contained herein, is the property of Radix Fire Protection, Inc. ("Company") and shall constitute proprietary and confidential information unless given to a public entity and required by law to be public information. The party to whom this quotation is addressed ("Customer") acknowledges the confidential nature of this Agreement and agrees to take all commercially reasonable and necessary precautions to ensure the confidential treatment of this Agreement and all information contained herein. This Agreement will not be used, copied, reproduced, disclosed or otherwise disseminated or made available, directly or indirectly, to any third party for any purpose whatsoever without the prior written consent of Company. The parties agree to be bound by the following terms and conditions.

1.  **Quotations and Acceptance.** The quotation is based solely on the bid documents, which consist of the project drawings, specifications and/or instructions of the Customer only modified by written agreement or Company objection. Significant deviations between the actual conditions and circumstances of the work and those specified in the bid documents shall be cause for an adjustment in work scope, price and time allowed for performance. Written quotations shall be valid for no more than thirty (30) days from the date of issue, unless specifically stated otherwise herein. Customer may accept the quotation by signing and returning a copy to Company or by returning Customer's own written instrument or order expressly acknowledging the quotation and terms set forth herein, provided, however, Company hereby gives notice of its objection to any different or additional terms or conditions contained or referenced in Customer's order, which will be of no force or effect except as may be expressly agreed to by Company in writing. It is the intent of the parties that these Terms and Conditions of Sale shall govern the sale of goods delivered and services performed. Upon acceptance, this Agreement constitutes the entire understanding between the parties respecting the goods or services delineated herein and supersede all prior oral or written understandings or representations relating to such goods or services. This Agreement may not be discharged, extended, amended or modified in any way except by a written instrument signed by a duly authorized representative of each party. Company assumes that the Subcontract Agreement offered will contain terms that are substantially similar to the AIA provisions that are in accordance with the provisions of the prime contract, including any supplements. Upon award, Company assumes that contract provisions will be reviewed and negotiated in good faith to reach a mutual acceptance of both parties.

2.  **Payment.** Absent a contrary provision herein, Customer will pay Company as follows:

    ☐ **Payment Schedule:** Customer agrees to make payment of $_____ *upon acceptance of proposal*, second payment of $_____ *upon rough installation* and final balance payment upon *final installation*. If Customer fails to make any payment schedule, Company reserves the right to stop work and pursue all remedies to collect.

    ☐ **C.O.D.:** Full amount of invoice is due upon rendering of our service.

    ☐ **Time & Material:** Work performed on a time and material basis shall be at the then-prevailing Company rate for material, labor, and related items, in effect at the time supplied under this Agreement. Further, in the event that this Agreement is executed on a "price not to exceed" basis, the price to Customer shall be lesser of: 1) the limit price quoted, or 2) the actual cumulative billing based on the aforementioned prevailing rate. Unless otherwise agreed in writing between parties, Customer shall pay Company within seven (7) days of the date of Time & Material invoice submission. Customer agrees to pay all taxes, permits, and other charges, including but not limited to state and local sales and excise taxes, however designated, levied or based on the service charges pursuant to this Agreement. Company shall have right, at Company's sole discretion, to stop performing any Services if Customer fails to make any payment when due, until the account is current. The Customers failure to make payment when due is a material breach of this Agreement.

    ☒ **Monthly progress payments:** Payment will be on a net thirty (30) days basis from date of invoice for materials delivered (or stored at an off-site storage facility) and services performed, less any retained reserve which will be mutually agreed upon in writing by the parties. The aggregate amount of any such retained reserves shall be paid by Customer to Company within thirty (30) days after the date of substantial completion. If Company provides a Certificate of Substantial Completion, such certificate shall conclusively establish such date.

    All invoices due and payable to Company, less any applicable retained reserve, shall accrue interest at a compounded per annum rate not to exceed 1½% per month (18% per annum) or the maximum rate permitted by law. Acceptance and endorsement by Company of an instrument for less than the full amount which Company claims to be due shall not be deemed to be an admission of payment in full and any conditions to the contrary which are noted on such an instrument shall not be binding on Company. If Customer does not pay Company, through no fault of Company, within seven (7) days from the time payment was due, Company may, without prejudice to any other remedy it may have, upon seven (7) additional days' written notice to Customer, stop its work until payment of the amount owing has been received and the contract sum shall be equitably adjusted for reasonable costs of shutdown, delay and startup or in the alternative Company may terminate this contract for material breach and all monies due Company for services performed and materials delivered shall be paid upon demand. Company shall be entitled to recover from Customer all costs for collection, including reasonable attorneys' and professionals' fees. To the extent payments are received and as required by law, and upon Customer's request, Company will furnish mechanics lien waivers as the work progresses. Company reserves a security interest in any goods sold to the extent of the invoiced amount to secure payment of Customer's obligation. In event of payment default, Company may repossess such goods and a copy of the invoice may be filed with appropriate authorities as a financing statement to event or perfect Company's security interest in the goods. At Company's request, Customer will execute any necessary instrument to perfect Company's security interest.

3.  **Price and Taxes.** The price for the goods and services hereunder are those shown on the face of this Agreement. The price of this Agreement does not include sales, use, excise, duties or other similar taxes, unless otherwise expressly provided herein. Any taxes (other than taxes due on Company's net income) that are payable hereunder shall be the responsibility of Customer. If applicable, Customer shall provide Company a copy of any appropriate tax exemption certificate for the state(s) into which the goods are to be shipped.

4.  **Changes and Claims.** All materials and labor furnished hereunder shall be in accordance with shop drawings submitted by Company and approved by Customer. Any changes in the work as set forth in approved shop drawings, or from the scope of work as described herein, will require a written change order submitted to Company by Customer. An equitable adjustment will be made in the contract price or delivery dates or both, and this Agreement will be modified accordingly in writing. The cost or credit to Customer for performance of such change order shall be determined by mutual written agreement prior to the commencement of any work under such change order. Customer shall notify Company promptly in writing of any circumstances arising from the performance of the work herein described which reasonably may be anticipated to result in a claim or back charge to Company. Upon Company's receipt of such notification, Company shall have five (5) working days in which to remedy such circumstances and to avoid the imposition of such claim or back charge. Company will not be liable for any claim or back charge where Company has not been notified in the manner as set forth above.

**BID NUMBER:** LA153372
**Job name:** 950 El Paso

5.  **Access and Overtime.** This Agreement is based upon the use of straight time labor only during regular working hours (8:00 a.m. to 5:00 p.m., Monday through Friday, excluding Company's holidays). If Customer requests Company to perform any work outside of regular working hours, overtime and other additional expense occasioned thereby will be charged to and paid by Customer. If Company's work is to be performed on the project site, Customer will afford unrestricted access to Company and its employees and agents to all work areas.

6.  **Damage or Loss to Equipment.** In the case of equipment not to be installed by or under supervision of Company, Company shall not be liable for damage to or loss of equipment after delivery of such equipment to the point of shipment. In the case of equipment to be installed by or under supervision of Company, Company shall not be liable for damage or loss after delivery by the carrier to the site of installation; if thereafter, pending installation or completion of installation or full performance by Company, any such equipment is damaged or destroyed by any cause whatsoever, other than by the fault of Company, Customer agrees to promptly pay or reimburse Company an amount equal to the damage or loss which Company incurs as a result thereof, in addition to or apart from, any and all other sums due or to become due hereunder.

7.  **Delays.** Customer shall prepare all work areas so as to be acceptable for Company's work required hereunder. Customer acknowledges that the contract sum is based upon Company being able to perform the work in an orderly and sequential manner, as Company so determines. If Company's performance is delayed, interfered with, suspended, or otherwise interrupted, in whole or in part, by Customer, other contractors on the project site, or by any other third party or by any act within the power and/or duty of Customer to control, then Customer agrees that it will be liable to Company for all increased costs and damages which Company incurs as a result thereof. Furthermore, if Company is delayed at any time in the progress of the work by any act or neglect of Customer, or by any separate contractor employed by Customer, or by changes ordered in the work or by labor disputes, fire, delay in transportation, adverse weather conditions, casualties, or any other causes beyond Company's control, then the time for completion of the work shall be extended for a period equal to the time lost by reason of such delay.

8.  **Warranty.** Company warrants to Customer that all tangible articles manufactured by Company will be free of defects in workmanship and material and that the work performed will be of good quality and will conform to the requirements of the bid documents. If the article is installed by Company, Company's sole obligation under this warranty shall be to provide, without charge, parts and labor necessary to remedy defects which appear within twelve (12) months from the date of beneficial use or occupancy, as applicable. If Company provides a Certificate of Substantial Completion, such certificate shall conclusively establish such date. If article is not installed by Company, the warranty period shall be within twelve (12) months of shipment of said article. Warranty claim must be made to Company in writing within such twelve (12) month period. All transportation charges incurred in connection with the warranty for equipment not installed by Company shall be borne by Customer. Company warrants that for equipment furnished and or installed, but not manufactured by Company, Company will extend the same warranty terms and conditions which Company receives from the manufacturer of said equipment.

    This warranty is the sole and exclusive warranty given with respect to any articles delivered or services performed by Company. THE WARRANTIES SET FORTH ABOVE ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES EXPRESS OR IMPLIED (EXCEPT WARRANTIES OF TITLE), INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. This warranty is subject to proper installation of the articles (if installation is not performed by Company or authorized subcontractors of the Company) and maintenance and storage of the articles in accordance with the specifications and directions supplied by Company. This warranty does not apply to any defect, malfunction or failure caused by repairs made by other than or without the consent of Company or the article has been subject to abuse, misuse, neglect, tampering, accident or damage by circumstances beyond Company's control, including without limitation, acts of God, war, acts of government, corrosion, power fluctuations, freeze-ups, labor disputes, differences with workmen, riots, explosions, vandalism, or malicious mischief, nor to defective associated equipment or use of the articles with equipment for which they were not sold. All of Company's obligations under this warranty will immediately terminate and be of no further force or effect if all or any part of the purchase price (including any installment payment) with respect to any article covered by this warranty is not paid to Company when due. If cause of defect is found not to be Company's responsibility, standard rates for repair or replacement and labor shall apply.

9.  **Limitation of Liability.** In no event will Company's total aggregate liability in warranty or contract exceed the contract price paid for the specific product or service that gives rise to the claim excluding third party claims for personal injury, death or property damage or as may be required by law. IN NO EVENT SHALL COMPANY BE LIABLE FOR ANY LOST PROFITS, LOSS OF USE, LOSS OF GOODWILL, BUSINESS INTERRUPTION OR ANY OTHER SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY KIND EVEN IF COMPANY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

10. **Laws and Permits.** Company shall comply with all applicable federal, state, and local laws and regulation and shall obtain all temporary licenses and permits required for the prosecution of the work. Licenses and permits of a permanent nature shall be procured and paid for by the Customer. This contract shall be interpreted and governed under and in accordance with the laws of the jurisdiction in which the goods are delivered or services are performed without regard to its choice of law provisions.

11. **Disputes.** Any controversy or claim arising out of or relating to this Contract, or the breach thereof, shall be settled by good faith consultation and negotiation. If those attempts fail, either party shall provide written notice within thirty (30) days to the other to mutually agree on an arbitration process. If a process is not agreed upon within thirty (30) days, final and binding arbitration in accordance with the then current Construction Industry Arbitration Rules of the American Arbitration Association shall commence and judgment upon the award rendered may be entered in any court having jurisdiction thereof. The arbitration shall be held in the federal, state or municipal courts serving the county in which the project is located unless the parties mutually agree otherwise. The prevailing party shall recover all reasonable legal costs and attorney's fees incurred as a result, which shall be promptly paid by the non-prevailing party. Any dispute or demand for arbitration must be commenced within one (1) year after the cause of action has accrued. Nothing herein shall limit any rights Company may have under construction mechanic or materialmen lien laws. Company shall have the right to suspend affected services pending resolution of disputes.

12. **Insurance.** The parties shall each maintain insurance coverage including without limitation, Workers' Compensation and Employer's Liability at statutory limits, Automobile Liability covering all owned, hired and other non-owned vehicles, and Commercial General Liability covering public liability and property damage with limits generally required for its respective industry with not less than $1,000,000 minimum coverage per occurrence. Such insurance shall be with reputable and financially responsible carriers authorized to transact business in the state in which the project and services are being performed. No credit will be given or premium paid by Company for insurance afforded by others.

13. **Clean Up.** Company agrees to keep the job site clean of debris arising out of its operations. Customer shall not back charge Company for any costs or expenses for clean up or otherwise without prior written notice and Company's written consent.

14. **Severability.** The invalidity or unenforceability of any provision herein shall in no way affect the validity or enforceability of any other provision.

# Exhibit 7



# Exhibit 7

232330.1

1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3

4    CMB DEVELOPERS, INC., a          )
     California corporation,          )
5                                     )
                                      )
6         Plaintiff,                  )
                                      )
7         -vs-                        ) CASE NO.
                                      )  2:19-cv-09973 SVW
8    ASSOCIATED INDUSTRIES            )  (RAOx)
     INSURANCE COMPANY, INC.,         )
9    AMTRUST FINANCIAL SERVICES,      )
     INC. AMTRUST NORTH AMERICA,      )
10   INC., a Delaware corporation,    )    PAGES 1  - 54
     and DOES 1 through               )
11   100, inclusive,                  )
                                      )
12        Defendants.                 )
     _____ )
13

14

15      VIDEOCONFERENCE DEPOSITION OF MICHAEL MITCHELL

16              Monday, June 7, 2021

17

18

19

20

21

22   ESQUIRE DEPOSITION SOLUTIONS, LLC
     (310) 598-4200

23

24   REPORTED BY:        JENNIFER PORTO, CSR NO. 14098

25   FILE NO.:           J7147072



1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3

4    CMB DEVELOPERS, INC., a         )
     California corporation,        )
5                                    )
                                     )
6        Plaintiff,                 )
                                     )
7         -vs-                       ) CASE NO.
                                     )  2:19-cv-09973 SVW
8    ASSOCIATED INDUSTRIES           )   (RAOx)
     INSURANCE COMPANY, INC.,       )
9    AMTRUST FINANCIAL SERVICES,     )
     INC. AMTRUST NORTH AMERICA,    )
10   INC., a Delaware corporation,   )
     and DOES 1 through              )
11   100, inclusive,                 )
                                     )
12       Defendants.                )
     _____    )

13

14

15

16

17

18

19

20

21

22       VIDEOCONFERENCE DEPOSITION OF MICHAEL MITCHELL

23   commencing at 9:45 a.m., on Monday, June 7, 2021, before

24   Jennifer Porto, Certified Shorthand Reporter No. 14098,

25   in and for the State of California.



MICHAEL MITCHELL                                                    June 07, 2021
CMB DEVELOPERS vs ASSOCIATED INDUSTRIES INSURANCE                            3

```
 1          A P P E A R A N C E S

 2

 3   APPEARING ON BEHALF OF THE PLAINTIFF:

 4   CHIAO & WU, LLP
     BY:  SOHAILA SAGHEB, ATTORNEY AT LAW
 5   600 SOUTH LAKE AVENUE
     SUITE 405
 6   PASADENA, CALIFORNIA 91105
     (626) 698-0088
 7   ssagheb@chiaowu.com

 8

 9

10   APPEARING ON BEHALF OF THE DEFENDANTS:

11   WOOLLS PEER DOLLINGER & SCHER, A PROFESSIONAL CORPORATION
     BY:  KATY A. NELSON, ATTORNEY AT LAW
12   ONE WILSHIRE BUILDING
     624 SOUTH GRAND AVENUE
13   22ND FLOOR
     LOS ANGELES, CALIFORNIA 90017
14   (213) 629-1600
     FAX: (213) 629-1660
15   knelson@wpdslaw.com

16

17

18

19

20   ALSO PRESENT:
     (None.)
21

22   VIDEOGRAPHER:
     (None.)
23

24   INTERPRETER:
     (None.)
25
```



MICHAEL MITCHELL                                          June 07, 2021
CMB DEVELOPERS vs ASSOCIATED INDUSTRIES INSURANCE                      4

```
 1                          I N D E X

 2   WITNESS:  MICHAEL MITCHELL

 3   EXAMINATION                                         PAGE

 4   By Ms. Nelson                                         6

 5   By Ms. Sagheb                                        41

 6

 7                       E X H I B I T S

 8   NUMBER               DESCRIPTION                    PAGE

 9   Exhibit 16      Subpoena to Testify at a            10
                     Deposition in a Civil Action
10

11   Exhibit 17      Commercial Insurance               14
                     Application
12

13   Exhibit 18      July 28, 2016 Quote                26

14   Exhibit 19      AES GL 222A 0517,                   31
                     Exclusion - Designated
15                   Construction or Contractor
                     Operations
16                   Policy Number AES104071600

17   Exhibit 20      (Not Marked for the Record)

18   Exhibit 21      Artisan Contractors General        33
                     Liability Program Application
19

20   Exhibit 22      E-mail Subject: "Conway v.         36
                     Associated Industries Insurance
21                   and AmTrust, et al."

22   Exhibit 23      AES GL 222A 0517,                   50
                     Exclusion - Designated
23                   Construction or Contractor
                     Operations
24                   Policy Number AES104071602

25
```



MICHAEL MITCHELL                                                  June 07, 2021
CMB DEVELOPERS vs ASSOCIATED INDUSTRIES INSURANCE                         5

1    INSTRUCTIONS NOT TO ANSWER:

2        PAGE        LINE
             (None.)
3

4

5

6

7

8

9

10   INFORMATION REQUESTED:

11       PAGE        LINE
             (None.)
12

13

14

15

16

17

18

19

20

21

22

23

24

25



MICHAEL MITCHELL                                              June 07, 2021
CMB DEVELOPERS vs ASSOCIATED INDUSTRIES INSURANCE                    6

```
 1              BY REMOTE VIDEOCONFERENCE DEPOSITION
 2                 MONDAY, JUNE 7, 2021, 9:45 A.M.
 3                          * * *
 4         STENOGRAPHIC REPORTER:  My name is Jennifer
 5   Porto, and I am a Certified Shorthand Reporter, No. 14098
 6   for the State of California.  This depo is being held via
 7   Zoom videoconferencing.  The witness and the reporter are
 8   not in the same room.  The witness will be sworn in
 9   remotely.
10                    MICHAEL MITCHELL,
11   called as a witness, having been first duly sworn, was
12   examined and testified as follows:
13         THE WITNESS:  I do.
14         STENOGRAPHER REPORTER:  Will the witness please
15   state if anybody else is in the room with him.
16         THE WITNESS:  No.  No, one is present.
17         STENOGRAPHIC REPORTER:  Thank you.
18         Counsel, please proceed.
19                    EXAMINATION
20   BY MS. NELSON:
21      Q    Mr. Mitchell, can you state your name and spell
22   it for the record, please?
23      A    My name is Michael Mitchell.  M-I-C-H-A-E-L;
24   M-I-T-C-H-E-L-L.
25      Q    Have you ever had your deposition taken before?
```



 1  company?

 2      A    Westlake Risk and Insurance Services, Inc.

 3      Q    Okay.  Do you know who CMB Developers, Inc. is?

 4      A    Yes, I do.

 5      Q    Okay.  At some point did CMB Developers, Inc.

 6  become a client of yours?

 7      A    Yes, they did.  They were a referral from a

 8  former client.

 9      Q    Okay.  And do you remember what year CMB became

10  a client of yours?

11      A    They were -- they were a client in 2017 for

12  their general liability policy, but I think they started

13  maybe a year before that.  Maybe 2016 on their -- they

14  had a -- they had a project that they were doing that was

15  in a wrap -- a wrap policy that they were doing, so that

16  was under Hoover Commonwealth, I believe.  I met

17  David Lee through that.

18      Q    Okay.  You said that they had a wrap policy.

19  That is W-R-A-P; correct?

20      A    Right.  It wasn't -- they had that Hoover

21  policy.

22      Q    And that is what I wanted to ask you about.

23  What is a Hoover Commonwealth policy?

24      A    Hoover Commonwealth was the LLC that they had

25  for one of their projects.  They also had another project



 1   that they did, which was I think six or seven months that

 2   was under Monterey something.  I can't remember the

 3   actual name of the LLC, but they had two projects and

 4   their own private policy.

 5        Q    So was it David Lee of CMB Developers that you

 6   dealt with?

 7        A    Yes.

 8        Q    Did you ever deal with anyone else from

 9   CMB Developers?

10        A    I believe Jonathan Zadok was part of that group,

11   but there was some other gentleman.  I do not remember

12   who that was, but David was the one that I went to when I

13   needed information.  I believe Jackie Brady in our office

14   dealt with Jonathan more than I did.

15        Q    Now, when you say "part of that group," what did

16   you mean?

17        A    There was multiple partners in the corporation.

18        Q    And were there other related companies?

19        A    They had projects that they were doing.  I don't

20   know if there were related companies.  I am not sure of

21   their structure, but I know David -- and I believe

22   Jonathan were part of CMB Developers.

23        Q    Did you obtain or procure insurance for any

24   other company that belonged to David Lee in 2016?

25        A    We did that one policy for Hoover Commonwealth



1  which was the condos, and they were doing a remodel of

2  another home.

3          MS. NELSON:  I have uploaded to the chat room a

4  document that I am marking as Exhibit 7 [sic].

5          (Exhibit 17 was marked for

6          identification by the court reporter

7          and is attached hereto.)

8  BY MS. NELSON:

9      Q    And, Mr. Mitchell, if you can download that

10  document and take a look at it, and let me know when you

11  have had an opportunity to do that.

12     A    I have it up.

13     Q    The document that I have marked as Exhibit 17 is

14  16 pages long.  The first page says Commercial Insurance

15  Application, and it has a date of 7/28/2016 at the top.

16  Then in the bottom it has a Bates stamp of AIICUW000012.

17          At the very top it says "Jackie B."  Do you see

18  that?

19     A    I do.

20     Q    Is that the Jackie that you mentioned a couple

21  of minutes ago?

22     A    That is my account manager Jackie Brady.

23     Q    Is Jackie not a broker?

24     A    Jackie, she is a licensed insurance

25  professional, but she is my account manager.



1    Q    Okay.  In 2018 or 2019 did you become aware,

2  Mr. Mitchell, of a claim by Casey Conway that involved

3  water damage related to CMB Developers?

4    A    I did become aware when the claim was sent to

5  us.

6    Q    Okay.  And who sent the claim to you?

7    A    I am guessing AmTrust or maybe David.  I am not

8  sure.

9    Q    Okay.

10    A    It came to us, but I don't recall who exactly

11  sent us it.

12    Q    Okay.  When you learned about the claim

13  involving 950 El Paso, did you talk to David Lee about

14  it?

15    A    I believe we had a conversation.  I don't

16  remember the conversation, but I am sure we had a

17  conversation, either myself or Jackie, regarding the

18  claim.

19    Q    You just said that you do not remember the

20  conversation, can you remember --

21    A    I don't remember the exact conversation, but I

22  know one of us had a conversation with David.  I don't

23  know -- I don't remember what was said.

24    Q    Okay.  Okay.

25         MS. NELSON:  I am going to mark our last



1  exhibit, and it is Exhibit 22.  It is three pages long.

2  Let me know when you have had a chance to open it.

3          (Exhibit 22 was marked for

4          identification by the court reporter

5          and is attached hereto.)

6          THE WITNESS:  I have it.

7  BY MS. NELSON:

8      Q    Okay.

9      A    I see it.

10     Q    Okay.  Okay.  On the first page of this

11 Exhibit 22 -- well, first of all, let me just describe

12 it.  It is a three-page document with an e-mail string on

13 it, and it has the date 12/2/2019 at the top.  It is

14 Gmail underneath that.  The subject line is "Conway

15 versus Associated Industries Insurance and AmTrust, et

16 al."

17         There is a couple of headings there, because the

18 message is forwarded.  Underneath the forwarded messages

19 it says "From Mike Mitchell."  Do you see that?

20     A    Yeah.

21     Q    And that is your e-mail address; correct?

22     A    It is.

23     Q    And do you recognize this as an e-mail you sent

24 to CMB Developers?

25     A    I do.



1     Q    The "To" line has Jackie Brady and also

2     CMB Developers.  And Jackie Brady you said was your

3     account manager; correct?

4     A    Correct.

5     Q    At CMB Developers -- when you communicated with

6     someone using that e-mail address was your -- was it your

7     understanding that it was David Lee?

8     A    It was my understanding that it went to both

9     David and Jonathan.

10    Q    Okay.  And this e-mail you have addressed to

11    David only, so was it -- never mind -- strike that.

12         If you go to the next page, there is an e-mail

13    from CMB Developers at the bottom of the next page to

14    Jackie Brady.

15    A    Yes.

16    Q    It has got a signature line for a law firm.  Do

17    you have any understanding as to the connection between

18    CMB Developers and the law firm?

19    A    I do not.

20    Q    Okay.  And the subject of that substance has

21    been removed, but there is a response from Jackie to you

22    above that.  Do you remember what the inquiry was?

23    A    I do not.  I do not.

24    Q    Okay.  Okay.  I want to go back to the first

25    page in the e-mail that you sent to Mr. Lee.  It says in



1    the middle of the first paragraph underneath the word

2    "David," it says, (Reading):

3               "What does your contract with

4          the fire sprinkler company say?"

5          Do you see that?

6    A    I do.

7    Q    Was it your understanding in 2016 and 2017 that

8    CMB obtained indemnity contracts from its subcontractors?

9    A    It was my understanding, yes.

10   Q    And what did Mr. Lee tell you about

11   CMB Developers' contract with the fire sprinkler company?

12   A    I don't -- I don't recall getting an e-mail

13   response on this, but I am sure I could look it up.

14   Q    The next paragraph says, (Reading):

15               "Our policy does have a fire

16          sprinkler exclusion on it as we have

17          discussed."

18          First of all, are you -- when you say "a

19   fire sprinkler exclusion," are you referring to what we

20   marked as Exhibit 9 a few minutes ago?

21   A    19?

22   Q    Yes.

23   A    Exhibit 19.

24   Q    Yes.

25   A    Yes.



 1      A    She did.  I just don't recall exactly what she
 2   said at the time.
 3      Q    Okay.  The next sentence says, (Reading):
 4              "Why your subcontractor's
 5              insurance should respond on your
 6              behalf."
 7              What does that mean?
 8      A    That if they have a subcontractor that did the
 9   fire sprinklers and that person is licensed and insured
10   and there was an issue with that subcontractor's work,
11   his insurance should respond for the client.
12      Q    When you wrote this to Mr. Lee, was it your
13   understanding that the fire sprinkler exclusion would
14   apply to a claim that water damage was caused to
15   Mr. Conway's house?
16      A    I'm sorry, can you repeat that?
17      Q    Sure, and maybe I can get a better question out.
18              When you wrote this --
19      A    Okay.
20      Q    -- did you believe that the fire sprinkler
21   exclusion would apply to Mr. Conway's claim?
22      A    Yes.
23              MS. SAGHEB:  Objection --
24              THE WITNESS:  Sorry.
25              MS. SAGHEB:  Objection.  The question asks for



1   expert opinion without foundation.  There has been no

2   foundation that this witness has the expertise to answer

3   that question.

4   BY MS. NELSON:

5       Q    And you can answer, Mr. Mitchell.

6            MS. SAGHEB:  He did.

7            MS. NELSON:  Oh, I missed it.

8   BY MS. NELSON:

9       Q    Did you say "yes"?

10      A    Yes.

11      Q    And what is your understanding based on?

12      A    The exclusion in the policy.

13           MS. NELSON:  All right.  I don't have any

14  further questions for this witness.

15                          EXAMINATION

16  BY MS. SAGHEB:

17      Q    Good morning, sir.

18      A    Good morning.

19      Q    Let me just start my video up.

20           My name is Sohaila Sagheb, and I represent CMB

21  in this litigation.  I just have a few follow-up

22  questions.

23      A    Sure.

24      Q    If you can go back to exhibit -- it wasn't 17.

25  It was the one that actually had your signature on it, I



 1              Mr. Mitchell, would you like to review your

 2       transcript and note any changes that you wish to make

 3       before it is finalized, or do you want to waive that

 4       right?

 5              THE WITNESS:  I will waive that right.

 6              MS. NELSON:  Okay.  The court reporter then will

 7       prepare the transcript per Code, and I would like a copy.

 8       Thank you.

 9              STENOGRAPHIC REPORTER:  Ms. Sagheb (phonetic),

10       would you like a certified copy of the transcript?

11              MS. SAGHEB:  That's okay.  I'm trying to get you

12       Exhibit 23.

13              You know, yes, I would, but I have a request.

14       Is there a possibility I could get a readable draft by,

15       let's say, Wednesday?

16              STENOGRAPHIC REPORTER:  I'm sorry, so you would

17       like it expedited?  When you say "readable," we use the

18       word "expedited."  You would like an expedited copy by

19       Wednesday?

20              MS. SAGHEB:  Yes.

21              STENOGRAPHIC REPORTER:  No problem.

22                     (Ending time:  11:05 a.m.)

23

24

25



1        I, JENNIFER PORTO, CSR No. 14098, certify:  That the

2     foregoing proceedings were taken before me at the time

3    and place herein set forth; at which time the witness was

4     duly sworn; and that the transcript is a true record of

5        the testimony so given to the best of my ability.

6

7        Witness review, correction and signature was

8    ( ) by code.              ( ) requested.

9    (X) waived.               ( ) not requested.

10    ( ) not handled by the deposition officer due to party

11    stipulation.

12

13        The dismantling, unsealing or unbinding of the

14    original transcript will render the reporter's

15    certificate null and void.

16        I further certify that I am not financially

17    interested in the action, and I am not a relative or

18    employee of any attorney of the parties, nor of

19    any of the parties.

20      Dated this 9th day of June, 2021

21

22    _____

23              JENNIFER PORTO, CSR 14098

24

25



# EXHIBIT 19 TO
# DEPOSITION OF MICHAEL MITCHELL

POLICY NUMBER: AES1040716 00

COMMERCIAL GENERAL LIABILITY
AES GL 222 09 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED CONSTRUCTION OR CONTRACTOR OPERATIONS

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Description of excluded operations:**

Airport work involving Runways, Jetways or Baggage or Security Systems
Bridge or Elevated Highway Construction
Caisson or Cofferdam Work
Construction or Project Manager
Dike, Levee or Reservoir Work
Elevator or Escalator Inspection, Installation, Servicing or Repair
Erosion Control Operations
Fire Suppression Systems - Installation
Fireproofing of structures
Fire, water and/or mold damage remediation work
Foundation Installation (acceptable in conjunction with a remodel/addition)
Janitorial work for occupancies other than offices
Playground Equipment or Bleacher Work
Power Line Construction
Public Street or Road paving or repaving
Railroad Construction
Refinery or Chemical Plant work
Retaining walls over 6 feet in height
Residential framing (acceptable in conjunction with a remodel/addition)
Sound Barrier Construction
Swimming Pool Installation or Repair
Traffic Signal or Control Work
Underground horizontal boring
Underpinning – Buildings or Structures
Waterproofing of Foundations and Exterior of Buildings performed by you

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

**All other terms and conditions remain unchanged.**

**AES GL 222 09 15**                                                                                                  **Page 1 of 1**

Includes copyrighted material of Insurance Services Office, Inc., with its permission

AIIC 000958

# EXHIBIT 21 TO
# DEPOSITION OF MICHAEL MITCHELL

12/2/2019        Conway v. Associated Industries Insurance and Amtrust, et al.

Case 2:19-cv-09973-SVW-RAO Document 36-7 Filed 06/21/21 Page 289 of 338 Page ID #:1988



Christine Chiu <cchiu@chiaowu.com>

## Conway v. Associated Industries Insurance and Amtrust, et al.

**Ching Chiao** <cchiao@chiaowu.com>                                         Mon, Dec 2, 2019 at 4:05 PM
To: Sohaila Sagheb <ssagheb@chiaowu.com>
Cc: Christine Chiu <cchiu@chiaowu.com>

COMMUNICATION AMONGST CMB'S COUNSEL

---------- Forwarded message ---------
From: **CMB Developers** <cmbdevelopers@gmail.com>
Date: Mon, Dec 2, 2019 at 3:57 PM
Subject: Fwd: Conway v. Associated Industries Insurance and Amtrust, et al.
To: Ching Chiao <cchiao@chiaowu.com>

---------- Forwarded message ---------
From: **Mike Mitchell** <mmitchell@westlakerisk.com>
Date: Mon, Dec 2, 2019, 1:18 PM
Subject: RE: Conway v. Associated Industries Insurance and Amtrust, et al.
To: Jackie Brady <jbrady@westlakerisk.com>, CMB Developers <cmbdevelopers@gmail.com>

David-

Jackie and I have gone through the submission and have reviewed the supplemental.   The supplemental states that CMB is a residential remodel contractor.  I have attached the supplemental application which was completed at the time with the information received based on our conversations.  There is nothing on the supplemental that would have misled the carrier's underwriter.  The fire sprinkler work was subbed out, which we indicated you used subcontractors.  What does your contract with the fire sprinkler company say?  Is there any wording regarding providing you with a waiver of subrogation?   That policy should have primary and non-contributory wording.

Our policy does have a fire sprinkler exclusion on it as we have discussed.   This is why your subcontractor's insurance should respond on your behalf.

**Thank you,**

*Mike Mitchell, Vice President*

## Westlake Risk & Insurance Services, Inc.

**2659 Townsgate Rd Ste 103**

**Westlake Village, CA 91361**

*mmitchell@westlakerisk.com*

**805-413-8493 Direct**

**805-204-7370 Cell**

**805-413-0259  Fax**

**Westlake-Risk-Logo-Header1 w address 3**

*"For all your business Property/Casualty, Group Health, Risk Management, and HR consulting needs"*

Please note that you may not rely on email communication to us to report a claim or to give us instructions to place, bind, change or terminate coverage unless we have subsequently confirmed to you in writing that we have received your message and will be taking the action you have requested.

Confidentiality Notice: The information contained in this e-mail may be privileged and confidential information and is intended only for the use of the individual and/or entity identified in the address of this message. If the reader of this message is not the intended recipient, or an employee or agent responsible to deliver it to the intended recipient, you are requested not to distribute or copy this communication. If you have received this communication in error, please notify us immediately by telephone or return e-mail and delete the original message from your system. Thank you.

---

**From:** Jackie Brady <jbrady@westlakerisk.com>
**Sent:** Monday, December 2, 2019 11:36 AM
**To:** Mike Mitchell <mmitchell@westlakerisk.com>
**Subject:** RE: Conway v. Associated Industries Insurance and Amtrust, et al.

Based on my file this is regarding the sprinkler damage claim on 7/6/2018. The policy and application are attached for that term.

I don't see any issues with the policy or the accord. The supplemental has question #4 that I think they are referring to but the answer states it's the members under another company not the CMB corp.

**From:** CMB Developers <cmbdevelopers@gmail.com>
**Sent:** Wednesday, November 27, 2019 11:41 AM
**To:** Jackie Brady <jbrady@westlakerisk.com>
**Subject:** Fwd: Conway v. Associated Industries Insurance and Amtrust, et al.

[Quoted text hidden]
--

Ching K. Chiao, Esq.
CHIAO & WU, LLP
Attorneys at Law
T (626) 698-0088
F (626) 698-0068
600 S. Lake Ave., Suite 405
Pasadena, CA 91106
cchiao@chiaowu.com
www.chiaowu.com

This message was sent from a CHIAO & WU, LLP mobile device. Please excuse the brevity of this message and any typographical and/or grammatical errors.
[Quoted text hidden]

**3 attachments**

 **image001.jpg**
10K

 **image001.jpg**
10K

 **Supplemental.pdf**
593K

# Exhibit 8



# Exhibit 8

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** ("Agreement") is dated as of January 28, 2021, by Casey Conway ("Claimant") and CMB Developers, Inc. ("Defendant"). Claimant and Defendant are collectively referred to herein as "the Parties."

## RECITALS

WHEREAS, on or about January 25, 2019, Claimant filed an action in Los Angeles Superior Court, Case No. 19STCV02690 (the "Action"), arising from Defendant's alleged negligence in constructing the property commonly known as 950 El Paso Drive, Los Angeles, California (the "Property"). Claimant's claims on the Property and in the Action shall collectively be referred to as the "Claims";

WHEREAS, Defendant denies liability in whole or in part for the above Claims; and

THEREFORE, the Parties, nevertheless, wish to settle all outstanding claims upon the terms and conditions set forth herein, to avoid the uncertainty, expense and burden of further litigation.

## AGREEMENT

THEREFORE, for good and valuable consideration, the Parties agree as follows:

1.    Non-Admission.

This Agreement does not constitute an admission by the Parties of any violation of any law or statute, and the Parties agree that neither this Agreement nor the furnishing of consideration shall be deemed or construed for any purposes as evidence or an admission of liability or wrongful conduct of any kind.

2.    Settlement.

A.    Payment Amount. Defendant's insurance carrier on behalf of Defendant agrees to make payment to Claimant, in full and complete settlement, the sum of Two Hundred Seventy-Five Thousand Dollars and Zero cents ($275,000.00) (the "Settlement Amount").

B.    Payment Terms. Payment of the Settlement Amount shall be payable to "Law Office of Aaron B. Booth Attorney Client Trust Account" (Tax ID #42-1753324) and delivered directly to Claimant' counsel, Aaron Booth, Esq. Payment shall be made within 30 days of execution of this Agreement, but only after receipt by counsel for Defendant of the executed documents set forth below in this paragraph. No payment shall be owing until Defendant's counsel has received (1) this Agreement executed by Claimant and its counsel; and 2) a Request for Dismissal with Prejudice. Claimant irrevocably authorizes counsel for Defendant to file the Request for Dismissal with Prejudice upon the clearing of the Settlement Amount. Payment of the Settlement Amount shall be deemed timely if delivered or postmarked within the stated time.

3.    Release. Conditional upon the payment of the Settlement Amount set forth above, Claimant releases and forever discharges Defendant, and all of its representatives, members,

AIIC 002036

parents, employees, directors, officers, lenders, agents, brokers, insurers (Associated Industries Insurance Company, Inc. and AmTrust E & S Insurance Services, Inc.), sureties, attorneys, predecessors, landlords, successors, assigns, both past and present, and all firms, persons, associations, venturers, co-venturers, partners, co-partners, contractors, engineers, subcontractors, subsidiaries, parents, affiliates or corporations connected therewith, and each of them, from any and all claims, debts, liabilities, demands, obligations, costs, expenses, attorneys' fees, actions and causes of action of every nature, character and description, whether legal, equitable, statutory, or contractual, which they have held or now hold, whether known or unknown, related to the Action, the Property and/or Claimant's Claims.  Claimant warrants that he has full authority to agree to the release herein and to enter into this Agreement.  This release shall have no effect on Defendant's continuing claims against its insurer(s) related to Claimant's claims, Property or Action.

4.     <u>Waiver of Civil Code Section 1542</u>.  Claimant hereby agrees, represents and warrants that the matters released are not limited to matters which are known or disclosed to them and hereby waives any and all rights and benefits which they now have, or in the future may have, under the provisions of Section 1542 of the California <u>Civil Code</u>, which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

Claimant understands and hereby waives the provisions of Section 1542 to the fullest extent permitted by law.  Claimant acknowledges that he is aware that it may hereafter discover facts in addition to or different from those which he now knows or believes to be true with respect to the subject matter of this Agreement, but that it is the intention of Claimant hereby to fully, finally, and forever settle and release all disputes and differences, known or unknown, suspected and unsuspected, which now exist, may exist, or have existed against Defendant regarding the Action, the Property and the Claims.

5.     <u>Successor and Assigns</u>.  The provisions of this Agreement shall be binding upon, and shall inure to the benefit of, the Parties hereto and their respective successors and assigns.

6.     <u>Representation by Counsel</u>.  Each Party to this Agreement acknowledges that they have been advised by legal counsel or have had the opportunity to engage legal counsel of their choice, regarding the meaning and consequences of this Agreement.  The rule of construction that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Settlement Agreement.

7.     <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which when taken together shall constitute one and the same instrument.  The signature page of any counterpart may be detached therefrom without impairing the legal effect of the signature(s) thereon, provided such signature page is attached to any other counterpart identical thereto except having additional signature pages executed by other parties to this Agreement attached thereto.  A facsimile, photocopy or PDF shall be deemed as if it were an original and shall have the same effect as if it were an original.

AIIC 002037

8.      Governing Law, Venue and Jurisdiction.  This Agreement is made and entered into and shall be governed, construed, and interpreted in accordance with the laws of the State of California, including its choice of law rules.  In addition, any action brought to enforce the provisions of this Agreement shall be commenced, prosecuted, and defended exclusively in the courts within the County of Los Angeles, State of California.

9.      Headings.  The headings of the paragraphs of this Agreement have been included only for convenience and shall not be deemed in any manner to modify or limit any of the provisions of this Agreement or be used in any manner in the interpretation of this Agreement.

10.      Limitation.  Nothing in this Agreement, express or implied, is intended to confer any rights or remedies by reason of this Agreement on any persons other than the Parties and their respective successors and assigns, nor is anything in this Agreement intended to relieve or discharge the obligation or liability of any third persons to any party to this Agreement, nor shall any provision give any third person any right of subrogation over or against any party to this Agreement.

11.      Integration.  This Agreement contains the entire understanding and agreement of the Parties with respect to the subject matter hereof.  There has been, is and will be no representation, covenant, inducement or undertaking other than those expressly set forth in this Agreement.  Each party acknowledges that except as herein expressly set forth, no party or any officer, agent, employee, representative, or attorney of or for any party has made any statement, representation or promise to such party regarding any fact relied upon in entering into this Agreement, and such party has not relied upon any statement, representation or promise of any other party, or of any other officer, agent, employee, representative, or attorney of any other party in executing this Agreement, except as expressly stated in this Agreement.

12.      Amendments.   This Agreement may be amended only by an instrument in writing; provided, however, no amendment, change or modification of this Agreement shall be valid unless in writing and signed by all of the Parties affected by the amendment, change or modification; and any such amendment, change or modification shall be effective only as to the Parties thereto.

13.      Further Documents.  Each of the Parties hereto shall execute and deliver any additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of its obligations hereunder to carry out the intent of the Parties hereto.

14.      Attorney's Fees.  Should any dispute arise to enforce the terms of this Settlement Agreement, the prevailing party shall be entitled to actual attorney's fees and costs, as determined by the trier of fact in accordance with California law to be reasonable, with this Agreement being enforceable under Code of Civil Procedure §664.6.  Otherwise, each of the Parties hereto shall bear their own expenses, attorneys' fees and costs, and any consultant or expert fees and costs, in connection with the Action and all the Claims that are settled pursuant to this Agreement.

[SIGNATURES TO FOLLOW]

AIIC 002038

**IN WITNESS WHEREOF**, the Parties have executed and/or caused their duly authorized representatives to execute this Agreement as of the date first above written.

By: _____

Plaintiff, Casey Conway

Approved as to form and content:

LAW OFFICES OF AARON B. BOOTH

By: _____

Aaron B. Booth, Esq.

4

AIIC 002039

Dept. 73

**CIV-110**

*Electronically Received 03/29/2021 10:51 AM*

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:    STATE BAR NO: 105493<br>NAME: Aaron B. Booth, Esq.<br>FIRM NAME: LAW OFFICES OF AARON B. BOOTH<br>STREET ADDRESS: 707 Wilshire Boulevard, 46th Floor<br>CITY: Los Angeles    STATE: CA    ZIP CODE: 90017<br>TELEPHONE NO.: (213) 228-0330    FAX NO.: (213) 489-2204<br>E-MAIL ADDRESS: abooth@aaronbooth.com<br>ATTORNEY FOR (Name): Plaintiff CASEY CONWAY | *FOR COURT USE ONLY*<br><br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br>03/29/2021<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ E. Villanueva _____ Deputy |

| |
|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES<br>STREET ADDRESS: 111 North Hill Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Los Angeles, CA 90012<br>BRANCH NAME: Stanley Mosk Courthouse |

| | |
|---|---|
| Plaintiff/Petitioner: Casey Conway<br>Defendant/Respondent: CMB Developers, Inc., et al. | |

| | |
|---|---|
| **REQUEST FOR DISMISSAL** | CASE NUMBER:<br>19STCV02690 |

**A conformed copy will not be returned by the clerk unless a method of return is provided with the document.**

**This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)**

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) [✓] With prejudice    (2) [ ] Without prejudice
   b. (1) [ ] Complaint    (2) [ ] Petition
      (3) [ ] Cross-complaint filed by *(name)*:                        on *(date)*:
      (4) [ ] Cross-complaint filed by *(name)*:                        on *(date)*:
      (5) [ ] Entire action of all parties and all causes of action
      (6) [✓] Other *(specify):** as to Defendant CMB Developers, Inc. ONLY

2. *(Complete in all cases except family law cases.)*
   The court [ ] did [●] did not  waive court fees and costs for a party in this case. *(This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).*

Date: March 29, 2021

Aaron B. Booth, Esq.
(TYPE OR PRINT NAME OF [✓] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)    ▶ *(signature)* A B Booth
(SIGNATURE)

*If dismissal requested is of specified parties only or specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for:
[✓] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross Complainant

3. **TO THE CLERK:** Consent to the above dismissal is hereby given.**

Date:

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)    ▶
(SIGNATURE)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign his consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross Complainant

*(To be completed by clerk)*

4. [ ] Dismissal entered as requested on *(date)*:
5. [✓] Dismissal entered on *(date)*: 04/01/2021    as to only *(name)*: Defendant CMB Developers, Inc.
6. [ ] Dismissal **not entered** as requested for the following reasons *(specify)*:

7. a. [✓] Attorney or party without attorney notified on *(date)*: 04/01/2021
   b. [ ] Attorney or party without attorney not notified. Filing party failed to provide
      [ ] a copy to be conformed    [ ] means to return conformed copy

Date: 04/01/2021    Clerk, by _____ E. Villanueva _____, Deputy
Sherri R. Carter, Executive Officer / Clerk of Court

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-110 [Rev. Jan. 1, 2013] | **REQUEST FOR DISMISSAL** | Code of Civil Procedure, § 581 et seq.; Gov. Code,<br>§ 68637(c); Cal. Rules of Court, rule 3.1390<br>*www.courts.ca.gov* |

AIIC 002050

CIV-110

| | |
|---|---|
| Plaintiff/Petitioner: Casey Conway<br>Defendant/Respondent: CMB Developers, Inc., et al. | CASE NUMBER:<br>19STCV02690 |

---

### COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

---

## Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name):*

2. The person named in item 1 is *(check one below):*

   a. ☐ not recovering anything of value by this action.

   b. ☐ recovering less than $10,000 in value by this action.

   c. ☐ recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and court costs that were waived in this action have been paid to the court *(check one):*     Yes     No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date:

▶

_____     _____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)          (SIGNATURE)

---

**REQUEST FOR DISMISSAL**

AIIC 002051

PROOF OF SERVICE

I, Pouneh Porooshani, declare:

I am, and was at the time of service of the papers herein referred to, over the age of 18 years old and not a party to the action. I am employed in the County of Los Angeles, California, in which county the within-mentioned service occurred. My e-mail address is pporooshani@skanemills.com and my mailing address is 1055 West 7th Street, Suite 1700, Los Angeles, California 90017.

On March 29, 2021, I served a true and correct copy of the following document(s) on the parties in this action addressed as follows:

**REQUEST FOR DISMISSAL AS TO CMB DEVELOPERS, INC.**

**SEE ATTACHED SERVICE LIST**

___ **BY MAIL:** I placed true copies of the above-referenced document(s) in sealed envelopes addressed as indicated. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same date of this Declaration, in the ordinary course of business.

_X_ **BY E-MAIL:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the above-described document(s) to be sent to the person(s) shown on the attached Service List to the electronic notification addresses as follows:

___ **BY FACSIMILE** By use of facsimile machine number (213) 452-1201, I served a copy of the within document(s) on the above interested parties at the facsimile numbers as shown on the attached Service List. The transmission was reported as complete and without error. The transmission report was properly issued by the transmitting facsimile machine, the original of which is retained by propounding counsel.

___ **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses shown on the attached Service List. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

---

1
PROOF OF SERVICE

AIIC 002052

# Exhibit 9



# Exhibit 9

232330.1

CHING K. CHIAO (SBN 243201)
SANDY T. WU (SBN 234608)
CHRISTINE CHIU (SBN 297163)
CHIAO & WU, LLP
600 S. Lake Avenue, Suite 405
Pasadena, California 91106
Tel:    (626) 698-0088
Fax:   (626) 698-0068

Attorneys for Plaintiff CMB DEVELOPERS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CMB DEVELOPERS, INC. a California Corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC., AMTRUST FINANCIAL SERVICES, INC., AMTRUST NORTH AMERICA, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>                    Defendants. | CASE NO.: 2:19-cv-09973-SVW-RAO<br><br>**PLAINTIFF CMB DEVELOPERS, INC.'S RULE 26(a)(2) DISCLOSURE OF EXPERT TESTIMONY**<br><br>TRIAL DATE: 08/31/2021 |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

In accordance with Rule 26(a)(2) of the Federal Rules of Civil Procedure, Plaintiff CMB Developers, Inc. hereby discloses persons who may present evidence at trial pursuant to the Federal Rules of Evidence 702, 703 or 705.

## (A) EXPERT WITNESSES RETAINED BY DISCLOSING PARTY

The following persons have been retained to provide expert testimony and have prepared a report pursuant to FRCP 26(a)(2)(B):

1. Robert Anderson, The Anderson Edge, 1901 Windward Lance, Newport Beach, CA 92660. The expert's report is attached as Exhibit 1

2. David W. Blattenberg, The Anderson Edge, 1901 Windward Lance, Newport Beach, CA 92660. The expert's report is attached as Exhibit 2.

3. Pete Fowler, Pete Fowler Construction Services, Pacific Pointe Corporate Center, 905 Calle Amanecer, Suite 250 San Clemente, CA 92673. The expert's report is attached as Exhibit 3.

4. Marc Viau, Pete Fowler Construction Services, Pacific Pointe Corporate Center, 905 Calle Amanecer, Suite 250 San Clemente, CA 92673. The expert's report is attached as Exhibit 4.

5. Discovery is not complete and the CMB Developers, Inc. reserves its right to supplement this list.

**(B) PARTY EXPERTS**

Plaintiff intends to call various witnesses who are either defendants in this case, or otherwise affiliated with one or more of the defendants Associated Industries Insurance Company, Inc., Amtrust Financial Services, Inc., Amtrust North America, Inc.

These witnesses are expected to testify and present evidence regarding the policies and procedures of insurance policy issuance, coverage and claims handling, as well as the following areas:

1. Amy Liebl - The history and association among the Defendants Associated Industries Insurance Company, Inc., Amtrust Financial Services, Inc., Amtrust North America, Inc.; the operations, locations and employees of each and the division of labor/services between the three Defendants; the purported separateness of the three defendants;

-2-

PLAINTIFF'S EXPERT DESINGATION AND
DECLARATION OF SOHAILA SAGHEB RELATED THERETO

claims handling procedures; the application of claims handling procedures to the claim of Casey Conway against CMB Developers, Inc.; the coverage decisions issued by Defendants to CMB Developers, Inc. in reference to Casey Conway's claims; the substance of declination of coverage;

2. Gail Henderson – Defendants' Claims handling procedures; the application of Claims handling procedures to the claim of Casey Conway against CMB Developers, Inc.; all evaluations, investigations and determinations of coverage regarding  Casey Conway's claims against Defendants to CMB Developers, Inc.

3. Discovery is not complete and the CMB Developers, Inc. reserves its right to supplement this list.

**(C) NON RETAINED EXPERTS**

Plaintiff intends to call the following non-retained experts to testify as to all liability, causation and damages issues in this case:

1. Aaron Booth, 707 Wilshire Blvd., 46th floor Los Angeles California 9007, telephone: 213-228-0330. Mr. Booth is an attorney licensed by the state of California. Mr. Booth represented Casey Conway in the Underlying action filed by Casey Conway against CMB Developers, Inc. Mr. Booth is anticipated to testify regarding his handling of the underlying loss, including but not limited to, his dealings with Defendants to tender, obtain acknowledgment of and ultimately to settle Conway's claims, his investigation of the cause(s) of loss and Conway's damages reflecting the risk of judgment against CMB Developers, Inc. Mr. Booth will also testify regarding settlement and settlement efforts with CMB Developers, Inc.

PLAINTIFF'S EXPERT DESINGATION AND
DECLARATION OF SOHAILA SAGHEB RELATED THERETO

2.  Gina Bazaz, Murchinson & Cumming, LLP, 801 S. Grand Ave., 9th Floor, Los Angeles, CA 90017, Telephone 213-623-7400

Ms. Bazaz is an attorney licensed by the state of California. Ms. Bazaz represented Radix Fire Protection, Inc. in the Underlying action filed by Casey Conway against CMB Developers, Inc. Ms. Bazaz is anticipated to testify regarding her handling of the underlying loss on behalf of Radix, including but not limited to, her investigation of the underlying loss and the anticipated testimony of experts that would be called at trial by Radix regarding the cause(s) of loss and Conway's damages reflecting the risk of judgment against CMB Developers, Inc.

3.  Cameron Kalunian, Lewis Brisbois Bisgaard & Smith LLP, 633 W. 5th St., Suite 4000, Los Angeles California 90071, Telephone: 213-250-1800

Mr. Kalunian is an attorney licensed by the state of California. Mr. Kalunian represented Global Fire Sprinkler Corporation in the Underlying action filed by Casey Conway against CMB Developers, Inc. Mr. Kalunian is anticipated to testify regarding his handling of the underlying loss on behalf of Globe, including but not limited to, his investigation of the underlying loss and the anticipated testimony of experts that would be called at trial by Globe regarding the cause(s) of loss.

4.  Jeffrey Morris, Skane Mills LLP, 1055 W. 7th St., Suite 1700, Los Angeles, CA 90017, Telephone: 213-452-1200. Mr. Morris is an attorney licensed by the state of California. Mr. Morris represented CMB Developers, Inc. in the Underlying action filed by Casey Conway against CMB Developers, Inc. Mr. Morris is anticipated to testify regarding his handling of the underlying loss on behalf of CMB Developers, Inc.,

including but not limited to, his investigation of the underlying loss, the anticipated testimony of experts that would be called at trial by CMB regarding the cause(s) of loss and his billings. Mr. Morris is also expected to testify regarding Defendants' settlement posture and conduct in the underlying action.

5. Sohaila Sagheb, of Counsel to Chiao & Wu, LLP, 600 S. Lake Avenue, Suite 405, Pasadena, California 91106, Telephone: (626) 698-0088. Ms. Sagheb is an attorney licensed by the state of California. Ms. Sagheb represented CMB Developers, Inc. in the Underlying action filed by Casey Conway against CMB Developers, Inc. Ms. Sagheb is anticipated to testify regarding defense of  CMB Developers, Inc. in the underlying action, including interactions with Defendants in reference thereto.

6. Jim Schlagel, Jim Schlagel Construction Consultants, Inc., 414 South Vermont Avenue, Glendora, CA 91741, (626) 852-2110. Mr. Schlagel is a licensed general contractor, roofing contractor, and building inspector. Mr. Schlagel is expected to testify concerning the following subject matters to which he would have testified on behalf of Radix the underlying action: standard of care of licensed contractors / sub-contractors, the condition of the roof and roof components of the subject property, the insulation at the subject property, compliance with applicable codes/regulations, in addition to any and all related construction related matters, construction site and project best practices.

7. Chris Brignola, Vollmer Gray, 2421 Palm Drive, Signal Hill, CA 90755, (562) 427-8435. Mr. Brignola is a licensed mechanical engineer. Mr. Brignola is expected to testify concerning the following subject matters to which he would have testified on behalf of Radix in the underlying

-5-

action: The design and manufacturing of the subject fire sprinkler head, in addition to its component parts, written instructions and warnings and industry standards.

8. Robert Rowe, Pyrocop, Inc., 4000 Long Beach Blvd., Suite 251, Long Beach, CA 90807, (562) 425-3943; Mr. Rowe is a licensed private investigator and certified fire investigator. Mr. Rowe is expected to testify concerning the following subject matters to which he would have testified on behalf of Radix in the underlying action: the standard of care in designing and installing a fire sprinkler system and its compliance with applicable standards, including NFPA 13D standards, duties and obligations regarding other aspects of the Property's construction such as the ceiling and placement of windows.

9. West Harrington, Harrington Construction Company, Inc., 10470 Foothill Blvd., Suite 230, Rancho Cucamonga, CA 91730, (909) 861-5452. Mr. Harrington is a licensed general contractor. Mr. Harrington is expected to testify concerning the following subject matters to which he would have testified on behalf of Radix in the underlying action: Conway's damages (other than personal property) and the reasonable cost of repairing the subject property. Mr. Harrington will also evaluate and analyze the testimony and opinions of any expert designated by plaintiff with similar areas of anticipated testing, qualifications and/or opinions.

10. Dale R. Winchell, Winchell Consulting Corp., 1 Alabaster, Irvine, CA 92614, Tel: (714) 915-9495. Mr. Winchell is a licensed general building contractor in California. He has been in the construction industry as a framing laborer, superintendent, foreman, project manager and consultant for more than forty years. His experience includes construction of large

commercial buildings, tenant improvements and single family homes. Mr. Winchell is expected to offer opinions that he would have offered against CMB Developers, Inc. in the underlying action in support of Conway's claims regarding the damages sustained to Conway's home as a result of the initiation of the fire sprinkler, the cost of repair those damages, the existence of other construction defects related to the original construction of his home, the cost to repair those defects, standard of care issues relating to the means, methods and materials utilized in original construction

11. David J. Fruchtman, P.E., Fruchtman & Associates Consulting Mechanical Engineers**,** 11315 Washington Place, Los Angeles, CA 90066, Tel: (310) 915-6110. Mr. Fruchtman is a California registered professional mechanical engineer, an IAPMO (International Association of Plumbing and Mechanical Officials) certified Mechanical Inspector, an IAPMO certified Plumbing Inspector and a certified energy manager for The Association of Energy Engineers (CEM). He has been in the industry for more than thirty-five years and is a member of the National Fire Protection Association (NFPA) and the American Society of Heating, Refrigerating and Air Conditioning Engineers (ASHRAE) in addition to the three organizations already listed. Mr. Fruchtman is expected to offer opinions he would have rendered in the trial of the underlying action regarding the design and installation of the fire sprinkler system in Conway's home, the standard of care required in this design and installation, causation regarding the fire sprinkler malfunction at issue as well as industry requirements for fire protection systems.

12. Michael Panish, Construction Systems, P.O. Box 725, Woodland Hills,

PLAINTIFF'S EXPERT DESINGATION AND
DECLARATION OF SOHAILA SAGHEB RELATED THERETO

CA 91365, Tel: 888-902-4272.  Mr. Panish is a forensic analyst and consultant in the field of construction. Mr. Panish is expected to testify to his opinions as he would have given same at trial in the underlying action, including but not limited to his inability to determine the cause of the fire sprinkler initiation without fire, the facts and circumstances of Conway's claims based on depositions and discovery and including, but not limited to opinions and analysis regarding construction, general contractor, warning, construction site and project practices, liability, causation, comparative fault, and allocation of responsibility.

13. John Callanan, Prime Pacific Construction Services, PO Box 5818, Los Alamitos, CA I0720, Telephone: 800-925-5106, Mr. Callanan is an expert in the area of construction and construction management. Mr. Callanan is expected to testified to his opinions as he would have given same day trial in the underlying action regarding cost estimation and repair recommendations relating to rebuilding Conway's home.

14. Mike Mitchell, Westlake Risk and Insurance Services, Inc., 2659 Townsgate Rd., Suite 103, Westlake Village, CA 91361, Telephone 805-413-8493. Mr. Mitchell is expected to testify regarding placement of coverage for CMB Developers, Inc.

DATE: June 9, 2021

*Respectfully Submitted,*
CHIAO & WU, LLP


By: */s/ Sohaila Sagheb*
   CHING K. CHIAO
   SANDY T. WU
   Attorneys for Plaintiff
   CMB DEVELOPERS, INC.

PLAINTIFF'S EXPERT DESINGATION AND
DECLARATION OF SOHAILA SAGHEB RELATED THERETO



**Report**

| | |
|---|---|
| Date: | 06/09/2021 |
| To: | Sohaila Sagheb, Esq. / Law Office of Sohaila Sagheb |
| | T: (818) 346-3724 E: sslawoffice@sbcglobal.net |
| From: | Pete Fowler Construction Services, Inc. |
| Project: | CMB v Amtrust (PFCS 21-333) |
| Regarding: | 950 El Paso Dr, Los Angeles, CA 90042 |

# Table of Contents

1. Marc Viau Qualifications
2. Purpose and Project Summary
3. Fire Sprinkler Discussion
4. Insurance Coverage Discussion
5. Industry and Manufacturer's Instruction
6. Important Documents & Exhibits
7. Conclusions
8. Attachments

# Marc Viau Qualifications

My name is Marc Viau. I am a licensed General Building Contractor in the State of California (License 318440) with over fifty-two years of experience in the Construction Industry. I am a member of the International Code Council and since 1997 have been Certified as a Building Inspector and Fire Inspector II.

Since 1993, the focus of my work has been in construction defect forensic investigations in litigation matters, rendering opinions for insurance providers, general building contractors, specialty sub-contractors, and homeowners. I have extensive experience as a general building contractor working with residential fire sprinkler protection systems, commercial fire sprinkler systems, and commercial kitchen fire sprinkler systems. As a forensic consultant, I have been retained and have provided opinions in litigation matters for sprinkler manufacturers (Central Fire Sprinklers) and sub-contractors tasked to design and install residential, commercial, and commercial kitchen fire sprinkler systems. I have previously rendered testimony in Riverside Superior Court in the matter of Fireman's Fund Co. v. Jason Wu et al regarding building and fire code requirements for commercial cooking vent hoods and fire suppression systems. As a forensic consultant, I have worked with testing labs and have provided opinions and conclusions regarding fire sprinkler discharge from a known fire and premature discharge from other fire sprinkler system failures.

# Purpose and Project Summary

This project concerns a single-family residence located at 950 El Paso Dr., Los Angeles, CA. The home has 4 bedrooms, 3 bathrooms, 2,168 square feet, was built in 1922, remodeled in 2016, and is owned by Casey Conway.

CMB Developers, Inc. is a General Contractor that purchased the home located at 950 El Paso Dr., Los Angeles, CA for $371,000. After completing the remodel in 2016, the home was sold to Casey Conway for $1,065,000.

On 7/6/2018, at approximately 2:05 PM, the fire sprinkler system discharged without a fire event. The fire sprinkler system was installed by Radix Fire Protection, Inc. at 950 El Paso for CMB Developers, Inc.(CMB). The system was triggered by excessive heat and dispersed a large quantity of water throughout both levels of the property. CMB was sued by the property owner, Casey Conway, in the Underlying Action. CMB tendered its defense of the Underlying Action to Defendants. Defendants denied coverage on the grounds of the Fire Suppression System-Installation exclusion, which applies to all completed operations in the listed categories and applies to the damages sought in the Underlying Action. Estimated damages exceeded $300,000. This is now a bad faith insurance claim. PFCS has been asked to opine regarding the fire suppression system.

# Fire Sprinkler Discussion

The residence is located at 950 El Paso Drive, Los Angeles, CA 90042. Based on the Los Angeles Fire Department incident report, the fire sprinkler system discharged on 7/6/2018 at approximately 2:05 PM (PST), and the incident report was completed by the Fire Department at 2:27 PM (PST). The incident type was noted as a flood with no fire present. The exterior temperature was recorded at 108 degrees F.

My opinion is that the approved fire sprinkler system, designed and installed by Radix Fire Protection Inc., was improperly designed and does not meet NFPA 13 code and industry standards due to the wrong temperature rating sprinkler heads specified for the project. The specified and installed sprinkler head rating was "Ordinary", whereas the required rating per NFPA 13 should have been **"Intermediate"**. The intermediate temperature classification is required for residential structures that have an unvented ceiling cavity where sprinklers may be installed in close proximity to glazing elements, and where interior ceiling temperature may exceed 100 degrees F.

Further, it is my opinion, that Radix Fire Protection Inc. (Radix) acted irresponsibly during the design stage of the fire sprinkler system. Per the deposition of Steven Lee, Person Most Knowledgeable for Radix, Mr. Lee had a complete set of drawings available, however, chose to design the system based on experience, past projects, did not refer to NFPA 13, did not refer to the manufacturer instructions, and stated that his selection/specification of ordinary temperature classification is standard practice. I am in disagreement with Mr. Lee, simply because every project has to be designed for those particular project criteria, roof assembly type, glazing locations, and project exposures. Mr. Lee's standard approach, unfortunately, lead to a significant amount of damage, when the fire sprinkler system discharged as a result of excessive heat exposure, confirmed on-site by a Radix technician, following the flooding event.

Excerpts from the deposition of Steven Lee, Person Most Knowledgeable for Radix Fire Protection, Inc.:

- Page 29 Scope of Work Discussion: "Question - So it was designed, engineering, shop drawing, and approvals of plan check including the permit fee; is that correct? Answer - Correct."
- Pages 32-33 Code Temperature Rating Discussion: "Question - Okay. Does 13D have instructions as to what type of temperature-rated sprinkler system should be installed in a home? Answer - Yes. Question - Did you refer to those instructions as part of the process of designing the sprinkler system for Mr. Conway's home? Answer - No."
- Page 35 Designed from Site Plan: "Question - And it was based upon that site plan that you both formulated the design for the system and prepared a bid proposal; is that correct? Answer - Yes."
- Pages 49-50 Unvented Attic Discussion: "Question - Now, 7.5.6.3 has a couple of qualifications, and I want to look at not just the first one there but the second one there. The second one says, "Sprinklers in an unventilated concealed space under an uninsulated roof or in an unventilated attic shall be an intermediate temperature classification. Do you see that, sir? Answer - Yes. Question - And you were aware of that issue before designing the Conway house? Answer - Yes."
- Page 62 Code Temperature Rating Discussion: "Question - As a matter of custom and practice, how did Radix determine the temperatures that its sprinklers would be exposed to before making the bid? Answer - We had done numerous projects similar to this project, so we based our estimate based on those facts."

- Page 125 Code Temperature Rating Discussion: "Question - Why did you choose 155 rated? Answer - It's standard practice."

Excerpt from deposition of Casey Conway, the homeowner.

- Page 173 Discussion regarding what Radix technician said: "What he stated to me is that he had shown me the sprinkler head. He said, "Oh, this was the faulty one." And then he followed it up with: "It was probably rated too low," which at the time I actually didn't know what that meant.

Finally, it is my understanding that the expert for Radix Fire Protection, Inc. has argued and presented an opinion that the developer did not install the (3) flat attic vents, for a total of 180 square inches of venting at the roof assembly. At 180 square inches, this equals 1.25 square feet of venting, located in the middle of the roof. It is my opinion that the roof system was always unvented, based on the Olfati Design Group drawings - sheet A-8. The roof area is approximately 46'x27' or 1,242 square feet. Per R806.5 Unvented enclosed rafter assemblies consist of the unvented attic space being part of the building thermal envelope, no vapor retarders installed, and insulation is located directly under the structural roof sheathing. Per the Olfati Design Group drawings, this is an unvented roof assembly in compliance with R806.5. If the attic cavity was to be vented in compliance with R806.2 - Minimum Vent Area, then the minimum net free ventilation area shall be 1/150 of the area of the vented space, with even distribution at lower and upper areas of the roof system. At 1,242 square feet, this would equate to 8.28 square feet of required venting, distributed between upper portions and lower portions of the roof in order to create an intake and discharge of the airflow.

# Insurance Coverage Discussion

Reasons for Coverage Denial:

- Since the exclusion clearly states Installation of Fire Suppression System.
- 5: Exclusion Precise Language: "Fire Suppression Systems - Installation". The underlying action and claims do not identify whether the installation is faulty or the system malfunctioned.
  - Commentary: I opine that the issue is "Design of the Fire Suppression System". There is no evidence that the system malfunctioned, or was improperly installed. The issue is that the design of the fire suppression system does not meet the governing code of NFPA 13. This is the reason why the system discharged. It discharged due to excessive heat exposure. The heat rating of the system was improper for the conditions and environment.
- 5: Exclusion "Designated Residential Construction - Condominium, Townhouse, Rowhouse, or Tract Homes HOA Exception".
  - Commentary: I do not believe that this exclusion applies. The subject property a single-family re-model.
- Commentary: CMB contracted with Radix Fire Protection, Inc. for a turn-key system including design, permitting, installation, and required testing for local governing agencies compliance and approvals. The entire process is no different than any other sub-contractor hired by CMB to execute a particular scope of work, it fell under CMB's overall supervision as an acting General Contractor, responsible for the site logistics, safety, coordination, scheduling, and execution of Sub-trades.

# Industry and Manufacturer's Instruction

The following documents were utilized by PFCS to generate opinions regarding the non-code compliant design of the fire sprinkler system, performed by Radix Fire Protection, Inc. PFCS has performed analysis of the original design documents, and compared them to industry standards, including California Residential Code, NFPA 13, and Globe manufacturer installation design instructions:

1. Olfati Design Group Sheet A-8 Roof Plan.
2. Indicates (3) flat roofs totaling 180 square inches of venting or 1.25 square feet of venting.
3. The roof system does not meet R806 requirements for a vented roof assembly.
4. 2013 California Residential Code - Section R806 Roof Ventilation.
   A. R806.2 Minimum vent area. The minimum net free ventilation area shall be 1/150 of the area of the vented space.
   B. R806.5 Unvented attic and unvented enclosed rafter assemblies.
5. NFPA Table 3-2.5.1 Temperature Ratings, Classifications, and Color Codes. Intermediate temperature rating of 175-225 degrees F.
6. NFPA Table 5-3.1.4.2 (b) Ratings of Sprinklers in Specified Locations. Unventilated Attics = Intermediate Degree Rating.
7. Model GL 4906 Fire Sprinkler Installation Instructions 1/1/2011 - Globe Fire Sprinkler Corporation (manufacturer).

A. Sprinklers of proper rating must be carefully selected to meet the temperature conditions where they are located.
B. Consult the local authority having jurisdiction to determine the proper temperature ratings in special locations such as areas in an unventilated concealed space.

# Important Documents & Exhibits

The following documents have been identified by PFCS as key documents that were used to develop PFCS opinions:

1. Olfati Design Group - Architectural Plans dated 10/13/2015.
2. Radix - Original Proposal dated 4/5/2016.
3. Los Angeles Department of Building and Safety - Permit Information dated 4/26/2016.
4. Radix - Fire Sprinkler Shop Drawing.
5. Globe - Sprinkler Information dated 4/1/2019.
6. Globe - GL 4906 Fire Sprinkler Installation Instructions dated 1/1/2011.
7. City of LA Incident Report dated 7/6/2018.
8. Associated Industries Insurance Company, Inc. - AIIC Insurance Policy dated 8/30/2017.
9. Associated Industries Insurance Company, Inc. - Fire Suppression Exclusion dated 8/30/2017.
10. Deposition of Steven Lee, Person Most Knowledgeable for Radix Fire Protection, Inc. dated 9/28/2020.
11. Deposition of Casey Conway, the homeowner dated 12/11/2020.
12. NFPA-2013- Standard for the Installation of Sprinkler System

# Conclusions

1. My opinion is that the approved fire sprinkler system, designed and installed by Radix Fire Protection Inc., was improperly designed and does not meet NFPA 13 code and industry standards due to the wrong temperature rating sprinkler heads specified for the project.
2. The specified and installed sprinkler head rating was "Ordinary", whereas the required rating per NFPA should have been "Intermediate".
3. Radix Fire Protection Inc., Steven Lee, Person Most Knowledgeable, and the system designer had a complete set of drawings available, however, chose to design the system based on experience and past projects, did not refer to NFPA 13, did not refer to the manufacturer instructions, and stated that his selection/specification of ordinary temperature classification is standard practice. Mr. Lee failed to recognize the roof assembly type, the glazing conditions, and sprinkler system exposure.
4. The roof venting has no relevance in the ultimate performance of the Fire Sprinkler System.
5. There is no evidence that the system malfunctioned, or was improperly installed. The issue is that the design of the fire suppression system does not meet the governing code of NFPA 13. The sprinkler discharged as it was designed, however, the heat rating of the system (sprinkler) was improper for the conditions and environment of the living space.



Marc C Viau
Ca Lic. 318440
IRC & IBCCertified Building Inspector 5007379-01
IFC & IFSTAFire Inspector 5007379-67

## Attachments

- 07/31/2017 PFCS - Marc Viau's CV
- 11/30/2020 PFCS - Marc Viau's Testimony Summary
- 01/01/2020 PFCS - PFCS Fee Schedule
- 06/09/2021 PFCS - File Summary

# Exhibit 10



# Exhibit 10

232330.1



ONE WILSHIRE BUILDING
624 SOUTH GRAND AVENUE, 22ND FLOOR
LOS ANGELES, CALIFORNIA 90017-3876

TELEPHONE:  (213) 629-1600
FACSIMILE:   (213) 629-1660

JEFFREY A. DOLLINGER

DIRECT DIAL: (213) 629-8796
E-MAIL: JDOLLINGER@WPDSLAW.COM

A PROFESSIONAL CORPORATION

August 12, 2020

**BY E-MAIL**

Sohaila Sagheb
ssagheb@chiaowu.com
Chiao & Wu, LLP
600 S. Lake Ave., Ste 405
Pasadena, CA 91105

Re:   **CMB Developers, Inc. v. Associated Industries Ins. Co., Amtrust Financial Services, Inc. and Amtrust North America, Inc., USDC, Central, 2:19-cv-09973 SVW (RAOx**
AmTrust Claim No. 2698891
Policy No. AES 104071601 (8/6/16-8/6/17)
Our File No. 14382

Dear Ms. Saghab:

We write to you as coverage counsel for CMB Developers, Inc. Please let us know if there is anyone else we should direct this letter to.

Based upon the July 24, 2020 ruling on Cross Motions for Summary Judgment in this case, Associated Industries Insurance Company ("AIIC") agrees to pay the reasonable and necessary defense costs of CMB in the underlying action entitled *Casey Conway v. CMB Developers and Radix Fire Protection,* LASC Case No. 19STCV02690 ("Underlying Action") under AIIC Policy No. AES 104071601, subject to a full and complete reservation of all of AIIC's rights, including the right to appeal the court's ruling on the MSJ and seek reimbursement from CMB of all defense fees and expenses and any other amounts paid by AIIC with respect to the Underlying Action.

## I.      BACKGROUND FACTS

On July 6, 2018, a fire sprinkler system installed by a subcontractor of AIIC's insured, CMB Developers, was triggered without a fire, smoke or heat event, and dispersed a large quantity of water into the first floor of the property. CMB was sued by the property owner, Casey Conway, in the Underlying Action.  CMB tendered its defense of the Underlying Action

763700.1

Sohaila Sagheb
August 12, 2020
Page 2

to AIIC. AIIC denied coverage on the grounds that the Fire Suppression System-Installation exclusion, which applies to all completed operations in the listed categories, applies to the damages sought in the Underlying Action.

## II.    THE POLICY

Associated Industries Insurance Company, Inc. ("AIIC") issued Policy No. AES 104071601 to CMB Developers, Inc. for the policy period August 6, 2017 to August 6, 2018 ("the Policy"). The Policy is a renewal policy, with limits of liability are $1,000,000 per occurrence and $2,000,000 in the aggregate. There is a $1,000 deductible per occurrence. The deductible is doubled in instances where the insured violated the Special Requirements for Subcontractors endorsement, as is the case here.

The Policy provides general liability coverage under a CG0001 (12/07) coverage form. The relevant provisions are as follows:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    Insuring Agreement

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1)    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

    b.    This insurance applies to "bodily injury" and "property damage" only if:

Woolls Peer Dollinger & Scher
A Professional Corporation

Sohaila Sagheb
August 12, 2020
Page 3

    (1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2)     The "bodily injury" or "property damage" occurs during the policy period; and

    (3)     Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c.    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    (1)     Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    (2)     Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    (3)     Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur. . . .

2.    Exclusions

    This insurance does not apply to:

                * * *

Woolls Peer Dollinger & Scher
A Professional Corporation

Sohaila Sagheb
August 12, 2020
Page 4

> j.  Damage To Property
>
> "Property damage" to:
>
> (1)  Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;
>
> (2)  Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;
>
> (3)  Property loaned to you;
>
> (4)  Personal property in the care, custody or control of the insured;
>
> (5)  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6)  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.
>
> Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.
>
> Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.
>
> Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".
>
> k.  Damage To Your Product

Woolls Peer Dollinger & Scher
A Professional Corporation

Sohaila  Sagheb
August  12, 2020
Page 5

"Property damage" to "your product" arising out of it or any part of it.

l.      Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

* * *

**SUPPLEMENTARY PAYMENTS - COVERAGES A ANDB**

1.      We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a.      All expenses we incur.

* * *

e.      All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

* * *

SECTION V – DEFINITIONS

* * *

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

16.     "Products-completed operations hazard":

a.      Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)     Products that are still in your physical possession; or

(2)     Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

Woolls Peer Dollinger & Scher
A Professional Corporation

Sohaila Sagheb
August 12, 2020
Page 6

     (a)     When all of the work called for in your contract has been completed.

     (b)     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

     (c)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project. Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

* * *

17.     "Property damage" means:

     a.     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

     b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

21.     "Your product":

     a.     Means:

     (1)     Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

     (a)     You;

     (b)     Others trading under your name; or

     (c)     A person or organization whose business or assets you have acquired; and

     (2)     Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

     b.     Includes:

Woolls Peer Dollinger & Scher
A Professional Corporation

Sohaila Sagheb
August 12, 2020
Page 7

(1)      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2)      The providing of or failure to provide warnings or instructions.

c.      Does not include vending machines or other property rented to or located for the use of others but not sold.

22.      "Your work":

a.      Means:

(1)      Work or operations performed by you or on your behalf; and

(2)      Materials, parts or equipment furnished in connection with such work or operations.

b.      Includes:

(1)      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2)      The providing of or failure to provide warnings or instructions.

The Policy contains endorsement AES GL 222 09 15, entitled EXLUSION – DESIGNATED CONSTRUCTION OR CONTRACTOR OEPRATIONS, which provides in pertinent part:

**EXCLUSION - DESIGNATED CONSTRUCTION OR CONTRACTOR**

**OPERATIONS**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

**SCHEDULE**

Description of excluded operations:

* * *

Woolls Peer Dollinger & Scher
A Professional Corporation

763700.1

Sohaila Sagheb
August 12, 2020
Page 8

Fire Suppression Systems – Installation

\* \* \*

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

All other terms and conditions remain unchanged.

The Policy also contains endorsement NX GL 165 09 10, entitled SPECIAL REQUIREMENTS FOR SUBCONTRACTORS, which provides:

A.     The following is added to SECTION IV- COMMERCIAL GENERAL LIABILITY CONDITIONS:

**Subcontractor Special Conditions**

1.     Certificates of Insurance with Limits of Liability equal to or greater than the Limits of Insurance provided by this policy (underwritten by an insurance company with at least an "A-7" Best rating as defined by AM Best) will be obtained from all "subcontractors" prior to commencement of any work performed for you. (Note: If this policy provides a per location or per project aggregate, "subcontractors" policy must also provide the same.)

2.     You will obtain written hold harmless agreements from "subcontractors" indemnifying you and the owner against all losses for work performed for you by any and all subcontractors.

3.     You will be named as an Additional Insured on all "subcontractors" General Liability policies.

**Your failure to comply with the conditions listed above will not invalidate this insurance or alter our obligation to you under the terms of this policy except:**

1.     If any of the above conditions are not satisfied, a deductible equal to an amount twice the amount listed in the Declarations page of this policy will apply to any claim or "suit" under this policy seeking damages for "bodily injury," "property damage" and/or "personal and advertising injury" arising out of the work performed by the "subcontractor" for the insured. The deductible amounts apply to damages and all legal and loss adjustment expenses. Provisions for

Woolls Peer Dollinger & Scher
A Professional Corporation

Sohaila Sagheb
August 12, 2020
Page 9

the application of deductibles under this policy are set forth in the DEDUCTIBLE LIABILITY ENDORSEMENT.

Commercial General Liability coverage maintained by the subcontractors shall be primary and this policy shall be excess of Limits of Liability of such insurance, notwithstanding the language of the other Insurance provisions of this policy.

B.   The following is added to SECTION V- DEFINITIONS

"Subcontractor" or "subcontractors" means any person or entity that is not your employee of an insured and does work or performs services for or on behalf of an insured.

## III.   RESERVATION OF RIGHTS REGARDING DEFENSE OF CMB

When CMB applied to AIIC for a policy, CMB informed AIIC that it remodeled houses and further that all work was performed through subcontractors.   Therefore, the Policy was issued with an endorsement entitled Exclusion - Designated Construction or Contractor.   The exclusion was intended to apply to completed operations claims that arise from the installation of a fire suppression system, among other kinds of construction work.   This fact was explained to CMB by its broker, and is apparent from the policy language.   Additionally, the Policy required CMB, by endorsement NX GL 165 09 10, entitled Special Requirements for Subcontractors, to obtain insurance coverage from all subcontractors that perform work for it.

Nevertheless, AIIC agrees to defend CMB based upon the trial court's MSJ ruling unless and until it obtains a ruling on appeal that the Exclusion Endorsement applies to the Underlying Action.   AIIC reserves the right to appeal the trial court's ruling and to seek reimbursement of all defense fees and costs.   *Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 657 ("an insurer, having reserved its right to do so, may obtain reimbursement of defense costs which, in hindsight, it never owed.").

AIIC also reserves the right to refuse to indemnify CMB for any damages that may constitute "your work" under the business risk exclusions.

Additionally, AIIC has no obligation to pay for costs taxed against the insured for attorney's fees and costs incurred by other parties to the action.   In the event CMB is ordered to pay for Conway's costs of suit, therefore, AIIC will not indemnify it.

Finally, AIIC continues to reserve the right to assert misrepresentation on the policy application as a bar to coverage.   *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.* (2007) 156 Cal.App.4th 1259, 1271.

Woolls Peer Dollinger & Scher
A Professional Corporation

Sohaila Sagheb
August 12, 2020
Page 10

**V.      CONCLUSION**

Based upon the trial court's ruling on the MSJ, AIIC agrees to defend CMB in the Underlying Action under the Policy.   However, the defense is provided under a reservation of rights as set forth above.   Should it be determined that there was never any obligation under the Policy to defend the Underlying Action, AIIC will withdraw from the Action and seek reimbursement of all amounts it paid for CMB's defense.

AIIC's continuing investigation, evaluation, and/or monitoring of this matter should not be construed as a waiver, estoppel, or other relinquishment of AIIC's right to limit or deny coverage at any later date, nor as an admission of any obligation under the AIIC Policy.   AIIC does not intend to waive any rights that it may have under the policy or the applicable law.   None of the actions of AIIC, its agents, attorneys or employees should be construed as a waiver of any rights that AIIC may have nor should AIIC be estopped by its conduct to assert any defense it may have.   Similarly, no conduct by AIIC should be construed as a waiver or surrender of any of the policy's limitations, exclusions, conditions or agreements.   AIIC specifically reserves its rights to limit or deny coverage based on additional or alternate grounds.   AIIC's references to certain of the policy provisions in this correspondence should not be construed as a waiver of AIIC's rights to rely on any other policy provisions or the applicable law.

AIIC is committed to the prompt and fair handling of all claims for coverage.   If you believe that AIIC has erred in its handling of your claim, you may have the matter reviewed by the California Department of Insurance, Claims Services Bureau, 300 South Spring Street, Los Angeles, California 90013, telephone number (800) 927-4357.   If you have any additional information you would like us to review, please forward it to the undersigned for review.

Sincerely,

Jeffrey A. Dollinger

Woolls Peer Dollinger & Scher
A Professional Corporation

# Exhibit 11

# Exhibit 11

| From: | Katy Nelson |
|---|---|
| To: | Sohaila Sagheb |
| Cc: | Jeffrey A. Dollinger; Zachary Schurkman; Ching Chiao; Christine Chiu |
| Subject: | RE: Casey Conway v. CMB Developers [IWOV-IMDB1.FID132696] |
| Date: | Thursday, November 19, 2020 4:37:38 PM |
| Attachments: | image001.png |

Thank you for clarifying that the issue of coverage for this action, that is, Associated's duty to indemnify CMB, is not going to be resolved in this liability action.

With regard to the defense of the liability action against CMB, as you know Associated has the right to control the defense and settlement of CMB in this action.  *E.g., James 3 Corp. v. Truck Ins. Exch.*, 91 Cal. App. 4th 1093, 1095 (2001).  That is the purpose of the *Blue Ridge* letter, to advise CMB that it may assume control of its defense – along with the defense costs and indemnity obligations – if it disagrees with Associated's handling.

Let me know if you have any questions.

Katy A. Nelson




A Professional Corporation
One Wilshire Building
624 S. Grand Avenue, 22nd Floor
Los Angeles, California 90017
Telephone: (213) 629-8768
Facsimile: (213) 629-1660
 knelson@wpdslaw.com

CONFIDENTIALITY STATEMENT:  This communication from the law firm of Woolls Peer Dollinger & Scher, A Professional Corporation contains privileged and confidential information. It is intended only for the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others. Additionally, please notify the sender by replying to this e-mail or by telephone at (213) 629-1600, and then delete the e-mail and any copies of it.

**From:** Sohaila Sagheb <ssagheb@chiaowu.com>
**Sent:** Thursday, November 19, 2020 4:15 PM
**To:** Katy Nelson <knelson@wpdslaw.com>
**Cc:** Jeffrey A. Dollinger <jdollinger@wpdslaw.com>; Zachary Schurkman <Zachary.Schurkman@amtrustgroup.com>; Ching Chiao <cchiao@chiaowu.com>; Christine Chiu <cchiu@chiaowu.com>
**Subject:** Re: Casey Conway v. CMB Developers [IWOV-IMDB1.FID132696]

Hi Katy,

CMB demands that Amtrust put up enough money to settle Conway's action. The issue of indemnity

is reserved for different action.

Sohaila


On Nov 19, 2020, at 4:10 PM, Katy Nelson <knelson@wpdslaw.com> wrote:

Dear Sohaila:

As you know, Associated Industries Insurance Company is  participating in the defense of CMB in above referenced action pursuant to a reservation of rights due to the court's order on our cross-motions in which the court determined that there was a potential for coverage under the Associated policy.  The court thereafter stayed the action and no determination has been made by the court with regard to the duty to indemnify or the bad faith claim.

Although Associated disputes indemnity coverage for the Conway action, it is undertaking reasonable efforts to attempt to settle the suit against your client. Pursuant to the authority in *Blue Ridge Insurance Co. v. Jacobsen* (2001) 25 Cal.4th 489 and its progeny, Associated advises you that in offering money in an effort to protect your clients' interests, Associated intends to preserve its right to seek full reimbursement from your clients for the entire amount of any monies Associated pays to plaintiff Conway in settlement,  by establishing the absence of indemnity coverage for the Conway claim, as authorized by *Blue Ridge, supra*.

Associated has kept you advised and will continue to keep you advised regarding any settlement efforts with Conway so that your clients can determine whether they will agree to the reasonableness of a settlement at that amount.  Under *Blue Ridge,* your clients have the right in these circumstances to advise Associated that they do not agree to a settlement with Conway at the amount negotiated by Associated. If your clients oppose a settlement at that figure, Associated will not go forward with the settlement. Please note, however, that in that event your clients oppose a tentative settlement reached by Associated and Conway, your clients must immediately take over their defense for the remainder of the litigation at their own expense. Moreover, Associated will not be liable for any later judgment or settlement in excess of the amount of that tentative settlement if coverage is later found to apply.

Thus, in the event Associated and Conway agree to a mutually acceptable settlement amount to resolve all plaintiff's claims against your clients, and your clients choose not to consent to a resolution at that amount, all further defense costs and attorney fees from that point forward in the Conway litigation will be your clients' sole responsibility. Moreover, to the extent any subsequent settlement or judgment in that litigation exceeds the negotiated amount rejected, your clients will bear full liability for said excess amount. Associated will continue to retain the right to establish that any subsequent settlement or judgment is not covered by its policy.

Associated is not asking your clients to waive any rights.  It is simply advising CMB of Associated's rights under the *Blue Ridge* decision.

I hope this clarifies the situation for you.  Please feel free to call me if you have any questions or would like to discuss this matter further.

Sincerely,


Katy A. Nelson
  <image001.png>
A Professional Corporation
One Wilshire Building
624 S. Grand Avenue, 22nd Floor
Los Angeles, California 90017
Telephone: (213) 629-8768
Facsimile: (213) 629-1660
 knelson@wpdslaw.com


CONFIDENTIALITY STATEMENT:  This communication from the law firm of Woolls Peer Dollinger & Scher, A Professional Corporation contains privileged and confidential information. It is intended only for the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others. Additionally, please notify the sender by replying to this e-mail or by telephone at (213) 629-1600, and then delete the e-mail and any copies of it.

**From:** Sohaila Sagheb <ssagheb@chiaowu.com>
**Sent:** Thursday, November 19, 2020 6:50 PM
**To:** Jeffrey Morris <JMorris@SkaneWilcox.com>
**Cc:** Zachary Schurkman <Zachary.Schurkman@amtrustgroup.com>; cchiao@chiaowu.com; cchiu@chiaowu.com; Wendy Wilcox <wwilcox@skanewilcox.com>
**Subject:** Re: [External Sender] [EXTERNAL] Re: White Waiver

My understanding is that the carrier has now made a $75,000 conditioned on a Blue Ridge waiver. Is that correct? Is the insurance company leveraging the requirement to comply with the terms of the policy on its insured's waiver of rights? If so, are you going to speak up to defend your client?


> On Nov 19, 2020, at 3:29 PM, Jeffrey Morris <JMorris@SkaneWilcox.com> wrote:
>
> In furtherance of our brief verbal conversation we just had these emails have become necessary because of your now baseless accusations.
>
> 1.   You (Sohaila) accused me (Jeff Morris) of intentionally isolating

our client from the mediator and the other parties making further negotiations in this matter impossible.

This is incorrect on several levels.  First, you have been consistently involved in all communications regarding the separate stages of negotiations.  They initiated with plaintiff's initial demand of $650,000 to all parties.  This was countered with an offer of $50,000 by Radix and $50,000 by CMB.  The mediator came back and stated plaintiff had lowered his demand to $625,000.  Then, Radix was willing to offer plaintiff an additional $50,000 if we (CMB) came up with an additional $50,000.  Gail Henderson of AmTrust agreed to only offer an additional $5,000.  This occurred at approximately 12:00 this afternoon.  Only at about 3:12 this afternoon did we hear back from the mediator.  He advised that plaintiff was now attempting settlement with each party individually.  As such, the demand for CMB was now $350,000.  Before any reply was provided, we contacted you for your input.  For some unexplained reason you lashed back summarizing your below accusation.  You have been involved in this entire negotiation process making your accusations inflammatory, baseless, and harmful to CMB.  We ask that you act in a civilized manner for the joint benefit of our client, CMB.

2.   You (Sohaila) accused me (Jeff Morris) of not acting in the interests of our client (CMB).

Such an accusation of attorney misconduct is beyond inflammatory.  If you have any evidence of such conduct, I demand you immediately produce it.  Otherwise, I demand an immediate retraction.

---

**From:** Sohaila Sagheb [mailto:ssagheb@chiaowu.com]
**Sent:** Thursday, November 19, 2020 3:10 PM
**To:** Zachary Schurkman <Zachary.Schurkman@amtrustgroup.com>;
Jeffrey Morris <JMorris@SkaneWilcox.com>
**Cc:** cchiao@chiaowu.com; cchiu@chiaowu.com
**Subject:** Re: [External Sender] [EXTERNAL] Re: White Waiver

The P's demand to CMB is $350,000. The high demand is a direct by-product of the low ball bad faith offers by Amstar in this mediation.

On Nov 19, 2020, at 1:34 PM, Zachary Schurkman <Zachary.Schurkman@amtrustgroup.com> wrote:

Thanks for this. Let me just review the bills and speak with Gail. I will call you back in 15 minutes.

Best,

Zach

O: 646.354.2418
M: 646.793.0383

**From:** Sohaila Sagheb <ssagheb@chiaowu.com>
**Sent:** Thursday, November 19, 2020 4:32 PM
**To:** Zachary Schurkman <Zachary.Schurkman@amtrustgroup.com>
**Cc:** cchiao@chiaowu.com; cchiu@chiaowu.com
**Subject:** [EXTERNAL] Re: White Waiver

---

Confidentiality Notice: This email message is intended only for the individual or entity to which it is addressed. This email may contain information that is proprietary or privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this email by accident, please notify the sender immediately and destroy this email and all copies of it.

---

Confidentiality Notice: This email message is intended only for the individual or entity to which it is addressed. This email may contain information that is proprietary or privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this email by accident, please notify the sender immediately and destroy this email and all copies of it.

# Exhibit 12

# 12

# Exhibit 12

| From: | Katy Nelson |
|---|---|
| To: | Sohaila Sagheb |
| Cc: | Gail Henderson; Zachary Schurkman; Ching Chiao; Christine Chiu |
| Subject: | RE: Casey Conway v. CMB Developers [IWOV-IMDB1.FID132696] |
| Date: | Wednesday, January 20, 2021 10:41:18 AM |
| Attachments: | image001.png |
| | ROR Ltr.PDF |

Dear Sohaila:

I have been advised that a mediation is set for today at 3:00 pm.  In advance of that mediation, please recall that Associated Industries Insurance Company previously issued written reservations of rights, including the attached letter dated August 12, 2020 and the email communication below dated November 19, 2020.  Please feel free to contact me if you have any questions.

Thank you and best regards,

Katy A. Nelson




A Professional Corporation
One Wilshire Building
624 S. Grand Avenue, 22nd Floor
Los Angeles, California 90017
Telephone: (213) 629-8768
Facsimile: (213) 629-1660
knelson@wpdslaw.com

CONFIDENTIALITY STATEMENT:  This communication from the law firm of Woolls Peer Dollinger & Scher, A Professional Corporation contains privileged and confidential information. It is intended only for the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others. Additionally, please notify the sender by replying to this e-mail or by telephone at (213) 629-1600, and then delete the e-mail and any copies of it.

**From:** Katy Nelson <knelson@wpdslaw.com>
**Sent:** Thursday, November 19, 2020 4:10 PM
**To:** Sohaila Sagheb <ssagheb@chiaowu.com>
**Cc:** Jeffrey A. Dollinger <jdollinger@wpdslaw.com>; Zachary Schurkman <Zachary.Schurkman@amtrustgroup.com>; Ching Chiao <cchiao@chiaowu.com>; Christine Chiu <cchiu@chiaowu.com>
**Subject:** Casey Conway v. CMB Developers [IWOV-IMDB1.FID132696]

Dear Sohaila:

As you know, Associated Industries Insurance Company is  participating in the defense of CMB in above referenced action pursuant to a reservation of rights due to the court's order on our cross-motions in which the court determined that there was a potential for coverage under the Associated

policy.  The court thereafter stayed the action and no determination has been made by the court with regard to the duty to indemnify or the bad faith claim.

Although Associated disputes indemnity coverage for the Conway action, it is undertaking reasonable efforts to attempt to settle the suit against your client.  Pursuant to the authority in *Blue Ridge Insurance Co. v. Jacobsen* (2001) 25 Cal.4th 489 and its progeny, Associated advises you that in offering money in an effort to protect your clients' interests, Associated intends to preserve its right to seek full reimbursement from your clients for the entire amount of any monies Associated pays to plaintiff Conway in settlement,  by establishing the absence of indemnity coverage for the Conway claim, as authorized by *Blue Ridge, supra*.

Associated has kept you advised and will continue to keep you advised regarding any settlement efforts with Conway so that your clients can determine whether they will agree to the reasonableness of a settlement at that amount.  Under *Blue Ridge,* your clients have the right in these circumstances to advise Associated that they do not agree to a settlement with Conway at the amount negotiated by Associated. If your clients oppose a settlement at that figure, Associated will not go forward with the settlement. Please note, however, that in that event your clients oppose a tentative settlement reached by Associated and Conway, your clients must immediately take over their defense for the remainder of the litigation at their own expense. Moreover, Associated will not be liable for any later judgment or settlement in excess of the amount of that tentative settlement if coverage is later found to apply.

Thus, in the event Associated and Conway agree to a mutually acceptable settlement amount to resolve all plaintiff's claims against your clients, and your clients choose not to consent to a resolution at that amount, all further defense costs and attorney fees from that point forward in the Conway litigation will be your clients' sole responsibility. Moreover, to the extent any subsequent settlement or judgment in that litigation exceeds the negotiated amount rejected, your clients will bear full liability for said excess amount. Associated will continue to retain the right to establish that any subsequent settlement or judgment is not covered by its policy.

Associated is not asking your clients to waive any rights.  It is simply advising CMB of Associated's rights under the *Blue Ridge* decision.

I hope this clarifies the situation for you.  Please feel free to call me if you have any questions or would like to discuss this matter further.

Sincerely,

Katy A. Nelson



A Professional Corporation
One Wilshire Building

624 S. Grand Avenue, 22nd Floor
Los Angeles, California 90017
Telephone: (213) 629-8768
Facsimile: (213) 629-1660
 knelson@wpdslaw.com

CONFIDENTIALITY STATEMENT:  This communication from the law firm of Woolls Peer Dollinger & Scher, A Professional Corporation contains privileged and confidential information. It is intended only for the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others. Additionally, please notify the sender by replying to this e-mail or by telephone at (213) 629-1600, and then delete the e-mail and any copies of it.

---

**From:** Sohaila Sagheb <ssagheb@chiaowu.com>
**Sent:** Thursday, November 19, 2020 6:50 PM
**To:** Jeffrey Morris <JMorris@SkaneWilcox.com>
**Cc:** Zachary Schurkman <Zachary.Schurkman@amtrustgroup.com>; cchiao@chiaowu.com; cchiu@chiaowu.com; Wendy Wilcox <wwilcox@skanewilcox.com>
**Subject:** Re: [External Sender] [EXTERNAL] Re: White Waiver

My understanding is that the carrier has now made a $75,000 conditioned on a Blue Ridge waiver. Is that correct? Is the insurance company leveraging the requirement to comply with the terms of the policy on its insured's waiver of rights? If so, are you going to speak up to defend your client?

> On Nov 19, 2020, at 3:29 PM, Jeffrey Morris <JMorris@SkaneWilcox.com> wrote:
>
> In furtherance of our brief verbal conversation we just had these emails have become necessary because of your now baseless accusations.
>
> 1.  You (Sohaila) accused me (Jeff Morris) of intentionally isolating our client from the mediator and the other parties making further negotiations in this matter impossible.
>
>     This is incorrect on several levels.  First, you have been consistently involved in all communications regarding the separate stages of negotiations.  They initiated with plaintiff's initial demand of $650,000 to all parties.  This was countered with an offer of $50,000 by Radix and $50,000 by CMB.  The mediator came back and stated plaintiff had lowered his demand to $625,000.  Then, Radix was willing to offer plaintiff an additional $50,000 if we (CMB) came up with an additional $50,000.  Gail Henderson of AmTrust agreed to only offer an additional $5,000.  This occurred at approximately 12:00 this afternoon.  Only at about 3:12 this afternoon did we hear back from the mediator.  He advised that plaintiff was now attempting settlement with each party individually.  As such, the demand for CMB was now $350,000.  Before any reply was provided, we contacted you for your input.  For some

unexplained reason you lashed back summarizing your below accusation.  You have been involved in this entire negotiation process making your accusations inflammatory, baseless, and harmful to CMB.  We ask that you act in a civilized manner for the joint benefit of our client, CMB.

2.  You (Sohaila) accused me (Jeff Morris) of not acting in the interests of our client (CMB).

    Such an accusation of attorney misconduct is beyond inflammatory.  If you have any evidence of such conduct, I demand you immediately produce it.  Otherwise, I demand an immediate retraction.

---

**From:** Sohaila Sagheb [mailto:ssagheb@chiaowu.com]
**Sent:** Thursday, November 19, 2020 3:10 PM
**To:** Zachary Schurkman <Zachary.Schurkman@amtrustgroup.com>; Jeffrey Morris <JMorris@SkaneWilcox.com>
**Cc:** cchiao@chiaowu.com; cchiu@chiaowu.com
**Subject:** Re: [External Sender] [EXTERNAL] Re: White Waiver

The P's demand to CMB is $350,000. The high demand is a direct by-product of the low ball bad faith offers by Amstar in this mediation.


On Nov 19, 2020, at 1:34 PM, Zachary Schurkman <Zachary.Schurkman@amtrustgroup.com> wrote:

Thanks for this. Let me just review the bills and speak with Gail. I will call you back in 15 minutes.

Best,

Zach

O: 646.354.2418
M: 646.793.0383

**From:** Sohaila Sagheb <ssagheb@chiaowu.com>
**Sent:** Thursday, November 19, 2020 4:32 PM
**To:** Zachary Schurkman <Zachary.Schurkman@amtrustgroup.com>
**Cc:** cchiao@chiaowu.com; cchiu@chiaowu.com
**Subject:** [EXTERNAL] Re: White Waiver

Confidentiality Notice: This email message is intended only for the individual or
entity to which it is addressed. This email may contain information that is
proprietary or privileged, confidential and exempt from disclosure under
applicable law. If you are not the intended recipient, you are hereby notified that
any dissemination, distribution or copying of this communication is strictly
prohibited. If you received this email by accident, please notify the sender
immediately and destroy this email and all copies of it.

Confidentiality Notice: This email message is intended only for the individual or entity to which it is addressed.
This email may contain information that is proprietary or privileged, confidential and exempt from disclosure
under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination,
distribution or copying of this communication is strictly prohibited. If you received this email by accident, please
notify the sender immediately and destroy this email and all copies of it.